**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | **Case Number: 19-mj-269** |
| **MICHAEL JABAAR WILKINS** : | |
| : | **Detention Hearing:  November 8, 2019** |
| **Defendant.** : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
**PRETRIAL DETENTION OF DEFENDANT MICHAEL JABAAR WILKINS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Michael Jabaar Wilkins be detained pending the trial of this matter pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (d)(1)(A)(iii).  The offense involved is a crime of violence and, at the time of the offense, the Defendant was on probation for an offense under Federal, State, or local law.  The defendant has been charged by Criminal Complaint in the District of Columbia with one count of Coercion and Enticement, in violation of 18 U.S.C. § 2422(a), and Interstate and Foreign Travel of Transportation in Aid of Racketeering Enterprises, in violation of 18 U.S.C. § 1952(a)(3).  An analysis of the factors set forth in 18 U.S.C. § 3142(g) below leads to the conclusion that detention is appropriate because there is no condition or combination of conditions that will reasonably assure the safety of any person and the community.

**FACTUAL BACKGROUND**

Members of the Metropolitan Police Department of the District of Columbia ("MPD") and the FBI Child Exploitation and Human Trafficking Task Force ("CEHTTF") have been actively investigating an area of Washington, DC known for street-level commercial sexual exploitation.

This area stretches from the South at K Street, Northwest to the North at Rhode Island Avenue, Northwest, and from the East at 9th Street, Northwest, to the West at 14th Street Northwest (herein the "target area"). The target area is the subject of a substantial number of complaints to police between the hours of 3:30 a.m. to 8:00 a.m. by individuals residing or working in the target area. These complaints are primarily related to crimes stemming from the ongoing commercial sexual exploitation activity occurring in the target area, to include complaints of robberies, prostitution, disorderly conduct, and violent assaults.

On August 7, 2019, at approximately 7:00 a.m., a resident of the 1300 block of 12th Street, Northwest observed an assault behind her home. The assault was also captured by surveillance footage. The reporting witness advised that she saw a male, whom the witness believes is a pimp, attack a female whom the witness referred to as a prostitute. The reporting witness forwarded this information and the surveillance footage to a member of MPD's Third District. A review of the surveillance footage shows a man, identified by law enforcement as Michael Jabaar Wilkins (herein the "Defendant") physically assault a female known to engage in commercial sex acts (herein "Victim 1") in the target area. The video depicts the Defendant cornering the Victim 1 in the parking pad of a home in the 1300 block of 12th Street Northwest. The Defendant is shown grabbing Victim 1's arm as she attempts to move away from him, and striking her with an open hand. The video also shows the Defendant grabbing either side of Victim 1's head and neck and shaking her head. During this assault, Victim 1, who is trapped against a car, attempts to shield her face from the Defendant.

During the course of this investigation, law enforcement employed a variety of means in an attempt to identify Victim 1. A photograph of Victim 1 was uploaded to facial recognition software which led to a match. Law enforcement learned that Victim 1 was a witness to an incident

in Norfolk, Virginia, on June 12, 2019, in which the Defendant suffered a gunshot wound to his groin.  Information provided to law enforcement about this incident has led to the conclusion that this gunshot wound was self-inflicted.

Furthermore, law enforcement has interviewed witnesses who are familiar with the Defendant's long history of narcotics distribution, as well as his engagement in the illegal commercial exploitation of women.  One witness informed law enforcement that the Defendant had transported at least three women to Washington, D.C. to engage in prostitution from the Norfolk, Virginia area, and that he had been arrested in Virginia with one of these women.  This witness's description is corroborated by law enforcement's observations during the course of this investigation.  In September of 2019, law enforcement observed the Defendant transporting Victim 1 to a local hotel to engage in commercial sex.  When interviewed by law enforcement in September of 2019, Victim 1 identified the Defendant as her pimp, and stated that his nickname is "Lucky."

A review of the Defendant's text messages with Victim 1 show that he has engaged in a pattern of persuading, inducing, and coercing her to travel from Virginia to D.C. in order to engage in commercial sex acts for his financial gain.   For example, on August 16, 2019, the Defendant sent a text message to Victim 1 which stated, "Get up baby come on down here I've been telling the my b**** coming back its prime time Friday daddy broke ass shit im hurting I need my hoe to do her hoely dutys hurry up n come see about me."  On August 31, 2019, the Defendant sent a "selfie"-style photograph which included a message which reads, "come home bitch."

