# Metropolitan Police Department □ Washington, D.C.

## GENERAL ORDER



| Subject: | | Series | Number | Distribution | Change Number |
|---|---|---|---|---|---|
| | | 601 | 1 | A | 1 |

**Recording, Handling and Disposition of Property Coming into the Custody of the Department**

**Effective Date** April 30, 1992

**Revision Date**

The purpose of this order is to establish the policies and procedures for members of the department relative to the recording, handling, and disposition of the various types of property coming into the custody of this department.  This order consists of the following parts:

**PART I — Duties and Responsibilities of Members**

- A. General Procedures.
- B. PD Form 82 - Property Book.
- C. PD Form 81 - Property Record.
- D. Special Instructions.
- E. Seizures for Violations of Gun Control Act.
- F. Firearms.
- G. Bicycles or Play Vehicles.
- H. Placing Stops in Pawn Shops.
- I. Court Property Control Office.
- J. Disposition of Narcotics and Dangerous Drugs.

**PART II — Duties and Responsibilities of Station Clerks**

- A. Prisoner's Property.
- B. Station Duties.

**PART III — Classifications of Property**

- A. Found.
- B. Abandoned.
- C. Property Set Out for Eviction.
- D. Estate of Deceased Person.
- E. Property of Alleged Mentally Ill.
- F. Evidence and Suspected Proceeds of Crime.
- G. Held for Civil Forfeiture.
- H. Impounded Vehicles.
- I. Safekeeping.
- J. Illegal Fireworks.

1901

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **2 of 37** |

**PART IV    Duties and Responsibilities of Organizational Elements**

    **A.    Organizational Element Property Officers.**
    **B.    Officials.**
    **C.    Commanding Officers.**

**PART V    Duties and Responsibilities of Property Division**

    **A.    Property Control Branch.**
    **B.    Director, Property Division.**

**PART I**

    **A.    General Procedures.**

       **1.    The contents of this order do not cover every possible situation that may occur when handling property. When doubt or uncertainty arises as to the proper method for handling property, and the condition is not specifically covered by the provisions of this order, members shall contact the department's Property Clerk, or his/her agent for guidance.**

       **2.    Unless otherwise prescribed, all property shall be submitted to the organizational element's property officer with a completed PD Form 81 (Property Record). The element's property officer shall inspect the form for accuracy and ensure that in all cases the information is placed into the Property Evidence Inventory Control System (PEICS) before the property is transmitted to the Property Control Branch. He/she shall ensure that the property control number and item number are placed on the Property Book and on all other property reports relative to the recovered property. All property, before delivery to the Property Control Branch shall, whenever possible, be securely wrapped, tied, and properly marked or tagged with a PD Form 285 (Property Tag). In the case of small articles, the property shall be placed in a PD Form 14 (Property Envelope). Each individually numbered item listed on the PD Form 81 shall be packaged separately. All required information to include the property control number and the item number shall be entered on the PD Forms 285 and 14 to ensure easy and accurate identification of the property.**

       **3.    In all cases of property which comes into the possession of this department, it is the responsibility of the member who first handles the property to ensure that the property is properly recorded and processed in accordance with the procedures set forth in this order.**

       **4.    Property taken into custody by members of the department shall be reported on a PD Form 251 (Event Report). Property recovered after the original report (PD 251) has been submitted shall be recorded on a PD Form 252 (Supplemental Report)**

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **3 of 37** |

5.   Members shall ensure all property, which comes into their possession, is properly safeguarded until relieved of that responsibility.

6.   Property shall generally be classified in one of the following categories:

   a.   Abandoned.

   b.   Turned Over to Police for Disposal.

   c.   Suspected Proceeds of Crime.

   d.   Estate of Deceased Person.

   e.   Evidence.

   f.   Found.

   g.   Safekeeping/Recovered Stolen Auto.

   h.   Held for Civil Forfeiture.

   i.   Impounded (Motor Vehicles Only).

   j.   Removed from Impounded Vehicle.

   k.   Set Out for Eviction.

   l.   Prisoners'.

   m.   Alleged Mentally Ill.

7.   Upon learning the identity of the owner/claimant of recovered property, which was previously forwarded to the Property Control Branch, members shall bring this information to the attention of their assigned element's property officer by completing PD Form 81-D (Property Ownership/Classification Information Card).  The element property officer shall record the owner/claimant's name in PEICS, on the Property Book, and on all other property reports relative to the recovered property.  The PD Form 81-D shall be forwarded to the Property Control Branch by the next business day.  The member learning of the owner's/claimant's identity shall attempt to notify the owner/claimant of the fact that their property is in the custody of the department. Members shall maintain a complete record of each such attempt to notify the owner/claimant.

1903

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **4 of 37** |

8.    At the time of arrest, prisoners shall be thoroughly searched and <u>all</u> personal property, including those items (e.g., ties, belts, suspenders, scarfs, etc.) that could be used to inflict injuries upon themselves, shall be removed.  The recovering officer shall turn these items of property over to the station clerk and the procedures set forth in Part II of this order shall be followed.  Property, which is taken from a prisoner and classified as Evidence or Suspected Proceeds of Crime, shall be handled separately in accordance with the procedures set forth in this order.

B.    <u>PD Form 82 - Property Book.</u>

1.    All property that comes into the custody of a member of the department shall be recorded on the Property Book by the recovering member.  This entry shall be made as soon as practicable, but in all instances, prior to the completion of the member's tour of duty.

2.    Each organizational element shall maintain its current Property Book in the station clerk's office, and the Desk Sergeant shall be held accountable for ensuring that it is not removed from this area.

3.    The officer recording the property on the left-hand page of the Property Book shall, in addition to entering a complete description of the property, fill in the appropriate information (where applicable) as indicated by the spaces provided. The recording officer shall ensure that the searching officer, when applicable, and the station clerk sign their names in the appropriate spaces.

4.    When corrections are made to the Property Book, a line in red ink shall be drawn through the incorrect entry.  The person who made the correction shall affix his/her initials and badge number at either end of the red line.

5.    Central Complaint Numbers (CCN) shall be recorded on the left-hand page of the Property Book in the space after "If entries on incidental or other record, give record and page."

C.    <u>PD Form 81 - Property Record.</u>

1.    PD Form 81 shall be typed or neatly <u>hand-printed</u> by the recovering member and when completed, shall be signed by an official the rank of lieutenant or above, including acting lieutenants.

2.    Continuation of the PD Form 81 statement of facts shall be hand-printed or typed on PD Form 202-A (Continuation Report).  Additional items, firearm and/or associate information (Part I, Part IV, and Part V respectively) shall be entered on additional PD Forms 81.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **5 of 37** |

3.  In the case of multiple claimants, to include the "finder" of lost property, the name and address of each such claimant shall be listed in Part V (Property Ownership/Claim Information) to ensure that proper notifications may be made. Particular attention shall be given to specify exactly which item(s) each associate is associated with; e.g., Items 1, 2, and 5, rather than 3 items.

4.  A separate PD Form 81 and a separate property control number shall be required in the following circumstances <u>only</u>:

    a.    Wills;

    b.    Prisoner's Property;

    c.    Narcotics and narcotics paraphernalia as listed on the DEA-7 (Report of Drug Property Collected, Purchased, or Seized). Each DEA-7 requires a separate PD Form 81 and property control number; and,

    d.    Motor vehicles and property removed from the motor vehicles, except contraband and/or other recovered stolen property.

All other property relative to a seizure or case, regardless of classification or property type, is to be placed on the same PD Form 81 with the same property control number.

5.  Detailed instructions for the preparation of PD Form 81 are contained in Report Writing Instructions Series 91 Number 1.

D.  **Special Instructions.**

1.  Whenever locked containers come into the custody of the department, and no keys are available, the member handling the property shall notify his/her commanding officer. The commanding officer shall decide the method to be utilized in opening the locked containers.

2.  On recovering large containers, (e.g., trunks, suitcases, boxes, lockers, etc.), in which assorted items of property are contained, members shall inventory the container and remove all items of value such as money, stocks, bonds, wills, deeds, etc. The removed items shall be itemized on the Property Book and on the PD Form 81. Separate PD Forms 81 shall be prepared when applicable.