Additional text messages show that the Defendant often preyed upon Victim 1's feelings for him, in an effort to entice her into engaging in commercial sexual activity for his benefit.  The Defendant sent Victim 1 a series of text messages which read, "I still hav love for u stop crying I

3

want to make things right come on back up here with me we need eachother baby"; "Daddy gon take care of u"; and "Don't be no fool bitch stay focused that bitch washy washy get ur ass on the bus n let's carry on our mission bitch…".  On September 3, 2019, the Defendant sent Victim 1 a series of texts that read, "So why don't us come up here so we can get sum money"; "Its no need for me to wait for u cuz i know you aint coming back cuz if u was u would have been came im just ready to come back n get on my mission to get me some money my car right n find me a new bitch a strong one"; and "So get up here then lets get all the money we can get so I can grind while im home."  Subsequent text exchanges on September 3 – 4, 2019 discuss Victim 1 traveling by bus from Norfolk, VA to Washington, D.C.  Through these messages, Victim 1 provided the Defendant with the address of Union Station, located in Washington D.C., and informed him that she would arrive at 1:30 a.m. on the morning of September 5, 2019.  A text message exchange, which occurred on September 5, 2019 at approximately 4:25 AM reads as follows:

>Defendant: Walk down 2 12
>Defendant:  Move on the outskirts
>Victim 1:  OK what u seen police harassing[1]

Additional text messages between the Defendant and Victim 1, on September 5, 2019, reveal that at approximately 6:21 p.m. on that date, the Defendant instructed Victim 1 to, "Go head to the room bitch."  Victim 1 responded, "When they call IMA lower my rates just by a dub doe."[2]  The Defendant replied, "Okay a bagger cant be choosy or picking they hav to accept what they

---

[1] All text abbreviations and typographical errors in quoted text appear as they do in the original evidence.

[2] Based upon your affiant's training and experience, this translates roughly to, "I had to drop the price by $20 though."

give them that's not us but everything is negotiable." The Defendant then texted Victim 1, at 9:05 pm, "I'm bout to date him for room…text you the room number when done daddy."

During the early morning hours of November 3, 2019, members of CEHTTF had reason to believe that the Defendant and Victim 1 were in the D.C. area. It appeared that they were in the target area between approximately 3:00 a.m. and 7:00 a.m. On November 4, 2019, members of the CEHTTF conducted surveillance in the target area between approximately 6:00 a.m. to 7:30 a.m. Law enforcement observed Victim 1 standing near the intersection of 12th Street and M Street Northwest and later observed the Defendant operating the Hyundai Elantra near the south edge of Logan Circle.

On November 5, 2019, at approximately 5:00 a.m., law enforcement observed the Defendant operating the same Hyundai Elantra near the intersection of 14th and Rhode Island Avenue Northwest. The Defendant was stopped in the identified Hyundai Elantra at the 1100 block of 14th Street Northwest, and taken into custody by the FBI WFO Tactical Team. He had $1,204 in cash on his person. The Defendant is now before this Court, and is seeking pretrial release.

## APPLICABLE LEGAL STANDARD

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence. A crime of violence is defined to include "any felony under chapter….117." 18 U.S.C. § 3156(a)(4)(C).

The crime of Coercion and Enticement, in violation of Title 18 United States Code Section 2422(a) is a felony offense under chapter 117 and, as such, is a crime of violence that under 18 U.S.C. § 3142(e)(2) creates a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the

presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## **ANALYSIS**

For the reasons that follow, the government submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

### A.  **Nature and Circumstances of the Charged Offense**

This factor clearly favors detention, since, as stated above, the offense is a crime of violence. Not only has Defendant physically assaulted Victim 1, but he has engaged in a persistent course of conduct designed to persuade and coerce Victim 1 into engaging in commercial sex work for his own financial gain. The world of commercial sexual exploitation is extremely dangerous. Studies have shown that women who are engaged in prostitution experience violence ranging from slapping and punching to assaults with deadly weapons and rape. *See* Dalla, R. (2000, November). *Exposing the "pretty woman" myth: A qualitative examination of the lives of female streetwalking prostitutes*. The Journal of Sex Research, 37(4), 344-353 (In a study of prostituted women, 72.1 % reported severe abuse at the hands of pimps, male sexual buyers, or boyfriends. The acts of abuse include being raped, beaten with objects, threatened with weapons, or abandoned in remote locations). An investigation into the mortality rate of women in prostitution revealed that the leading cause of death was homicide, and found that actively prostituting women were nearly 18 times more likely to be murdered than women of similar age and race. *See* Potterat, J., Brewer, D., Muth, S., Rothenberg, R., Woodhouse, D., Muth, J. et al. (2004). *Mortality in a long-term open*

*cohort of prostitute women*. American Journal of Epidemiology, 159(8), 778-785.  Furthermore, studies have also demonstrated that a high percentage of individuals who are involved in commercial sex work want to stop prostituting, but feel that they are trapped. *See* Farley, M. and Barkan, H. (1998). *Prostitution, violence against women, and posttraumatic stress disorder*. Women & Health, 27(3), 37-49.