3.  All full bottles of alcoholic beverages shall be carefully checked to determine if the seal has been broken. The PD Form 81 shall indicate the number of full bottles with the seal intact and the number with the seal broken or missing. Those bottles with the seal intact shall be packaged separately from those bottles with the seal broken. (NOTE: Only one PD Form 81 need be prepared.)

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **6 of 37** |

4.   Incendiary devices or other types of explosives as described in Part I-E, other than fireworks, shall be handled entirely by the Explosive Ordnance Disposal Section, Special Operations Division.

E.   <u>Seizures for Violations of the Gun Control Act.</u>

1.   Title II of the Gun Control Act of 1968, Public Law 90-618, makes it unlawful to transport, convey, or conceal certain narcotic drugs, counterfeit money or plates, or any firearm in violation of the National Firearms Act.  The Act provides for the seizure and forfeiture of any vehicle, vessel, or aircraft used while committing any of the above offenses.

2.   The Bureau of Alcohol, Tobacco and Firearms (ATF), United States Treasury Department, enforces violations of the National Firearms Act.

3.   The weapons described below, unless properly registered with the Director, ATF, are considered contraband and their possession is unlawful.

a.   Fully automatic firearms such as machine guns and machine pistols.

b.   Shotguns with barrels less than 18 inches in length.

c.   Rifles with barrels less than 16 inches in length.

d.   Any altered shotgun or rifle with an overall length of less than 26 inches (e.g., a rifle or shotgun having a shoulder stock altered to form a pistol grip and the barrel sawed off).

e.   Any weapon or device, <u>except</u> a conventional pistol or revolver, capable of firing a shot shall be classified as "any other weapon" (e.g., Ithaca Auto Burglar guns, cane guns, etc.).

f.   Pistols with shoulder stocks.

g.   Any muffling or silencing device designed for use on firearms of any type.

h.   Any destructive device (e.g., any explosive, or incendiary) such as:

(1)   Gas.

(2)   Bomb.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 7 of 37 |

      (3)    Grenade.

      (4)    Rocket having a propellant charge of more than 4 ounces.

      (5)    Missile having an explosive or incendiary charge of more than ¼ ounce.

      (6)    Mine or similar device, or any type of weapon as described by Public Law 90-618.

    4.    An official on duty at the arresting officer's organizational element shall be immediately informed of the circumstances under which any <u>vehicle</u> comes into the custody of this department as the result of an arrest for a violation of the National Firearms Act. It shall be that official's responsibility to notify the Bureau of Alcohol, Tobacco, and Firearms as soon as possible.

    5.    A record of the vehicle seized shall be made <u>only</u> on the Property Book and shall be classified as "Held for Federal Authorities." The member making the notification shall list the date, time, and name of the person so notified.

    6.    When the agent arrives to confiscate the vehicle, he/she shall sign the Property Book on the right-hand page noting the time, date, and the name of the federal agency represented. The official identification of the agent shall be verified by the releasing official and this verification shall be noted on the Property Book.

    7.    It is the policy of the Bureau of Alcohol, Tobacco, and Firearms not to seize a vehicle that has less sale value than storage and other costs.

    8.    If the decision is made not to seize the vehicle, the classification of the vehicle shall be changed to "Prisoner's Property", or another appropriate classification. The vehicle shall then be processed in the usual manner for its classification.

F.    <u>Firearms.</u>

    1.    All firearms, classified as Evidence or Suspected Proceeds of Crime, shall be delivered to the Firearms Examination Section, Criminal Investigations Division, and the Firearms Registration Section, Identification and Records Division, on the next business day after recovery.

      a.    If an arrest is made, the weapon shall be processed by the arresting or recovering officer and must be accompanied by a properly prepared PD Form 81.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | 1 | 8 of 37 |

    b.   If ammunition is recovered along with the weapon, it shall be recorded as a separate item on the PD Form 81.

    c.   All other weapons shall be processed through the Firearms Examination Section and Firearms Registration Section by the officer delivering the firearm to the Property Control Branch.

    d.   If an arrest is involved, after processing the weapon(s) and papering the case the weapon(s) shall be delivered to the Court Property Control Officer.

    2.   All firearms, except weapons that are to be fingerprinted, shall be unloaded immediately after being taken into custody.  Firearms that are to be finger-printed shall be unloaded <u>only</u> by a latent fingerprint technician when practicable.

    3.   Any weapon that cannot be unloaded because of a malfunction or for any other reason, shall be taken to the Firearms Examination Section for examination. The examination must be conducted before taking the weapon to court as evidence and prior to delivery to the Property Clerk for disposition.

    4.   All firearms shall be forwarded to the Property Control Branch. <u>Firearms shall not be returned to the owner without the express permission of the Property Clerk or his/her agent.</u>  The name of the Property Clerk or agent authorizing the release shall be recorded on the PD Form 81 and the Property Book as well as the date and time the authorization was obtained.

    5.   All firearms shall be checked through WALES and a copy of the NCIC response attached to the PD Form 81 before being sent to the Property Control Branch.

    6.   Upon taking a rifle or shotgun into custody, members shall:

    a.   Enter the weapon on the property book, listing:

        (1)   The make (Winchester, Remington, etc.),

        (2)   The caliber (.22, 30/30, 12 gauge, etc.),

        (3)   The serial number,

        (4)   The type (double barreled shotgun, rifle, etc.),

        (5)   The color (blue steel, chrome plated, etc.), and,

        (6)   Any special markings or defects (chip or scratch on left side of stock, trigger guard broken, engraved stock, etc.)

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 9 of 37 |

    b.    Attach a PD Form 285 to the weapon's trigger guard.

    c.    Place the weapon in a PD Form 86 (Rifle/Shotgun Bag).  No marks shall be made on the bag since it is intended for re-use.

    d.    Under no circumstances shall members remove the weapon from the bag while on public space or while in areas exposed to public view.

    7.    Members delivering weapons to the Court Property Control Office shall remove them from the organizational element's Rifle/Shotgun Bag and place them in a Property Division bag.  Court Property Control Officers will only accept weapons that are accompanied by an original PD Form 81 and have been processed in compliance with Part I-F.1. of this order.  Members shall be responsible for returning the Rifle/Shotgun Bag to their organizational element's property officer.

    8.    If the rifle or shotgun is needed in court at a later date, the Property Control Branch, shall, upon proper notification, place the weapon in a Rifle/Shotgun Bag and forward it to the Court Property Control Office.

    G.    **Bicycles and Play Vehicles.**

    1.    All lost, stolen, and abandoned bicycles or play vehicles recovered by members of this department shall be taken to their  organizational element, recorded on the Property Book, and properly tagged.  The bicycle registration number (if any), and manufacturer's serial number, located under the sprocket, shall be listed on the PD Form 81.

    2.    Information concerning the ownership of bicycles in the custody of this department may be obtained through WALES, where a file is maintained on both registered and stolen bicycles.

    3.    The United States Attorney has authorized the Property Clerk or his/her agent to return to owners, those bicycles or play vehicles recovered as evidence or suspected proceeds of crime when there is no arrest or suspect in the case.

    4.    Officials the rank of lieutenant and above, including acting lieutenants, are authorized to return bicycles and play vehicles to the owner under the following conditions:

    a.    There is only one claimant;

    b.    Definite proof of ownership has been established;

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **10 of 37** |

    c.    An arrest has not been made in the case and no suspect is known; and

    d.    The property book and the PD Form 81 or 81-A (Property Released at District to Citizen) has been signed by the owner, if an adult, or if the owner is a juvenile, by a parent, guardian or other responsible adult.

    5.    Bicycles or play vehicles that cannot be returned to the owner(s) shall be processed through the Property Clerk in the manner prescribed for the class of property in which it fall.

**H.**    **Placing Stops in Pawn Shops**

    1.    The District of Columbia Municipal Regulations (DCMR) Title 16 authorizes the seizure of items in the custody of Pawn Shops or secondhand dealers, which are known to be missing, or for which probable cause exists to believe that such items are stolen. In lieu of taking possession, a member may place a "stop" on the property.