Congress clearly recognized the serious nature of the Defendant's criminal offenses when enacting a 20 year statutory maximum for violations of Title 18 U.S.C. § 2422(a).  As such, this factor clearly weighs in favor of detention.

**B. The Weight of the Evidence Against the Defendant**

As summarized above, the evidence against the Defendant is extremely strong.  The Defendant was caught on video surveillance assaulting Victim 1.  He has been observed by law enforcement in the target area, an area known for commercial sexual exploitation, with Victim 1.  Additionally, he has been seen transporting Victim 1 to a hotel, so that she could engage in commercial sex acts for his financial benefit.

As detailed above, the text messages recovered from the Defendant's phone demonstrate the nature and persistence of the Defendant's efforts to induce, persuade and coerce Victim 1 into traveling from Virginia to D.C. to engage in prostitution. Therefore, the weight of the evidence strongly favors detention.

**C. The History and Characteristics of the Defendant**

The Defendant's history and characteristics weigh heavily in favor of detention.  He is unemployed.  He resides in Norfolk Virginia, with family.  His only ties to the District of Columbia seem to be his desire to utilize the city for his illegal activities.  The Defendant also has a history of drug abuse, and a lengthy history with the criminal justice system.

According to the Pretrial Services Report ("PSR"), filed with the Court on November 5, 2019, the Defendant has 20 prior arrests, resulting in 12 prior convictions. PSR at 1. He has a felony drug conviction for which he received a 12 year sentence, 10 years being suspended. Id. at 3. The Defendant has a string of misdemeanor offenses, including drug possession; assault and battery; and petit larceny. Id. at 3-4. The Defendant has a felony assault conviction. Id. at 4. He has also failed to appear for prior court appearances. Id. at 6.

Notably, the Defendant was on probation at the time of the current offense and arrest. He is on supervised probation until December 18, 2027. PSR at 3. One of the conditions of his probation is that he is not to leave the Commonwealth of Virginia. Id. The Defendant has repeatedly violated this condition of probation by repeatedly traveling to D.C. between August and November of this year. Additionally, when on probation in the past, he has violated the conditions and his probation and suspended sentences have been revoked. Id. at 4-5; 6. This should give this Court grave pause and indicates that the Defendant would not abide by the conditions set by this Court should he be released. As such, the Defendant should be detained pending trial.

**D. The Nature and Seriousness of the Danger to Any Person or the Community**

The evidence here establishes that the defendant represents a grave danger to Victim 1 and the community. As stated above, the Defendant has violently assaulted Victim 1. He also poses a danger to the community, at large, as the result of his ongoing course of criminal conduct. The area around a K Street, Northwest to the North at Rhode Island Avenue, Northwest, and from the East at 9th Street, Northwest, to the West at 14th Street Northwest, which the Defendant frequents in order to engage in the commercial sexual exploitation of Victim 1, has become extremely problematic for law enforcement. As a result of the criminal actions of the Defendant, and others

like him who engage in the commercial sexual exploitation of women, residents living in the target area have become witnesses to, and victims of, crime. This has led to a large number of complaints to police, typically made in the early morning hours. The ongoing prostitution in the area has been linked to reports by members of the community of robberies and violent assaults – a correlation present in the instant case when a resident alerted law enforcement to the Defendant's assault of Victim 1, which occurred behind the resident's home. When this is viewed in combination with the Defendant's lengthy criminal history, which includes convictions for assault, the Defendant's release would pose a serious risk to not only Victim 1, but also members of the community. As such, he should be detained pending trial.

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the Defendant should be detained pending trial.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

\_\_/s/_____
Amy E. Larson
Assistant United States Attorney
New York Bar No. 4108221
U.S. Attorney's Office
555 4th Street, N.W.,
Washington, D.C. 20530
202-252-7863
Amy.Larson2@usdoj.gov