    2.    A "stop" is a temporary detainer, not to exceed 60 calendar days, that may be placed on articles in the custody of pawn shops or secondhand dealers whe a seizure would otherwise be authorized. This courtesy allows the merchant to retain custody of items while an investigation is being conducted to verify the status of these items.

    3.    During the period a stop is in effect, merchants shall:

    a.    Be prohibited from selling, disposing of in any manner, or changing the identity of the property; and

    b.    Keep such items of property separate and distinct from all other property in their place of business.

    4.    Failure to comply with a police stop constitutes a violation of the DCMR. Members shall notify the Burglary, Arson, and Pawn Section immediately if a merchant refuses to comply with the requirements of a stop.

    5.    When members locate property in pawn shops or secondhand dealers which is suspected of being lost or stolen, they shall:

    a.    Advise the owner of the establishment that a stop is being placed on the item(s) in question;

    b.    Prepare a PD Form 82-B (Stop Record) in triplicate;

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **11 of 37** |

   c.   Detach and give the prepared original to the owner/manager of the establishment; and

   d.   If working the day work tour of duty, notify the Burglary, Arson and Pawn Section immediately. If the stop is placed after 1600 hours, the notification shall be made by the member on the next business day.

6.   The Burglary, Arson and Pawn Section shall maintain a control log on outstanding stops and assign a control number to each stop. The member placing the stop shall record the control number in the appropriate sections of the second and third copies of the PD Form 82-B.

7.   It shall be the responsibility of the member who places the stop to conduct an investigation to determine whether or not the items in question are lost or stolen. Upon being notified by the member of the results of the investigation, an official of the Burglary, Arson and Pawn Section will then authorize the member to seize the property or discontinue the stop.

8.   If authorization is obtained to seize the item(s), the member shall:

   a.   Record the name of the official authorizing the seizure in the appropriate block on the PD Form 82-B;

   b.   Return to the establishment where the stop was placed and seize the items;

   c.   Issue the owner/manager of the establishment a PD Form 82-A (Property Receipt); and

   d.   Record the recovered property on the property book in compliance with the applicable provisions of this order and include the Burglary, Arson and Pawn Section control number (Stop Number) in Part VII (Statement of Facts) of the PD Form 81.

9.   Members shall prepare a PD Form 251 when no prior report has been made. If a PD Form 251 has been completed, a PD Form 252 shall be submitted reporting the circumstances relative to the recovery of the property. The PD Form 252 shall bear the same complaint numbers as those listed on the original report. In addition, all entries and other reports required by the applicable provisions of this order shall be completed.

10.   Property seized from pawnbrokers or secondhand dealers as indicated above shall, in most cases, be classified as Evidence or Suspected Proceeds of Crime.

1911

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **12 of 37** |

11.   If an official from the Burglary, Arson and Pawn Section instructs the member to discontinue the stop, the member shall:

    a.   Record the name of the official authorizing the discontinuance in the appropriate block on the PD Form 82-B; and,

    b.   Return to the establishment where the stop was originally placed and advise the owner/manager that the stop has been discontinued.

12.   The official in charge of the Burglary, Arson and Pawn Section shall cause a member of his/her command to closely monitor the Stop Control Log to ensure that the provisions of this order relative to placing and removing a stop are complied with.

I.   **Court Property Control Office.**

1.   This department maintains a Court Property Control Office located on the C Street level of the D. C. Superior Court Building.  The Court Property Control Office is open from 0830 to 1730 hours, Monday through Friday.  This office handles, on a temporary basis, property/evidence that may be needed in court.

2.   Members retrieving items of evidence from the organizational element for presentation in court shall:

    a.   Sign for the property on the Property Book and respond to court with the appropriate original PD Forms 81.

    b.   After appearing in court, respond to the Court Property Control Office and turn the property over to the clerk, who will sign for it on the Court Property Control Office Log Book and make the necessary entries into PEICS.

    c.   If the Court Property Control Office is closed, return the property to their element's station clerk, who will sign for and take custody of the property.

3.   A firearm will not be accepted by the Court Property Control Officer unless the firearm has been processed through the Firearms Examination Section, and the member is issued a UN-89 (Firearm in Custody of the Property Division) that shall be attached to the PD Form 81.  (NOTE: Members must have the PD Form 81 with the weapon at the time of processing by the Firearms Examination Section.)

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **13  of  37** |

4.      Members who need an item of property for court presentation shall notify the Court Property Control Office or the Property Control Branch by telephone no later than 1400 hours on the "business day" prior to the date the property will be needed. Items that will be needed for court presentations on Monday shall be ordered no later then 1400 hours on the previous Friday.

5.      Members who receive continued court dates may request items of property in advance. Members shall document advanced requests for property in their personal notebooks, listing:

      a.      The date and time of the request,

      b.      The property officer contacted,

      c.      The item of property requested, and

      d.      The date needed in court.

6.      When items of property have been ordered, they will be delivered to the Court Property Control Office for availability on the requested date. These items shall be retained by the Court Property Control Office for a period not to exceed 3 days. If the member has not called for the property after 3 days, it will be returned to the Property Division. If needed in court at a later date, the member will have to again request that the property be delivered to the Court Property Control Office as outlined above.

7.      After first checking into Court Liaison, members who have ordered item(s) of property shall:

      a.      Respond to the Court Property Control Office;

      b.      Sign the Property Control Log Book, thereby accepting personal custody of the property;

      c.      Obtain a blank PD Form 81-C (Property Release); and

      d.      Ensure that the property control number and the disposition information is completed on the PD Form 81-C.

8.      Members who have obtained property from the Court Property Control Office are required to return the property to that office before checking out of court unless that office is closed. On returning property to the Court Property Control Office, members shall:

      a.      Provide the Court Property Control Officer with information as to the status of the property (e.g., introduced into evidence, etc.).

1913

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 14 of 37 |

b.  If a disposition is available in the case, or the property is no longer needed for prosecution, the member shall submit a completed PD Form 81-C containing the signature of the appropriate prosecuting attorney.

c.  If no disposition is available and the case has been continued, the property may at this time be reordered.

9.  When the decision is made not to paper a case, the member shall have the reviewing attorney sign the PD Form 81-C releasing the property. The completed PD Form 81-C shall then be delivered to the Court Property Control Officer. If the Court Property Control Office is closed, members shall return the PD Form 81-C to their element's property officer for subsequent transmittal to the Property Control Branch.

10.  In cases that do not require the member to make additional appearances in court, the member shall present a completed PD Form 81-C signed by the appropriate prosecuting attorney, and submit it to the element's property officer for subsequent transmittal to the Property Control Branch.

11.  After 60 days, if there is no defendant or suspect in a case, and it is evident that the property will not be needed in court, the member who initially handle the property shall prepare and submit a properly signed PD Form 81-C to their element property officer.

12.  In all cases, the property control number, the item number, and a brief description of the property shall be entered on the PD Form 81-C.

J.  Disposition of Narcotics and Dangerous Drugs.

1.  Whenever any member of the force comes into possession, in any manner, of suspected narcotics and/or dangerous drugs, he/she shall:

a.  Make the appropriate entry on the organizational element's Property Book;

b.  Prepare a separate PD Form 81 for each DEA-7 recorded seizure, ensuring that the DEA laboratory control number assigned by the Narcotics and Special Investigations Division (NSID) is recorded on the PD Form 81 in block number 7, and that the property control number is listed in the statement of facts on each DEA-7;

c.  Contact a Crime Scene Search Officer or a member of the element's vice section for assistance in processing the narcotics and/or dangerous drug; and,

1914

d. Ensure that the suspected narcotics and/or dangerous drug is placed in a PD Form 95 (Narcotic Evidence Bag) and processed as follows:

(1) Utilizing a black felt tip marker, the member shall enter his/her initials, badge number, and the date inside the bag at the top edge where the seal will be applied.

(2) The member shall enter the top edge of the bag into the heat sealer and hold the lever down for a few seconds After removing the bag from the heat sealer, the member shall check the seal to ensure that the bag is tightly secured.

2. Members shall keep in mind the importance of the continuity of evidence. Members shall protect the suspected narcotic drug in every possible way, keeping it in a secure place until it is safely deposited in the narcotics evidence locker maintained at each district station.

3. When an arrest is made between 0800 to 1000 hours and narcotics evidence is involved, the arresting officer shall comply with the procedures outlined above, with the exception of depositing the evidence into the evidence locker. The arresting officer shall respond to the NSID, where the sealed plastic bag containing the evidence and a completed DEA-7 shall be turned over to a member of that division. The NSID member shall provide the arresting officer with a PD Form 82-A and a laboratory control number that is to be maintained as part of the arresting officer's case jacket. The PD Form 82-A shall be returned to the element and attached to the page opposite the original entry in the Property Book. The laboratory control number shall be listed in item number 7 on the original PD Form 81.

4. When an arrest involving narcotics evidence is made between the hours of 2400 and 0800, the arresting officer, after properly preparing the evidence, shall ascertain if the evidence contained in the evidence locker has been picked up by an NSID member. If so, the arresting officer shall hand deliver the evidence as indicated above. If not, the officer shall deposit the evidence into the evidence locker.

5. Between 2400-0800 hours, a member of the NSID shall respond to each district station and take possession of the suspected narcotic drugs that have been deposited into the evidence lockers. The NSID member shall sign for each sealed PD Form 95 by affixing his/her signature in the Property Book opposite each entry.

6. The NSID shall assign a laboratory control number to each exhibit and shall be responsible for the proper transmittal of the suspected narcotic drug to the Metropolitan Police officer assigned to the Drug Enforcement Administration laboratory for testing, safekeeping and disposal.

7.   The laboratory control number assigned to the evidence by NSID shall be forwarded to the case officer for inclusion in the case jacket and listed in item 7 on the original PD Form 81. In preparing any narcotics case for presentation in court, the property control number and the laboratory control number(s) must be included in the narrative section of PD Form 63 (Prosecution Report).

8.   Title 21, Code of Federal Regulations, sections 307.21 and 207.22, effective May 1, 1971, established a uniform method for disposal of abandoned narcotic drugs and safeguarding of narcotic drugs to be used as evidence in any criminal or administrative proceeding. Disposal cannot commence until the United States Attorney for the District of Columbia certifies that such narcotic drugs are no longer needed as evidence. The actual destruction or disposal of narcotic drugs shall only be accomplished by Property Control Branch personnel.

9.   Members needing narcotics evidence for court, after having followed the procedures outlined in Part II of this order, shall respond to the Court Property Control Office and pick up the narcotics evidence. Members shall contact the Property Control Branch, if they have questions concerning this procedure.

10.  Members, upon receiving a final disposition in a narcotics case, shall prepare a PD Form 81-C and deliver it to the Court Property Control Officer or, when the office is closed, forward it through their element's property officer to the Property Control Branch.

**Part II**

A.   Prisoner's Property

1.   Station clerks shall review each entry made in the Property Book during their shift to ensure that entries have been properly recorded. This is of particular importance when prisoner's property is involved as such property may contain items of value.

2.   The recovering member shall confiscate and process **all** personal property belonging to a prisoner.

a.   The recovering member shall conduct a field search of the prisoner and ensure that all items have been removed.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **16a of 37** |

b.     Prisoners:

(1)    **Shall not** be allowed to retain **any** personal property. Personal property includes, but is not limited to, lighters, combs, matches, cell phones, billfolds, wallets, monies, personal papers and personal identification.

(2)    May retain the following items:

(a)    Religious head coverings [e.g., a kippah (yarmulke), kufi, hijab, taqiyah, or turban], in accordance with SO-12-03 (Religious Head Covers and Other Articles of Faith).

(b)    Medical equipment once inspected thoroughly for contraband and weapons by recovering members (e.g., wheelchairs, oxygen tanks, canes, crutches, knee braces, and medical alert necklaces/bracelets).

NOTE: When a prisoner requires medical attention and/or medication, a PD Form 313 (Arrestee's Injury/Illness Report) shall be completed by the member for transport to the hospital, in accordance with GO-PCA-502.07 (Medical Treatment and Hospitalization of Prisoners).

Members who have questions regarding whether or not an item should be confiscated shall consult with their supervisor.

# THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 17 of 37 |

c.   If the entries are accurate and coincide with the property received, sign the entry as accepting station clerk and have the recovering member sign the entry as the "Searching Officer";

d.   Place the items into a PD Form 14, listing on the envelope all property placed inside.  Those items that will not fit into a property envelope shall be properly tagged, secured, and retained by the organizational element;

e.   Prepare a PD Form 58 (Prisoner's Property Receipt); give the original to the prisoner and place the copy in the property envelope;

f.   As a safeguard against another person, other than the owner, gaining possession of a receipt and presenting him/herself as the owner, or to assist in returning personal property should a prisoner lose his/her copy of the receipt, or the prisoner not have any documented identification (e.g., drivers license, work identification, etc.), station clerks shall note on the back of the element's copy of the PD Form 58, personal information that would generally be known only to the person from whom the property was taken (e.g., name of father or mother, date of birth, etc.); and,

g.   Make booking function entries in the Criminal Justice Information System (CJIS) "Property Book" and "Page" fields to record any prisoner's personal property which remains at the booking element after the prisoner is transported to another location. The name and badge number of the station clerk approving the Property Book entry shall be entered in the "Approving Officer" and "Badge" fields.

3.   All perishable personal property belonging to prisoners shall be handled in accordance with the guidelines set forth in Title 4-162 of the D. C. Code and DCMR Title 6A (Police Personnel), Chapter 8, Section 804.5.

4.   When a prisoner is being released from custody and all personal property is returned, the prisoner shall affix his/her signature in the appropriate block on the Property Book.  The station clerk returning the property shall complete all other necessary entries to indicate that all property was returned to the prisoner.  The station clerk shall sign his/her name as a witness to the signature of the prisoner.  The prisoner's copy of the PD Form 58 and the original property receipt shall then be destroyed.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 18 of 37 |

5.    When a prisoner is sent to court or to another place of confinement, and part of his/her personal property is not returned, the station clerk shall list such property on the Property Book (as indicated in "c." below) and advise the prisoner of what steps must be taken to recover the remainder of the property.

    a.    All personal property, except that property which can be maintained inside of a property envelope, shall be retained at the element.

    b.    The property that was returned to the prisoner shall be crossed out on the property receipt and property envelope.  The member returning the property shall place his/her badge number, initials, and the date of the partial return on both copies of the property receipt.

    c.    The prisoner shall sign the Property Book after the station clerk has checked the space indicating "All Property Returned Except:" and has listed those items that cannot be sent along with the prisoner.

    d.    The property envelope shall be released by the station clerk to the transporting members who shall be responsible for delivering the property to the member who takes custody of the prisoner.  The transporting members shall note the person's name who takes custody of the property on the PD Form 775 (Daily Vehicle Inspection and Activity Report).  At no time will the contents of the property be turned over to the prisoner while he/she remains in custody.

6.    Personal property that is not returned shall be retained at the element where the prisoner was booked.  The station clerk shall advise the prisoner that he/she or a person designated by him/her must claim the remaining property within 90 days.  After 90 days, the property shall be forwarded, with PD Form 81, to the Property Control Branch for disposition.

7.    Property that is not called for at the Property Control Branch within 90 days shall be classified as Abandoned and disposed of in accordance with the provisions of Title 4 of the D. C. Code.

B.    **Station Duties.**

1.    Station clerks shall review each entry made on the Property Book during their tour of duty to ensure that the provisions of this order have been complied with.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 19 of 37 |

2.   During periods when the organizational element's property office is closed, station clerks shall:

a.   Ensure that property held by their element is properly stored, secured, and that the necessary entries into PEICS have been made.

b.   Return to the claimant, personal property that can be released as authorized by the appropriate provisions of this order, making the necessary entries into PEICS.

3.   If unable to contact the owner of property that can be released at the element (e.g., Found Property), station clerks shall:

a.   If the element's property officer is on duty, transfer the property and PD Form 81 to his/her custody. The property officer shall then be responsible for making all notifications and entries on the appropriate reports.

b.   During the hours when the element's property office is closed, the responsibility for notifying the owner shall be turned over to the oncoming station clerk. This effort will continue until either the owner is notified or the property is turned over to the element's property officer.

4.   All property, other than prisoner's property taken from individuals when arrested, shall be forwarded to the Property Control Branch on the next scheduled delivery day. A property delivery for each patrol district shall be scheduled once a week. Property held at the element shall be forwarded to the Property Control Branch unless retention is expressly authorized by the Property Clerk or his/her agent. If authorization is obtained to retain property at the element, a notation to this effect shall be noted on the PD Form 81.

5.   In those cases involving John/Jane Doe arrests, the station clerk shall, upon being notified of the defendant's true name by the Central Cell Block, list this information in the appropriate space on the Property Book. This information shall also be forwarded to the element's property officer.

6.   In those instances where a PD Form 81 has been forwarded to the Property Control Branch, station clerks shall direct owners who seek to claim their impounded vehicle to report to the Property Control Branch for payment of the required fees.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 20 of 37 |

## PART III

### A.   Found Property.

1.   Whenever found property is turned over to a member of the department by a citizen, the member shall provide the citizen with a PD Form 82-A.  All members shall carry a sufficient number of PD Forms 82-A with them at all times when assigned to street duty.  Members shall not indicate that the finder has any right or claim to the found property.

2.   Upon completion of the PD Form 82-A, the original shall be provided to the citizen and the copy shall be placed in a special file maintained by the organizational element's property officer.  The appropriate entry in the Property Book shall be made and a PD Form 251 and a PD Form 81 shall be prepared.

3.   Any information that is not available at the time the receipt is issued (e.g., Property Book, page number, CCN, etc.) shall be recorded on the element's copy of the PD Form 82-A prior to the conclusion of the member's tour of duty.

4.   Found property may be returned to the owner at the scene of recovery if all of the following conditions are met:

a.   The claimant produces satisfactory proof of ownership;

b.   The release of the property is approved by an official the rank of lieutenant or above, including acting lieutenants;

c.   An explanation is provided on the PD Form 251 relative to the circumstances resulting in the return of the recovered property; and,

d.   The owner signs a PD Form 82-A.

5.   If property is released to the owner at the scene, members shall, as soon as practicable, respond to their element and make the appropriate entry in the Property Book.  The member shall print "RETURNED ON SCENE" in bold face red letters on the face of the PD Form 82-A and attach both copies to the Property Book.

6.   If the property is not released at the scene, and the owner can be identified, the recovering officer shall attempt to notify the owner.  If unable to contact the owner by the expiration of the tour of duty, the member shall inform the station clerk who shall then be responsible for making the notification and the additional entries on PD Forms 251, 81, and the Property Book.  If the station is unable to notify the owner, the property shall be turned over to the element's property officer.

7.     Members shall follow the procedures outlined above for property found in public vehicles <u>except</u> that the D.C. Taxicab Commission shall be notified and provided with a complete description of the item(s) recovered. The name of the person notified and the date and time of the notification shall be included in the PD Form 251.

8.     Property found in or on Metrorail trains, stations or parking lots by members of the department shall be turned over to the Metrorail employee manning the station keyhouse located in the lobby of the Metrorail station. Upon receiving the property, the Metrorail employee will issue the member a receipt.

9.     Property found on a Metrobus shall be turned over to the bus operator who will in turn issue the member a receipt for the property.

10.    All receipts for found property issued to members by Metro Transit employees shall be submitted to the station clerk at their respective element after the member:

a.     Makes an entry on the Property Book listing a brief description of the property that was found and turned over to the Metro Transit employee; and,

b.     Completes a PD Form 251, classified as Found Property, indicating that the property was turned over to the Metro employee.

11.    Property turned over to members at the scene of a fire shall be classified as Found Property.

B.     <u>Abandoned Property.</u>

1.     Abandoned property shall be processed in the same manner as Found Property , <u>except</u> it shall be classified as Abandoned Property.

2.     An "<u>abandoned vehicle</u>" is any motor vehicle:

a.     Parked in the same place on public space for more than 72 hours;

b.     Whose owner cannot be reasonably located;

c.     To which a Warning Notice to Remove Abandoned Vehicle has been affixed; and,

d.     That remains parked in the same place on public space for at least 72 hours after the notice has been affixed.

1921

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | 1 | **22 of 37** |

3.  A "junk or scrap vehicle" is any motor vehicle which is in a wrecked, dismantled or irreparable condition, and whose owner cannot be reasonably located.

4.  The Office of Unified Communications (OUC) shall screen calls concerning vehicles to determine if a violation requires police action or if the vehicle is abandoned/junk. Station clerks who receive calls of this nature shall refer them to the OUC.

5.  Members handling abandoned or junk vehicles shall:

   a.  Perform a thorough investigation to determine ownership, to include:

      (1)  A canvass of the immediate vicinity in which the vehicle was found, and

      (2)  A check of the license plate and vehicle identification number, if any.

   b.  Forward all information by telephone to Abandoned Vehicle Operations, Department of Public Works (DPW), on 673-6833.

6.  Abandoned Vehicle Operations, has been granted the authority to remove abandoned and junk vehicles from public and private property.

C.  Property Set Out for Eviction

1.  Property that is placed on public space as a result of eviction shall be removed only when it creates a hazard to public travel and the owner cannot be located or refuses to have the property removed.

2.  The removal of property outlined above shall be the responsibility of DPW.

3.  **<u>Only</u>** when property placed on public space poses an imminent danger and with the concurrence of the Watch Commander shall members take any items into police custody.

4.  It shall be the responsibility of the Watch Commander on duty in each organizational element to make the determination as to whether or not the property should be taken into police custody.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **23 of 37** |

5. If the Watch Commander determines that property placed on public space as a result of eviction must be safeguarded, he/she shall contact DPW at the number listed in Part III.B.5.b of this directive.

D. Estate of Deceases Person

1. Commanding officers, upon determining that the property of a deceased person is totally without adequate safeguards and a search for a relative or responsible person to accept custody of it has failed, shall arrange through the Director, Property Division, to have the property moved to a private storage or warehouse facility. These arrangements shall be coordinated with the Director, Office of Finance and Resource Management, when removal of the property requires resources outside those available within the Department. In the absence of the Commanding Officer, the Watch Commander on duty shall determine whether or not the property is without adequate safeguards.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 24 of 37 |

2. In instances where a person dies at a location other than their residence, and it becomes necessary for the department to assume responsibility for any personal property, the commanding officer handling the investigation of the death shall advise the commanding officer of the district where the deceased person's property is located and provide a brief account of the case. The commanding officer so notified shall then become responsible for ensuring that the property is adequately safeguarded.

3. In all cases where a member of the immediate family is not present, a search of the premises shall be made for a will, money, and other items of value that could be easily converted. These items of value shall be taken into custody and shall be immediately forwarded to the Property Clerk. Upon completion of the search, the premises shall be left secured.

4. Moving van personnel sent by the department's Property Clerk to the residence of a deceased person shall be assisted by the organizational element's property officer, who shall make an inventory of each item on PD Form 81 before the property is removed from the premises. The element's property officer shall not interfere with the packing of the property.

5. A copy of the PD Form 81 shall be given to the van driver for delivery to the Property Division and the original shall be retained by the element's property officer for entry into PEICS. The original shall then be forwarded by the element's property officer to the Property Control Branch.

6. A deceased person's vehicle(s) shall not be impounded if a relative or responsible person can assume custody. Members shall not permit such vehicles to be left at locations for extended periods of time where they might be exposed to theft or damage.

7. Although a PD Form 81 is required, the property of the deceased person **shall not** be listed on the element's Property Book. Instead, a notation shall be made on the left-hand page of the element's Property Book as follows:

    a. In the space provided for other types of property, the class of property shall be Estate of Deceased Person and the name and address of the deceased person shall be noted on the line after "Taken From" and "Address."

    b. On the space marked "Searching Officer", delete the word "Searching" and insert "Listing", and indicate the name of the member that listed and handled the property.

    c. The element's station clerk shall sign the Property Book wh he/she receives and checks the PD Form 81.

1924

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 25 of 37 |

8.   Valuables found among the personal effects of a deceased person shall be packaged separately, listed as a separate item on the same PD Form 81, and forwarded to the Property Clerk.  <u>Wills</u> found among the personal effects of a deceased person <u>shall be listed on a separate PD Form 81.</u>

9.   When baggage checks are found among the property of a deceased person, the member taking inventory of the property shall redeem the baggage check. The property shall then be taken to the member's element for processing and forwarding to the Property Clerk.  When applicable, a notation shall be made on the PD Form 81 to the effect that:  An expenditure of _____ was made by _____ of the _____ District to redeem the property held on the(se) baggage check(s).

10.   When a death occurs in a hotel/motel room, members who have been directed to inventory the property at that location shall permit an authorized representative of the hotel/motel to be present during the inventory <u>unless</u> his/her presence would defeat the ends of justice.

11.   When property of a deceased person is forwarded to the Property Clerk, the date the property is forwarded shall be inserted on the right-hand page of the Property Book and the commanding officer shall sign the Property Book to indicate proper disposition.

12.   Relatives wishing to claim the property of a deceased person shall be instructed to contact the Property Control Branch by mail or telephone.

E.   <u>Property of Alleged Mentally Ill.</u>

1.   Insofar as the provisions are applicable, commanding officers who find it necessary to safeguard the property of an alleged mentally ill person shall do so in the same manner as described for Estate of Deceased Person property.  The property shall not be taken into custody without prior authorization from the Property Clerk or his/her agent.

2.   Members shall bear in mind that when such property is taken into custody by the department, an expense is incurred by the District of Columbia.  Therefore, every effort shall be made to locate a relative or other responsible party to take custody of the property.

3.   It is the duty of the staff members at any District of Columbia hospital or mental health facility to search for and safeguard the personal property of persons to be admitted, when such persons are transported by members directly to the hospital/facility from locations other than a police facility.  This responsibility does not relieve the transporting members from taking the necessary precautions to ensure their safety or the safety of others.

1925

Case 1:19-cr-00390-RC   Document 75-1   Filed 04/05/21   Page 27 of 38

4.   Persons who are arrested and thought to be mentally ill shall be handled in accordance with General Order 308.4 (Processing of Suspected Mentally Disturbed Persons), and property seized as the result of such arrests shall be handled in accordance with this order.

F.   Evidence and Suspected Proceeds of Crime

1.   When evidence or suspected proceeds of a crime are taken from a person at the time of arrest, separate entries shall be made on the left-hand page of the Property Book. Property classified as Evidence or Suspected Proceeds of Crime shall be kept separate from personal property taken from a person at the time of arrest. The appropriate classification block on the Property Book shall be checked to indicate the type of property seized.

2.   When Items of property are classified as Evidence or Suspected Proceeds of Crime:

a.   Members shall mark Part I.E of the PD Form 81 with the code "E/C."

b.   <u>The recovering member shall mark the property</u> in a manner that does not deface or alter it's appearance, but will allow for easy identification by the member at a later date. The location and manner in which the item is marked shall be described in the narrative of the PD Form 81.

(1)   All pistols shall be marked by removing the grips from the frame of the weapon and making the appropriate marks beneath the grips.

(2)   If a question arises as to how an item of property should be marked, the member shall consult a Crime Scene Search Officer for guidance.

(3)   After processing, the property shall be turned over to the custody of the station clerk.

3.   When property classified as Evidence or Suspect Proceeds of Crime is removed from a person by members of other than those conducting the search, the entry on the Property Book shall signed by the member taking possession of property.

4.   In cases of evidence or suspected proceeds of crime where no arrest is made, the member first taking the property into custody shall be responsible for obtaining a PD Form 81-C from the appropriate prosecuting attorney and delivering it to the Court Property Control Office, <u>except</u> in the cases being handled by an investigator who shall then be responsible for obtaining the release. In all other cases where release is required, the member handling the case in court shall be responsible for obtaining and preparing the PD Form 81-C.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **27 of 37** |

5.      The classification Suspected Proceeds of Crime is primarily a holding classification for the purposes of investigation, and **not** a final classification.

<u>NOTE</u>: Members are reminded that possession of a large amount of currency, in and of itself, is not a sufficient justification to seize the currency as suspected proceeds of crime.

a.      Within ten (10) days, in cases involving property classified as Suspected Proceeds of Crime, the organizational element's property clerk shall notify the recovering member and the member's official that the recovering member must release or reclassify the property.

b.      The recovering member shall within five (5) days:

1.      Change the classification of the property, (e.g., Found, Safekeeping, Abandoned) by completing a PD Form 81-D; or

2.      Secure a PD Form 81-C from the appropriate prosecuting attorney and release the property to the owner; or

3.      Submit an extension request with justification to the Department Property Clerk through the chain of command.  The Department Property Clerk is authorized to grant or deny extension requests.

c.      Members shall contact the Asset Forfeiture Unit, Narcotics and Special Investigations Division, for guidance prior to changing a classification from "Suspected Proceeds of Crime" to "Held for Civil Forfeiture".

d.      The element property clerk shall forward each such PD Form 81-C or 81-D to the Evidence Control Branch.

e.      If the recovering member does not respond to the property clerk within five (5) days, the property clerk shall email the member's District/Division Commander for resolution.

6.      In situations involving "fresh pursuit" of a suspect from another jurisdiction, vehicles and all items contained within the vehicles may be released at the scene of the apprehension should the stop and apprehension be made by a law enforcement officer from the jurisdiction in which the pursuit was initiated. The suspect, however, shall be handled in accordance with General Order 301.3 (Operation of Emergency Vehicles, Fresh Pursuit, and Vehicular Pursuit).

7.      When a suspect being pursued from another jurisdiction is stopped and apprehended by a member of this department, neither the vehicle nor any item contained within the vehicle shall be released at the scene of the apprehension. All items shall be processed in accordance with the provisions of this order. Members from the jurisdiction in which the pursuit was initiated shall be directed to contact the Property Control Branch as to their requirements for gaining custody of the evidence.

8.      Requests received from other jurisdictions for evidence in custody of this department shall be referred to the Evidence Control Branch. The Evidence Control Branch shall, in conjunction with the Office of the General Counsel, ensure that all legal requirements have been satisfied prior to releasing the evidence.

9.      When cases are disposed of in court either by dismissal of the charges or conviction of the defendant, the member handling the case shall advise the claimant(s) to make arrangements for return of the property with the Property Clerk.

10.     Property in possession of this department, classified as Suspected Proceeds of Crime, cannot ordinarily be released by the Property Clerk to the claimant until a property release has been obtained from the court or the investigating officer has changed the classification. This applies even though there are no arrests or suspects in the case. Exceptions are made in cases of automobiles, bicycles and play vehicles which may be released, under certain circumstances, as outlined in other appropriate sections of this order.

Case 1:19-cr-00390-RC   Document 75-1   Filed 04/05/21   Page 29 of 38

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **28 of 37** |

G.   Held for Civil Forfeiture

1.   Property that is seized in connection with a narcotics or gambling violation and is the subject of a forfeiture action shall be classified as Held for Civil Forfeiture.

   a.   Members shall mark Part I.E of the PD Form 81 with the code "E/H."

   b.   The Property Clerk is responsible for instituting the administrative forfeiture process against money and other property seized by the Department for violations of narcotic laws.

   c.   The Special Litigation Section, OAG, is responsible for prosecuting civil forfeiture actions against money and other property seized by the Department for violation of gambling laws, and those narcotic seizures not subject to the administrative forfeiture process.

   d.   Members shall be responsible for establishing the connection between the seizure of property and a narcotics or gambling violation. The connection between the seized property and the violation must be specific. A PD Form 163 or PD Form 854 (Investigative File Report) must be attached to the PD Form 81 and forwarded to the Property Control Branch. An omission of relevant and necessary information may prevent or delay the civil action, which results in the mandatory return of property.

   NOTE:  Members who require additional information shall refer to General Order 601.3 (Handling and Accounting for Seized and Forfeited Property).

H.   Impounded Vehicles

1.   Impounded vehicles shall be handled in accordance with General Orders 303.2 (Notices of Infraction Procedures), 303.3 (Tow Crane Operation and Enforcement) and 401.1 (Field Reporting System). Impounded vehicles shall be inventoried in accordance with the procedures outlined in General Order 602.1 (Automobile Searches and Inventories). In addition to these requirements, the impounding member shall:

   a.   Notify OUC, as to the description of the vehicle, the location from which the vehicle was removed, and the impoundment location;

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 29 of 37 |

b.  Be responsible for ensuring that all appropriate reports and notifications are made. This responsibility applies to the impounding member, regardless of his/her assignment, and includes those instances where a vehicle is impounded at a facility other than the impounding member's organizational element; and,

c.  During periods of the year when radiators and engine blocks are subject to freezing temperatures, the impounding member shall drain the radiator and engine block unless one of the following circumstances exists:

    (1)  The member has been informed by the owner, or person who has knowledge of the vehicle, that there is sufficient antifreeze solution in the vehicle to prevent possible damage by freezing;

    (2)  There is attached to the vehicle, a currently dated tag indicating that the vehicle is equipped with permanent type antifreeze; or,

    (3)  A check by the impounding member indicates that a sufficient amount of antifreeze is present in the radiator to prevent freeze-up. This check shall be made with the antifreeze hydrometer distributed by the Property Division. The antifreeze solution must show a reading of at least +5 degrees to be considered as adequate protection.

2.  If the radiator is drained, members shall attach a PD Form 117 (Warning Notice) and a PD Form 285 to the steering wheel of the vehicle.

3.  Members shall attempt to notify owners that their vehicles have been impounded and explain the procedures the owner must follow in order to reclaim the vehicle. When an impoundment fee exists for those vehicles impounded at the districts for traffic violations, the fee must be paid at the Bureau of Adjudication, Department of Public Works, before the vehicle can be released.

4.  If unable to contact the owner, the member shall turn the PD Form 81 over to the oncoming station clerk at the expiration of his/her tour of duty. The station clerk shall then be responsible for notifying the owner and making the appropriate notation on the PD Form 81.

1929

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 30 of 37 |

5.    If an impounded vehicle remains unclaimed for 24 hours, the impounding officer shall notify the Auto Theft Desk and that office shall conduct an investigation to determine whether the vehicle is stolen.  The time, date, and name of the person notified shall be entered in the narrative of the appropriate police reports.

6.    Members who impound vehicles as evidence shall classify those vehicles as "Impounded/Evidence" on the Property Book.  Before the PD Form 81 is forwarded to the Property Control Branch, the recovering member shall confer with an Assistant United States Attorney or Assistant Corporation Counsel to determine if the vehicle shall be held as evidence.  The name of the attorney shall be entered on the PD Form 81.

7.    If the vehicle is needed as evidence, a line shall be drawn through the word "Impounded" on the corresponding entry of the Property Book.  If the vehicle is not needed as evidence, a line shall be drawn through the word "Evidence" on the Property Book. The member making the change shall affix his/her initials and badge number next to the changes made.  The member shall ensure that the unit's property officer is advised of any changes in classification by completing PD Form 81-D in order that any necessary hanges to PEICS can be made.

8.    When a recovered stolen motor vehicle is transported <u>on a flatbed vehicle directly from the street to the Blue Plains Impounding Lot,</u> the vehicle shall be accompanied by a completed PD Form 81.

9.    When stolen motor vehicles are recovered, the recovering member shall immediately notify the owner or person reporting the vehicle stolen.  If unable to contact the owner or reporting person, a notation of the attempt shall be made on the PD Form 251 or 252 as appropriate.  This fact shall be brought to the attention of the element's station clerk who shall then be responsible for completing the notification.  In instances where the owner or person reporting the vehicle stolen resides outside the District, and cannot be reached by telephone without expense to the District of Columbia, the recovering member shall make the long distance notification in compliance with General Order 302.3 (Department Telephones).

10.    In a case where the interstate transportation of a stolen motor vehicle is involved, the recovering member shall notify the Auto Theft Desk and that section shall be responsible for notifying the Federal Bureau of Investigation.  The Auto Theft Desk shall also be notified in all cases of recovered motor vehicles where an arrest is made at the time of recovery.

11.    Information relative to the recovery of stolen motor vehicles shall be transmitted by teletype to the Telecommunications Branch, Communications Division  An entry shall be made on the teletype message and on the recovery report, listing the t date, and name of persons notified by the recovering member.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **31** of **37** |

12.    The United States Attorney for the District of Columbia has authorized the Property Clerk to return to the owner, without separate release for each automobile, those automobiles reported stolen and recovered by the police, including those in which an arrest is made.

13.    Citizens, who submit requests to elements for repossession of impounded vehicles to which delinquent liens exist, shall be advised to contact the Property Control Branch.

I.    **Safekeeping.**

1.    Occasionally, members will take unattended property into custody so that it may be safeguarded until the owner is located. This property shall be classified as being held for Safekeeping and handled in the same manner as Found Property.

2.    Members, or station clerks when applicable, shall make every effort to notify the owner.

J.    **Illegal Fireworks.**

1.    Members recovering illegal fireworks shall, in addition to recording the property on the Property Book, prepare a PD Form 81 and complete all other required reports.

2.    The recovering member shall notify the Explosive Ordnance Disposal Section (EOD), Special Operations Division, of such recovery between the hours of 0700 and 2300, Monday through Friday  After 2300 hours and on weekends this notification shall be made to the watch commander, Communications Division, who will then notify the standby technician. The standby technician will contact the recovering member and make appropriate arrangements for disposal. The time, date, and name of the technician shall be included in the narrative of the PD Forms 81 and 251.

3.    After the notification has been made, the member shall turn the fireworks over to the organizational element's station clerk, who will ensure that the name of the EOD technician to whom the fireworks are released is noted on the Property Book.

4.    With respect to storage limitations and safety factors, all explosive and incendiary materials coming into the custody of the EOD shall be destroyed immediately. Members handling court cases involving illegal fireworks shall have the technician involved subpoenaed in order that expert testimony may be provided in lieu of physical evidence.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **32 of 37** |

5.   All fireworks coming into the possession of this department shall be carefully wrapped in packages by the recovering member.  Each package shall be clearly marked "FIREWORKS-USE CAUTION", in addition to all other required identifying information.

## PART IV

   A.   <u>Element Property Officers.</u>

   1.   Organizational element property officers shall be responsible for the security and safekeeping of property held at their elements and for the proper transfer of property to the Property Control Branch.  Unless otherwise prescribed in this order, all property, except prisoners' personal property, shall be transferred to the Property Control Branch on the next regularly scheduled delivery day.  The property shall be accompanied by the original and the numbers one and two copies of the PD Form 81.

   2.   Element property officers shall forward all properly signed and approved PD Forms 81-C received from members handling cases in court to the Property Control Branch.  The PD Form 81-C must contain the property control number and the disposition if an arrest was made in the case.

   3.   It shall be the responsibility of the element's property officer to nc owners relative to the recovery of property whenever the recovering officer or station clerk has been unable to make such notification.  The element's property officer shall ensure that this notification is noted on all applicable reports.

   4.   Element property officers shall notify the Auto Theft Desk when automobiles remain unclaimed for 24 hours.

   5.   In cases involving property classified as Suspected Proceeds of Crime, after a 60 day period has elapsed the element's property officer shall require the recovering member to:

      a.   Change the classification of the property (e.g., Found, Safekeeping, Abandoned, etc.) by completing a PD Form 81-D; or

      b.   Secure a PD Form 81-C from the appropriate prosecuting attorney.

      c.   The element property officer shall forward each such PD Form 81-C or 81-D to the Property Control Branch.

   6.   Element property officers shall ensure that all property that is to transferred to the Property Control Branch is properly recorded on a PD Form 81, and that the necessary signatures have been entered on the Property Book.

1932

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **33 of 37** |

7.      Element property officers shall ensure that all data from the PD Form 81 is accurately entered in the PEICS. They shall record the property control numbers on the PD Form 81 and on the corresponding entry in the Property Book.

8.      Element property officers shall forward all unclaimed recovered property (except prisoners' property) to the Property Control Branch on their designated delivery day each week.  Should the need arise to retain the property at the element beyond the designated delivery day, permission shall be obtained from the Property Control Branch.  The member authorizing the temporary retention, as well as the date and time the authorization is received, shall be noted on the PD Form 81.

9.      When a large amount of money is recovered by members of the department, the money shall be transported by at least two officers directly to the Property Division during normal business hours where it will be counted by a member of the Property Control Branch in the presence of the delivering members.  During other times when the Property Control Branch is closed, the element's watch commander shall ensure that the money is safeguarded.

10.     To ensure accuracy, large sums of money recovered and in the custody of this department shall be counted by at least <u>two</u> members.  The total sum shall be indicated on the PD Form 81 and the Property Book.

11.     Between the hours of 0800 to 1400, Monday through Friday, the money and the PD Form 81 shall be hand carried to the Property Control Branch where the total sum will be verified by an automatic money counter.

12.     When the Director, OFRM, dispatches moving vans to a location for the purpose of removing property (e.g., eviction, deceased, or alleged mentally ill person) the element's property officer shall respond and take inventory of the property using the proper number of PD Forms 81.  The element's property officer shall ensure that all appropriate entries are made in the PEICS and on the Property Book.

13.     Element property officers shall, in addition to any other duties assigned, be responsible for:

a.      Maintaining custody and control over all property held at the element;

b.      Safeguarding all evidence so as to maintain a proper chain of custody for court;

c.      Reviewing all PD Forms 81 and property listed thereon for accuracy and completeness;

1933

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 601.1** | **April 30, 1992** | **1** | **34 of 3** |

    d.    Ensuring that miscellaneous property such as clothing, tools, and other loose items are securely wrapped or boxed with a PD Form 285 attached;

    e.    Ensuring that all serial numbers and identification numbers are correctly entered on the PD Form 81 and in the PEICS.; and,

    f.    Continually reviewing the Property Book to ensure that all items are listed accurately, and that the property control numbers are listed for all items.

    14.    All property listed on the PD Form 81 that has been forwarded and transferred within the PEICS to the Property Control Branch will become the responsibility of that branch, regardless of the fact that the property may remain in the physical custody of the element.

    15.    Each element which handles property on a regular basis shall set aside a secure space for the temporary storage of evidence/property by the element's property officer. Access to this storage area shall be strictly limited to ensure the integrity of evidence that may later be introduced in court.

    B.    <u>Officials.</u>

    1.    Officials, the rank of lieutenant and above, including acting lieutenants, are authorized to release property (other than firearms, evidence*, or suspected proceeds of crime*) being held at an organizational element when all of the following circumstances exist:

    a.    The property is still in the custody of the element;

    b.    There is only one claimant and he/she can provide positive identification and definite proof of ownership; and,

    c.    If the claimant is not the owner, the Property Clerk may be contacted, during normal business hours, for authority to release.

    NOTE:    *Bicycles, play vehicles, and impounded vehicles may be released in accordance with other provisions of this order.

    2.    To complete this type of property release transaction, the Property Book and the PD Form 81 or 81-A must be signed by the claimant. Juvenile claimants must be accompanied by a parent, guardian, or other responsible adult when claiming property.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 601.1 | April 30, 1992 | 1 | 35 of 37 |

3.     Upon release of the property, the signed PD Forms 81 or 81-A shall be forwarded to the element property officer who shall then make the necessary disposition entry into the PEICS.

4.     Impounded vehicles can be released at the element to claimants in possession of a PD Form 147-A (Property Release Card) provided by the Property Control Branch.  Vehicles shall not be released after the date indicated on the release card. Should the claimant appear at the element after the date indicated on the release card, he/she shall be instructed to report to the Property Control Branch to determine if additional storage fees are due.

5.     Once the impounded vehicle has been released, the PD Form 147-A will be given to the element's property officer who shall attach the form alongside the appropriate entry in the Property Book.

6.     Whenever an item of property listed on the Property Book is discovered to be lost or missing, an official of the element shall immediately bring the matter to the attention of the watch commander who shall conduct an immediate and thorough investigation.

7.     Motor vehicles in the custody of this department create serious problems of processing and storage.  Therefore, the element property officer's immediate supervisor shall ensure that impounding members utilize every authorized method available to effect the release of impounded vehicles to their rightful owners.

C.     **Commanding Officers.**

1.     Commanding officers shall assign an official of their command, the rank of lieutenant or above, to check the Property Book at least once each day.  This provision shall not relieve other officials from the responsibility of ensuring that all property entered on the Property Book is handled in accordance with the guidelines set forth in this order.

2.     Commanding officers shall ensure that the property of a deceased or alleged mentally ill person, without adequate safeguards or a lawful claimant, is taken into custody for safekeeping.  Whenever possible, the removal of the property shall be coordinated with the Property Clerk.

3.     In such cases, commanding officers shall exhaust all other means available for safeguarding a decedent's estate or the property of an alleged mentally ill person before ordering the removal of the property to the property warehouse.  Members must remember that this department no longer provides free moving and storage services.  Therefore, all costs incurred as the result of this service must be assumed by the claimants of the impounded property.

1935

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **GENERAL ORDER 601.6** | **SEPTEMBER 7, 1994** | 2 | 36 OF 37 |

4.      Property placed on public space as the result of an eviction shall be ordered removed only when it creates a hazard to public travel and the owner cannot be located or refuses to have the property removed, or because the property's significant value dictates that it should be safeguarded.

5.      Commanding officers shall decide the method to be utilized to open locked containers.

6.      Commanding officers shall notify the Property Clerk of the names of members of their elements requiring password access to the PEICS.  When the need for access is no longer required, they shall notify the Property Clerk so that the names may be removed from the PEICS access table.

**PART V**

A.      **Property Control Branch.**

1.      The Property Control Branch shall be responsible for the proper receipt, recording, and safe storage of all property forwarded to the custody of the Property Clerk.

2.      Property in the custody of the Property Control Branch shall be released only upon authorization of the Property Clerk or his/her designee.

3.      · The Property Control Branch shall accept all fees resulting from the storage of property.

4.      Members assigned to the Property Control Branch shall:

a.      Thoroughly inspect all property before assuming custody;

b.      Ensure that the property has been listed properly on the PD Form 81;

c.      Ensure that the data is correctly entered into the PEICS; and,

d.      If the property, the PD Form 81, or the PEICS data, is unacceptable, advise the organizational element's property officer of any discrepancies.  The element property officer shall then make the necessary corrections and have the property ready for transfer to the Property Control Branch on the next scheduled delivery day.

1937

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **GENERAL ORDER 601.1** | **SEPTEMBER 7, 1994** | 2 | 37 OF 37 |

**B.    Director, Property Division.**

1.    The Director of the Property Division is designated as the Metropolitan Police Department's Property Clerk and is governed by all requirements and provisions in D.C. Code Title 4-151, et. seq.

2.    During periods of civil disorder, the Director, Property Division, shall activate an Emergency Property Receiving Office.  Sufficient personnel shall be requested by the Director to perform clerical functions and to establish 24-hour security at the warehouse.  The property warehouse shall remain open on a 24-hour basis during the emergency in order to sort, record, and identify all recovered property.  Personnel assigned to this facility shall prepare all PD Forms 81, make all necessary entries into the PEICS, and record the property in a Property Book especially maintained for this purpose.

3.    Additional members shall be assigned to the Emergency Property Receiving Office for the purpose of locating lawful owners of the recovered property.

4.    The Property Clerk shall be held responsible for resolving all disputed claims arising over the ownership of property in the custody of this department. Hearings are conducted to resolve such disputes and members notified to appear before these hearings are obligated to appear.

Fred Thomas
Chief of Police

FT:RDG:blh

1938