# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | | |
| | : | Criminal Action No.: | 19-390 (RC) |
| v. | : | | |
| | : | Re Document No.: | 27, 28, 33, 34, |
| | | | 35, 38, 39, 40. |
| MICHAEL JABAAR WILKINS, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

**GRANTING THE GOVERNMENT'S MOTIONS IN LIMINE TO EXCLUDE ANY EVIDENCE OF VICTIMS' OTHER SEXUAL BEHAVIOR AND SEXUAL PREDISPOSITION; PRECLUDE USE OF VICTIMS' LAST NAMES; INTRODUCE BUSINESS RECORDS EVIDENCE; OFFER EXPERT WITNESS TESTIMONY; PROHIBIT REFERENCES TO SENTENCING, EXCLUDE WITNESSES FROM THE COURTROOM DURING TRIAL; EXCLUDE EVIDENCE NOT PRODUCED IN RECIPROCAL DISCOVERY; PRECLUDE SELF-SERVING HEARSAY; GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION TO ADMIT OTHER CRIMES EVIDENCE; DENYING DEFENDANT'S MOTION TO SEVER ASSAULT CHARGE IN INDICTMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.**

## I.  INTRODUCTION

Defendant Michael Jabaar Wilkins is charged with two counts of sex trafficking by force, fraud, and coercion, four counts of transportation of an individual with an intent to engage in prostitution, two counts of coercion and enticement to travel in interstate commerce to engage in prostitution, one count of interstate travel and transportation in aid of racketeering enterprises, and one count of assault.  Superseding Indictment, Dec. 9, 2020, ECF No. 61.  A jury trial is scheduled to begin in this case on July 26, 2021.

In brief, Mr. Wilkins stands accused of trafficking three victim-complainants from Norfolk, Virginia, to Washington, D.C. to engage in prostitution and other commercial sexual acts.  *Id*.  The charged offenses occurred between 2011 and 2019, during which time Mr. Wilkins is alleged to have transported these complainants to "the Track"— a location in the District

under investigation by the Metropolitan Police Department of the District of Columbia ("MPD")
and FBI Child Exploitation and Human Trafficking Task Force due to the prevalence of street-
level commercial sexual exploitation in the area.  Mr. Wilkins is also charged with assaulting one
of the complainants while she was working at the Track—an altercation that was caught on tape
by a security camera.

Before the Court are a number of motions from both parties.  The Government has filed
motions in limine seeking: (1) the exclusion of any evidence of the complainants' other sexual
behavior and sexual predisposition (ECF No. 27); (2) the preclusion of use of the victims' last
names (ECF No. 28); (3) the introduction of business records evidence (ECF No. 33); (4) the
introduction of expert witness testimony (ECF No. 34); (5) the prohibition of references to
sentencing, the exclusion of witnesses from the courtroom during trial, the exclusion of evidence
not produced in reciprocal discovery, preclusion of self-serving hearsay, admission of jail call
admissions, and preclusion of Mr. Wilkins's counsel cross-examining government witnesses
regarding inadmissible criminal convictions (ECF No. 35); (6) the admission of electronic
communications evidence (ECF No. 36); and (5) the admission of other crimes evidence (ECF
No. 40).  Mr. Wilkins has also filed motions requesting: (1) that the Court sever the assault
charge in the indictment (ECF No. 38), and (2) that the Court suppress evidence obtained from
search warrants of two cell phones and Mr. Wilkins's Instagram account (ECF No. 39).  A
motions hearing was held on March 31, 2021 to allow for oral argument on each of these
motions.  The Court addresses each of the pending motions in turn.

## II.  LEGAL STANDARD

"While neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence
expressly provide for motions in limine, the Court may allow such motions 'pursuant to the

district court's inherent authority to manage the course of trials.'" *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)); *Dietz v. Bouldin,* 136 S. Ct. 1885, 1891 (2016) (noting inherent "power of a judge to hear a motion *in limine*").  "Motions in limine are designed to narrow the evidentiary issues at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010).  Such "pre-trial ruling[s], if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations" prior to trial.  *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).  However, "a motion in limine should not be used to resolve factual disputes or weigh evidence." *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) (citation omitted).

"In evaluating the admissibility of proffered evidence on a pretrial motion in limine the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401 and 402." *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 66 (D.D.C. 2014).  Under Rule 402, only relevant evidence is admissible.  Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence may still be excluded by a court if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

# III.  ANALYSIS

## A.  The Government's Motion to Exclude Evidence of Victims' Other Sexual Behavior and Sexual Disposition

The Court begins its analysis with the Government's Motion to Exclude Evidence of Victims' Other Sexual Behavior and Sexual Disposition ("Gov't Rule 412 Mot."), ECF No. 27. The Government intends to call three witnesses who will testify that Mr. Wilkins sexually exploited them for financial gain.  Gov't Rule 412 Mot. at 1; *see also* Hr'g Tr. at 9.  Pursuant to Federal Rules of Evidence 412 and 403, the Government has moved to preclude Mr. Wilkins from eliciting testimony from these witnesses during cross-examination about their other sexual behavior or their sexual dispositions, including any commercial sex acts engaged in by the witnesses before or after being allegedly exploited by Mr. Wilkins. *Id.*  In response, Mr. Wilkins contends that the exclusion of this evidence with respect to the complainants[1] would violate his constitutional right to present a complete defense.  Def.'s Opp'n to Gov't Mot. in Lim. to Exclude Evid. Of Victims' Other Sexual Behavior and Alleged Predisposition Pursuant to Fed.

---

[1] The Government seeks to preclude Mr. Wilkins from eliciting testimony from "at least three witnesses" about their other sexual behavior or sexual predisposition.  Gov't Rule 412 Mot. at 1.  In his opposition, which was filed prior to the introduction of the superseding indictment, Mr. Wilkins addresses only the complainant who is the subject of the first indictment, noting that at the time, "discovery has only been produced relating to the current indictment."  Def.'s Rule 412 Opp'n at 1 n.1.  The Government's reply also focuses heavily on that same complainant, while providing only general details about the other victims that may be called to testify. However, at the recent motions hearing, Mr. Wilkins's counsel made clear that he has since received updated discovery for all three complainants, and he accepts that the Court can rule on this issue in regards to all three complainants that are the focus of the superseding indictment (though he noted that he currently only intends to introduce this type of evidence regarding the complainant that is the focus of the briefing).  Accordingly, while recognizing that exclusion under Rule 412 "must be evaluated on a case-by-case basis," *LaJoie v. Thompson*, 217 F.3d 663, 669 (9th Cir. 2000), the Court determines that given the generalized nature of evidence in dispute, its reasoning in this Opinion applies with equal vigor to all three complainant witnesses.

R. Evid. 412 and Not. of Intent to Offer 412 Evid. ("Def.'s Rule 412 Opp'n") at 4–6, ECF No. 45.

Federal Rule of Evidence 412 provides that, in a "civil or criminal proceeding involving alleged sexual misconduct," both "evidence offered to prove that a victim engaged in other sexual behavior" and "evidence offered to prove a victim's sexual predisposition" is "not admissible."[2]  Fed. R. Evid. 412.  The animating purpose behind Rule 412 is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details."  Fed. R. Evid. 412 advisory committee's note to 1994 amendment.  In a criminal case, there are three exceptions to this rule of exclusion, but the only one argued by Mr. Wilkins is that this evidence is of the type that its "exclusion would violate the defendant's constitutional rights."[3]  Fed. R. Evid. 412(b)(1)(C).  Specifically, Mr. Wilkins claims that excluding evidence of the complainant's commercial sex work will abridge his constitutional right to present a complete defense.  *See* Def.'s Rule 412 Opp'n at 5–6.

---

[2] Federal courts have found—and Mr. Wilkins does not dispute—that cases involving allegations of sex trafficking and interstate prostitution "involve alleged sexual misconduct" for the purposes of Rule 412.  *See, e.g.*, *United States v. Campbell*, 764 F.3d 880, 888 (8th Cir. 2014) (applying Rule 412 in a sex trafficking by force, fraud, or coercion and interstate prostitution prosecution).

[3] Fed. R. Evid. 412 (b)(1)(A) permits evidence of other sexual behavior "if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence."  However, because Mr. Wilkins has not been charged with engaging in a sexual act with any of the complainants, there is no issue regarding the source of any semen, injury, or physical evidence with respect to sexual acts between Mr. Wilkins and any of the testifying complainants.  Fed. R. Evid. 412 (b)(1)(B) permits "specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent . . ."  However, again, because Mr. Wilkins has not been charged with engaging in a sexual act with any of the complainants, consent is not a defense to the crimes charged in the indictment.

A criminal defendant has a constitutional right to present evidence in his own defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). For example, the guarantee that a criminal defendant may present evidence in his own defense "extends only to relevant evidence." *United States v. Libby*, 475 F. Supp. 2d 73, 91 (D.D.C. 2007); *see also United States v. Soloman*, 399 F.3d 1231, 1239 (10th Cir. 2005) ("[A] criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense."). Furthermore, a defendant's right to introduce evidence must also "bow to accommodate other legitimate interests," which includes protecting a victim of sexual misconduct from harassment and unnecessary invasions of privacy. *See Michigan v. Lucas*, 500 U.S. 145, 149–50 (1991).

In the context of Rule 412, federal courts have found that a victim's participation in prostitution either before or after a defendant uses force, threats, fraud, or coercion to cause the victim to engage in prostitution is irrelevant to the question of whether the defendant committed the crime. *See United States v. Cephus*, 684 F.3d 703, 708–09 (7th Cir. 2012); *see also United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex."). For example, in *Cephus*, the Seventh Circuit held that a defendant convicted of sex trafficking could not introduce evidence that one of his victims had previously engaged in prostitution because the fact that the victim had previously participated in commercial sex work was irrelevant. 684 F.3d at 708. The court noted that "the fact that [the victim] had been a prostitute before" had no bearing on whether the defendant had beaten or

threatened her during the time period in the indictment.  *Id.*  In finding prior involvement in prostitution irrelevant, these cases thus recognize the illogical and impermissible assumption of the following inference: that simply because the victim had previously engaged in prostitution, it was somehow less likely that she was coerced or threatened to engage in prostitution on a later occasion.

Mr. Wilkins contends that excluding evidence that the complainant was involved in prostitution before connecting with Mr. Wilkins would leave out a critical part of the story: the complainant knew Mr. Wilkins since she was eight years old, they had an "up and down friendship," and the complainant contacted Mr. Wilkins for protection after she was assaulted by "Keon" for "renegading"—i.e., engaging in commercial sex work in a prostitution zone without having someone to vouch for her.  *See* Def.'s Rule 412 Opp'n at 5.  Thus, he claims that this evidence "crystalizes the notion that [the complainant] actively sought a way to stay in the sex trade rather than walking away after she was assaulted by Keon, and is direct proof that her[] relationship with Mr. Wilkins was not the product of coercion."  *Id.* at 6.  The Government disputes this factual recitation, arguing that the complainant did not start working for Mr. Wilkins until eighteen months after the assault Mr. Wilkins details.  Gov't Reply to Def.'s Opp'n to Gov't Mot. in Lim. to Excl. Evid. Of Victims' Other Sexual Behavior and Alleged Predisposition Pursuant to Fed. R. Evid. 412 ("Gov't Rule 412 Reply") at 4, ECF No. 57.  Even accepting Mr. Wilkins's factual assertions as true, evidence of the complainant's previous commercial sex work is wholly irrelevant to whether Mr. Wilkins coerced her to engage in prostitution during the time period alleged in the superseding indictment, because nothing about the complainant's prior sexual behavior makes it more or less likely that Mr. Wilkins coerced her into traveling in interstate commerce to engage in prostitution.  The fact that the complainant

"sought a way to stay in the sex trade" at one point has no bearing on whether Mr. Wilkins coerced her to engage in prostitution on a later occasion.  Holding otherwise would permit the chain of inferences rejected by *Cephus* and *Roy*: that because the complainant had previously engaged in prostitution, it is somehow less likely she would have been coerced by Mr. Wilkins to engage in prostitution during the charged time period.  Consequently, because evidence of the complainant's prior involvement in prostitution is irrelevant to whether Mr. Wilkins coerced her to engage in prostitution during the time period in the indictment, Mr. Wilkins does not have a constitutional right to present it.  *See Libby*, 475 F. Supp. 2d at 91.  Thus, the Court grants the Government's Rule 412 motion in *limine*.

Even if evidence that the complainant was involved in commercial sex work was relevant and admissible under Rule 412, the Court would still exclude the evidence under Rule 403.  Rule 403 excludes relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  The probative value of a piece of evidence "may be calculated by comparing evidentiary alternatives," *Old Chief v. United States*, 519 U.S. 172, 184 (1997), and when evaluating whether to exclude evidence on grounds of unfair prejudice, the "availability of other means of proof may . . . be an appropriate factor," *id.* (quoting Fed. R. Evid. 403 advisory committee's notes).  The crux of Mr. Wilkins's argument is that his longstanding personal relationship with the complainant negates the contention that he coerced her into engaging in prostitution.  *See* Def.'s Rule 412 Opp'n at 5–6.  Mr. Wilkins is certainly free to elicit testimony from the complainant about their longstanding friendship, and any outreach she made to Mr. Wilkins concerning her personal safety.  This would allow Mr. Wilkins the opportunity to present this "critical piece" of

his "complete defense" while avoiding disclosure of the complainant's other sexual behavior. The Government does not oppose the admission of this type of testimony. *See* Hr'g Tr. at 12 (statement of Government counsel indicating that "had the victim approached the defendant and initiated contact in any way, that's admissible"). Considering this evidentiary alternative that exists to demonstrate the relationship between Mr. Wilkins and the complainant, and cognizant of the need to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details," Fed. R. Evid. advisory committee's note to 1994 amendment, the Court finds the probative value of the complainant's other sexual behavior substantially outweighed by the risk of unfair prejudice. Accordingly, the Government's motion to exclude this evidence is granted.

### B.  The Government's Motion to Preclude Use of Victim's Last Names

The Government has also filed an unopposed motion, pursuant to the Crime Victims' Rights Act, to preclude the use of the complainants' last names throughout the course of the trial. Gov't. Mot. to Preclude Use of Victims' Last Names, ECF No. 28. It argues that this is necessary in order to prevent the complainants from being subject to "harassment, humiliation and/or obstruction form the defendant, the media, and others . . . [and] to protect the safety of these vulnerable witnesses." *Id*. at 1. Mr. Wilkins does not oppose this request. *See* Hr'g Tr. at 18. Accordingly, the Court grants the motion to allow each of the complainants to testify using only their first names, and directs Mr. Wilkins's counsel to also refrain from using the complainants' full names during his cross-examination and argument.

### C.  The Government's Motion to Admit Business Records

The Government next provides notice of its intent to offer a variety of business records under Federal Rule of Evidence 803(6), including records from "hotels, online advertising

websites, social media websites, cellular telephone companies, internet service providers, DC License Plate Readers, and correctional facilities." Gov't Mot. to Introduce Evid. Pursuant to Fed. Rule Evid. 803(6) and 902(11) at 2, ECF No. 33. Instead of calling foundation witnesses for each of the records, the Government intends to provide "a written declaration from a custodian of the records certifying that the records were made in accordance with the requirements of Rule 803(6)," as per the dictates of Rule 902(11). *Id.* The parties represented at the motions hearing that they are largely in agreement on this issue. The Court reiterates that the Government is to specify in the pretrial statement which records they wish to introduce at trial, and must provide the relevant certifications to Mr. Wilkins's counsel so he may raise objections as appropriate.

### D.  The Government's Notice of Intent to Offer Expert Witness Testimony

The Government next provides notice of its intent to offer the expert testimony of FBI Agent William B. Shute, explaining that he will use cell site and GPS data records from two telephone numbers to prepare maps with plotted cell site locations, which will correspond with "the movement of these phones between Norfolk, VA and Washington, D.C. during the time periods alleged in the counts charged in the Indictment." *See* Gov't Rule 702 Mot. at 2, ECF No. 34. Mr. Wilkins does not oppose the admission of Special Agent Shute's testimony. The Court reminds the Government, as it stated on the record at the motions hearing, *see* Hr'g Tr. at 26, that they must provide to Mr. Wilkins's counsel in a timely manner any data analysis or exhibits that Agent Shute is preparing for trial.

### E.  The Government's Motion to Prohibit References to Potential Penalties

The Government next requests, as one part of their omnibus Motion in Limine ("Gov't MIL"), ECF No. 35, that the Court prohibit Mr. Wilkins's counsel from introducing evidence,

advancing arguments or questions, or otherwise mentioning any potential penalties Mr. Wilkins

may face if convicted.  *Id*. at 1.  When a jury has no sentencing function, it should not consider

the question of punishment in arriving at its verdict.  *See Shannon v. United States*, 512 U.S. 573,

579 (1994) (noting that evidence relating to the punishment and effect of a defendant's

conviction are not probative as to innocence or guilt and can needlessly confuse the jury); *see*

*also* Criminal Jury Instructions for the District of Columbia, No. 2.505 (5th ed. 2011)

(instructing that the question of possible punishment is not for the jury).  Mr. Wilkins does not

contest the Government's motion, and has made clear to the Court that he does not intend to

advance any arguments related to the potential penalties Mr. Wilkins may face.  *See* Def.'s

Opp'n to Gov't Mot. in Lim. at 2, ECF No. 48; *see also* Hr'g Tr. at 27.  Accordingly, (though

perhaps a moot point), the Court will grant the Government's motion to preclude the introduction

of this type of evidence.

### F.  The Government's Motion to Permit Case Agent to Remain at the Government's Table but Exclude Other Witnesses from the Courtroom During Trial

The Government also requests, pursuant to Federal Rule of Evidence 615(3), that the

Court allow the case agent for this matter, Detective Sullivan, to be present in the courtroom and

remain at counsel table throughout trial, while all other witnesses are excluded from the

courtroom.  Gov't MIL at 3.  Federal Rule of Evidence 615 provides that upon a party's request

or by its own authority, a court "must order witnesses excluded so that they cannot hear other

witness' testimony."  Fed. R. Evid. 615.  But the rule exempts "an officer or employee of a party

that is not a natural person, after being designated as the party's representative by its attorney."

Fed. R. Evid. 615(b); *see also United States v. Lee*, 834 F.3d 145, 162 (2d Cir. 2016) (affirming

decision to exempt ATF special agent because he was properly within Rule 615(b) exemption as

a 'representative' of the government).  Mr. Wilkins's counsel made clear at the motions hearing

that he does not oppose this request, which, as already explained, is consistent with the governing Rules of Evidence.  *See* Hr'g. Tr. at 27.  Accordingly, Detective Sullivan will be permitted to remain at the Government's table throughout trial, while the other witnesses will be excluded.

### G.  The Government's Motion to Exclude Evidence Not Produced in Reciprocal Discovery

The Court turns next to the Government's request to exclude any evidence that Mr. Wilkins has not provided to the Government in reciprocal discovery.  *See* Gov't MIL at 4.  The Court reiterates that Rule 16(b)(1)(A) imposes a "reciprocal discovery requirement" between the United States and a criminal defendant.  *See United States v. Hardy*, 586 F.3d 1040, 1043 (6th Cir. 2009).  The Court accordingly orders that Mr. Wilkins comply with these obligations regarding providing reciprocal discovery to the extent it exists.

### H.  The Government's Motion to Preclude Mr. Wilkins from Introducing Self-Serving Hearsay

The Government has also filed a general motion to alert Mr. Wilkins's counsel and the Court that it intends to introduce multiple statements made by Mr. Wilkins as admissions by party-opponent pursuant to Federal Rule of Evidence 801(d)(2), and seek to bar Mr. Wilkins from subsequently introducing any of his own statements, which the Government contends remain barred as hearsay.  Gov't MIL at 4.  The Court reminds both parties that Federal Rule of Evidence 801 prohibits hearsay, which is defined as any "out-of-court statement offered to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  While the Federal Rules of Evidence set forth various exceptions to hearsay, self-serving hearsay is not one of those.  *See United States v. Rivera-Hernandez*, 497 F.3d 71, 82 n.5 (1st Cir. 2007) (internal citation omitted) ("To be received in evidence an admission . . . must be contrary to that party's position at the time of the

12

trial."); *United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985) (holding that Rule 801(d)(2)(A) excludes the introduction of self-serving statements by the party making them). Consequently, Mr. Wilkins is prohibited from introducing self-serving hearsay statements, though the Court will, of course, make these fact specific determinations as necessary if they arise during trial.

### I. The Government's Motion for Admission of Jail Call Admissions

The Government has stated its intent to introduce admissions and statements captured during the defendant's recorded jail calls as non-hearsay admissions of a party opponent under Federal Rule of Evidence 801(d)(2). Gov't MIL at 6. During the motions hearing, Mr. Wilkins's counsel confirmed that he is in receipt of the jail phone calls in question, and requested the specific phone calls the Government intends to introduce be identified. Hr'g Tr. at 29. The Court directs the Government to do so, and also to provide Mr. Wilkins's counsel with the applicable log that identifies which of the calls applies to each of the complainants. It will decline to rule further on this motion at this time.

### J. The Government's Motion for Preclusion of Mr. Wilkins's Counsel Cross-Examining Government Witnesses Regarding Inadmissible Criminal Convictions

The Government initially moved, prior to the filing of the superseding indictment, to preclude Mr. Wilkins's counsel from cross-examining any Government witnesses regarding criminal convictions that are inadmissible under the Federal Rules of Evidence. *See* Gov't MIL at 7. During the motions hearing both parties indicated that the criminal histories of the three complainants had been provided to Mr. Wilkins's counsel, and the parties would work through this issue and submit an update to the Court in their Joint Pretrial submission. *See* Hr'g Tr. at 33. Accordingly, the Court takes no action on this motion at this time.

### K.  The Government's Motion to Admit Electronic Communications

The Government has also filed a motion stating its intent to introduce text messages and Instagram multimedia messages between Mr. Wilkins and certain complainants.  *See* Gov't Mot. Admit Electronic Evid., ECF No. 36.   The Government states that it is prepared to demonstrate the communications' relevancy and authenticity pursuant to Federal Rules of Evidence 401 and 901, and invoke exemptions to the rule against hearsay pursuant to Federal Rule of Evidence 801 as needed.  *Id*.  The Court directs the parties to move forward with the exchange of the proposed trial exhibits, so Mr. Wilkins's counsel can raise specific objections as warranted, which the Court can then rule on as necessary.

### L.  The Government's Motion to Introduce Various Rule 404(b) and Rule 609 Evidence

The Government's final motion requests, pursuant to Federal Rules of Evidence 404(b) and 609, the admission of a wide variety of evidence pertaining to Mr. Wilkins's past interactions with law enforcement and his past criminal convictions.  *See* Gov't Mot. in Lim. to Introduce Evid. Pursuant to Fed. R. Evid. 404(b)/609 ("Gov't 404(b) Mot."), ECF No. 40. Federal Rule of Evidence 404(b) prohibits the use of "other crimes, wrongs, or acts . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Prior bad acts are permitted, however, as evidence of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2)*.*  This list of permitted uses in Rule 404(b) of other crimes evidence is not exhaustive.  *United States v. Miller*, 895 F.2d 1431, 1435–36 (D.C. Cir. 1990) (citing *United States v. Moore*, 732 F.2d 983, 987 n.31 (D.C. Cir. 1984)).  Importantly, "Rule 404(b) is a rule of inclusion rather than exclusion," as it prohibits *only* evidence "which lacks any purpose but proving character."  *United States v. Bowie*, 232 F.3d 923, 929–30 (D.C.

14

Cir. 2000).  In short, the rule operates as a prohibition on pure propensity evidence that cannot serve any other probative purpose.

To determine admissibility under Rule 404(b), courts conduct a two-part analysis. *Miller*, 895 F.2d at 1435.  First, a court must consider whether the evidence proffered is "probative of a material issue other than character."  *United States v. Clarke,* 24 F.3d 257, 264 (D.C. Cir. 1994); Fed. R. Evid. 404(b).  Next, if the evidence meets this threshold, the Court examines whether the probative value is "substantially outweighed" by a danger of unfair prejudice such that the Court should exclude admission.  *Miller*, 895 F.2d at 1435 (quoting *Huddleston v. United States*, 485 U.S. 681, 687 (1988));  *see also* Fed. R. Evid. 403.  Evidence is unfairly prejudicial if it prejudices a defendant's case "for reasons other than its probative value," *United States v. Wallace*, 124 F. App'x. 165, 167 (4th Cir. 2005) (citation omitted), such as by creating "an undue tendency to suggest decision on an improper basis," *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (quoting *Old Chief*, 519 U.S. at 180).

It must be noted, however, that Rule 404(b) applies only to extrinsic evidence of other crimes or bad acts and is *not* required when the admissibility of "intrinsic" evidence is at issue. *Bowie*, 232 F.3d at 929.  In this Circuit, evidence is considered "intrinsic" when it is either "part of the charged offense" or an uncharged act "performed contemporaneously with the charged crime . . . [that] facilitate[s] the commission of the charged crime." *Id*; *see also id.* at 928–29 (rejecting the approach of other Circuits that define intrinsic evidence to encompass any evidence that "explains the circumstances" or "completes the story" as an impermissibly low threshold that would allow for Rule 404(b) to be circumvented on a "flimsy basis.").[4]

---

[4] The Court reminds the Government to ensure that the authorities it cites reflect the governing case law that is binding on this Court.  In its articulation of extrinsic evidence, the

Accordingly, any evidence of the crimes charged in Mr. Wilkins's superseding indictment or evidence of crimes that occurred contemporaneously and to further the charged offenses can be considered intrinsic, and is exempt from the Rule 404(b) analysis.  *See id.* at 927 ("Evidence that constitutes the very crime being prosecuted is not [prior bad act evidence].");  *see, e.g., United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003) (statement that Defendant "'[has] a gun on him now' constituted intrinsic, admissible evidence on [a] felon-in-possession charge" (alteration in original));  *United States v. Coughlin*, 821 F. Supp. 2d 35, 45 (D.D.C. 2011) (determining that evidence of the defendant's medical and athletic activities constituted intrinsic evidence of the charged offense of making a fraudulent claim to the September 11th Victim Compensation Fund).  However, intrinsic evidence remains subject to a Rule 403 balancing analysis.  *See* Fed. R. Evid. 403.  The Government contends that much of the evidence in dispute here is intrinsic evidence, rendering any Rule 404(b) analysis unnecessary.  The Court reviews each of the Government's requested evidentiary admissions in turn.

1.  Evidence of Mr. Wilkins's Alleged Acts of Physical and Sexual Violence

The Government has moved to enter into evidence several instances of physical and sexual violence Mr. Wilkins allegedly committed against one of the complainants, J.J.  Gov't 404(b) Mot. at 13–14.  These incidents include (1) a physical altercation in a hotel room in North Carolina where J.J. was knocked unconscious and woke up in an Atlanta hospital with permanent

---

Government repeatedly used the broad "providing context" or "completing the story" definition for extrinsic evidence that, while in use elsewhere, has been decisively rejected in this Circuit. *See United States v. McGill,* 815 F.3d 846, 879 (D.C. Cir. 2016) (per curiam) ("[I]n defining the contours of intrinsic evidence that is not subject to Rule 404(b), we have rejected the rule embraced by some of our sister circuits that evidence is intrinsic if it 'complete[s] the story' of the charged crime.") (second alteration in original) (citation omitted); *see also United States v. Edwards*, 889 F. Supp. 2d 47, 49 (D.D.C. 2012) (noting that the D.C. Circuit has explicitly "reject[ed] the approach adopted by other Circuits defining [intrinsic] evidence as that which 'completes the story' of the charged offense" (citation omitted)).

injuries; (2) a January 10, 2013, assault that occurred in a Charlottesville, Virginia hotel that

apparently transpired after Mr. Wilkins demanded money from J.J. to pay bills for the mother of

his child, and when he found out that J.J. lied about not having money, he severely beat her; (3) a

September 19, 2011, assault that J.J. reported to the Virginia Beach Police Department that

involved Mr. Wilkins forcing her out of a car he was driving (by a hotel where she was engaging

in commercial sex at his behest), after which he hit her in the stomach, pulled her hair, and stole

her purse; (4) a December 19, 2011, assault reported to the Montgomery County Police that

occurred at a Days Inn hotel after J.J. told Mr. Wilkins she wanted to return to Norfolk, Virginia

and Mr. Wilkins assaulted her when she tried to leave, stealing her cash and cell phone; and (5) a

February 16, 2013, attack that J.J. reported to the Norfolk Police Department, describing that Mr.

Wilkins became physically violent and cut her upper body when she refused to have sexual

intercourse with him. *Id.* at 13–15. The Government has stated its intent to have both J.J. testify

to these incidents and also to call law enforcement to describe and corroborate these various

assaults. *Id.* at 12, 15.

   Mr. Wilkins, unsurprisingly, has moved to have this testimony excluded under both

Federal Rule of Evidence 404(b) and Rule 401. *See* Opp'n to Gov't Mot. in Lim. to Introduce

Evid. Pursuant to Fed. R. Evid. 404(b) & 609 ("Def.'s 404(b) Opp'n") at 8, ECF No. 64. He

contends that there is not any connection between this violence—which he seems to characterize

as being of the domestic violence variety—and the charges of sex trafficking that are at issue in

this case. *See* Hr'g Tr. at 59. Consequently, he claims that this evidence can serve only as

impermissible character propensity evidence, since it is not relevant to the charged crimes, and

must be barred due to its highly prejudicial nature. *Id.* He is particularly concerned about the

introduction of testimony relating to the alleged events of February 16, 2013, as he believes these

events can be construed as an attempted rape, and thus would be highly prejudicial if presented to a jury.  Def.'s 404(b) Opp'n at 8–9.

The Court, while acknowledging the likely powerful impact of this evidence, finds that Mr. Wilkins's argument regarding the supposed limited relevance of these assaults to the charged offenses to misunderstand the relevant law.  Mr. Wilkins is charged with two counts of Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591(a)(1), among other related charges.  *See* Superseding Indictment at 1.  Accordingly, the jury will be tasked with determining whether Mr. Wilkins used force, fraud, or coercion to cause the three complainants to engage in commercial sex acts.  Coercion, for the purposes of this offense, is defined as "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2).  "Serious harm" is further defined to include both physical and non-physical harm that is "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm."  *Id.* § 1591(e)(5).

Given the realities of the different types of coercion sex trafficking victims are frequently subjected to, courts have recognized that traffickers often force victims "to continue prostituting by creating an environment of fear and dependence through the use of threats of violence, actual violence, and various forms of manipulation against them."  *United States v. Scott*, 434 F. App'x 103, 106 (3d Cir. 2011).  When evaluating if a defendant exerted coercive force over a complainant, juries are thus directed to evaluate the totality of a defendant's conduct toward a

trafficking victim, including any threats or specific instances of past violence that may have created a "culture of fear" such that the victim's conduct was rendered involuntary.  *See, e.g.*, *United States v. Carson*, 870 F.3d 584, 600 (7th Cir. 2017) (finding that evidence of a defendant's rape of a sex trafficking victim was "direct evidence of [the defendant] coercing one of his victims and exerting control over her. . . . [I]t [wa]s a key part of the message from the defendant that 'I control you and can do as I please'"); *United States v. Webster*, No. 08-cv-30311, 2011 WL 8478276, at *2 (9th Cir. Nov. 28, 2011) (finding that "severe beatings" were used to create "an environment of fear of physical harm" that was "more than sufficient" to conclude the defendant exercised coercion over sex trafficking victims for the purpose of 18 U.S.C. § 1591(e)(2)(B)).  Indeed, such a culture of fear and coercion can be created even in the absence of a defendant's abuse of a specific victim, when the victim is made aware of the defendant's history of physical or sexual violence against others.  *See United States v. Harris*, 701 F.2d 1095, 1100 (4th Cir. 1983) (evidence that defendant beat other people—though not the victim—was relevant because it contributed to a "reign of physical terror"); *United States v. Alzanki*, 54 F.3d 994, 999 (1st Cir. 1995) (noting, in describing the facts, that "[t]he climate of fear was enhanced" due to the victim witnessing her employer physically abusing his wife); *Webster*, 2011 WL 8478276 at *2 (explaining that defendant cultivated an environment of fear by "severe beatings that [he] administered, which he had the other women and girls attend and observe" and "naturally cause[d] the observers to infer that similar violence might be inflicted on them if they disobeyed any of [his] rules.").

The Court can therefore quickly dispose of Mr. Wilkins's argument that these violent episodes are somehow irrelevant to the pending charges in this case.  Indeed, several courts have considered this exact issue.  In *United States v. Evans*, a defendant also facing sex trafficking

charges argued that the violent physical assaults he inflicted on his trafficking victims were *not* evidence of forced sex work but rather completely separate evidence of "domestic violence" in their personal intimate relationship.  272 F.3d 1069, 1097 (8th Cir. 2001).  The court summarily rejected this argument, concluding that, "these violent acts are relevant and probative of Mann Act violations because they describe actions taken to control and discipline" the women he sexually exploited and happened to also have personal relationships with.  *Id*; *see also United States v. Nichols*, No. 15-cr-756-1, 2019 WL 398775, at *2 (N.D. Ill. Jan. 31, 2019) (rejecting defendant's argument that physical abuse "was related to personal matters, not [his prostitution] business.").

Accordingly, the Court finds that these past assaults constitute direct, intrinsic evidence of coercion that Mr. Wilkins used to cause the complainants to engage in commercial sex acts. This violence is thus "part of the charged offense," *Bowie*, 232 F.3d at 929, and exempt from Rule 404(b).  *See, e.g.*, *Carson*, 870 F.3d at 600 (determining that a past rape of sex trafficking victim was not bad act evidence, but "evidence of the very crime [of sex trafficking by fraud, coercion, or force], pure and simple"); *United States v. Washington*, 810 F. App'x. 478, 481 (8th Cir. 2020) (finding that evidence of domestic assault of sex trafficking victim was directly relevant to the question of whether the victim's conduct was voluntary or whether coercion or force was used, and thus properly admitted as intrinsic evidence regarding a sex trafficking charge); *Campbell*, 764 F.3d at 888 (finding that evidence of a "pattern intended to cause a person to believe that failure to perform an act [of prostitution] would result in serious harm" to

be intrinsic, direct evidence of coercion under 18 U.S.C. § 1591(e)(2)(B) (alteration in original)).[5]

This evidence also passes the Rule 403 balancing test. For the reasons described above, this evidence is highly probative as to the question of whether Mr. Wilkins used "force, fraud, or coercion" to get the complainants to engage in sex work. While there is prejudice inherent in this evidence, it is only that which stems from the legitimate probative force of the evidence and is directly related to the central question in this case. *See Wallace*, 124 Fed. Appx. at 167. Thus, the probative value of this evidence is far from "substantially outweighed" by any unfair prejudice. The Court will accordingly allow J.J. to testify regarding these acts of physical violence, to help the jury understand why she and the other complainants may have felt coerced into engaging in sex work at Mr. Wilkins's insistence. The Court will also allow the introduction of corroborating testimony from law enforcement to the extent it is necessary to support J.J.'s credibility.

### 2. Evidence of Mr. Wilkins's Access to Firearms

The Government has also moved to introduce evidence that demonstrates that during the time of the charged offenses, Mr. Wilkins had ready access to firearms. Gov't 404(b) Mot. at 3. It seeks to accomplish this by introducing testimony from both responding law enforcement and a complainant who witnessed a June 12, 2019 incident in Norfolk, Virginia, where Mr. Wilkins allegedly shot himself in the groin. *Id*. Mr. Wilkins opposes this admission, arguing that this

---

[5] Furthermore, even under Rule 404(b) this evidence would be admissible as non-propensity evidence. Evidence of these incidents is relevant and highly probative as to the issue of Mr. Wilkins's coercive control over the complainants, and can accordingly be introduced to show his common scheme or plan of coercion or absence of mistake in committing the charged offenses.

testimony is inadmissible under both Rule 402 and Rule 404(b), and furthermore, that any

argument the gunshot wound he suffered was "self-inflicted" is speculative.  Def.'s 404(b)

Opp'n at 4.  The Government responds by positing that evidence of Mr. Wilkins's gun

possession is intrinsic to the charged crimes, due to its theory that the complainants engaged in

commercial sex acts at Mr. Wilkins behest due to a fear of him that was driven, in part, by his

ready access to deadly firearms.  *See* Gov't Reply to Def.'s Opp'n to Introduce Evid. Pursuant

FRE 404(B) & 609 ("Gov't 404(b) Reply") at 3–4, ECF No. 66.

The Court agrees that evidence of gun possession in this case is intrinsic evidence

because it is "part of the charged offense."  *Bowie*, 232 F.3d at 929.  This is because, mirroring in

many ways the analysis this Court has already conducted regarding Mr. Wilkins's past physical

assaults of the complainants, evidence of Mr. Wilkins's access to firearms constitutes a source of

his potential coercion over the complainants.  The Government must prove at trial that Mr.

Wilkins used force, fraud or coercion to cause the three complainants to engage in commercial

sex acts and, as previously detailed, coercion includes "any scheme, plan, or pattern intended to

cause a person to believe that failure to perform an act would result in serious harm to or

physical restraint against any person."  18 U.S.C. § 1591(e)(2).  Firearms are potentially deadly

weapons.  Evidence regarding Mr. Wilkins's access to guns, therefore, goes directly to a possible

coercive scheme he used to accomplish a key element of the charged offenses.  Other courts have

reached similar conclusions and allowed for the admission of evidence demonstrating that sex

trafficking victims were aware that the defendant owned or had access to firearms.  *See, e.g.*,

*United States v. Lewis*, 762 F. App'x 786, 798 (11th Cir.) (per curiam) (affirming district court's

admission of undated photograph of defendant holding a firearm, as it "tended to corroborate

[complainant's] testimony" that she was coerced into engaging in prostitution due to the

defendant's habitual use of firearms) *cert. granted, judgment vacated on other grounds*, 140 S. Ct. 613 (2019); *Nichols*, 2019 WL 398775 at *12 (sustaining sex trafficking conviction based in part on victims' testimony that "they knew [the defendant] to own and carry guns" thus contributing to coercive environment that caused complainants to engage in sex work); *United States v. Roach*, 896 F.3d 1185, 1196 (10th Cir. 2018) (finding evidence that defendant threatened victim with gun in lap "showed that [he] used violence to coerce [a victim-witness] into prostitution").[6]

Turning to the Rule 403 analysis, the Court finds that allowing the admission of testimony describing the entirety of the June 12, 2019 incident does, however, pose a substantial risk of confusion of the issues such that even the strong probative value of this evidence could be substantially outweighed. *See* Fed. R. Evid. 403. In particular, the evidence related to the specifics of Mr. Wilkins's injury—*i.e.*, whether the injury was self-inflicted— poses a heightened risk of unfair prejudice or confusion of the issues because it is unclear what exactly transpired, and this lack of clarity could allow the jury to make improper and unnecessary inferences or simply generate confusion. Furthermore, this issue is utterly tangential to the core issues before the Court in this case, and admission of this fact risks allowing the trial to devolve into a mini-trial on the question of if Mr. Wilkins shot himself—a question that is completely irrelevant to the case at hand. Indeed, even the Government admitted to the Court at the motions hearing that the question of who shot Mr. Wilkins (or if the wound was self- inflicted) is "not the

---

[6] Moreover, even under the Rule 404(b) standard this evidence would still be admissible. As already discussed, this evidence is relevant and highly probative as to the issue of Mr. Wilkins's coercive control over the complainants during the time period of his alleged crimes. It also can establish his common scheme or plan of coercion, and absence of mistake in committing the charged offenses.

issue here."  Hr'g Tr. at 50.  Given that both parties appear to agree, the Court holds that only

evidence of Mr. Wilkins's gun *possession or access* as illustrated by the June 12, 2019 incident

is admissible.  The complainants remain free to testify regarding their personal knowledge of Mr.

Wilkins's gun access or possession to the extent it informed their decisions to engage in sex

work at his command, and corroborating testimony from law enforcement describing the June

12, 2019 incident is admissible as long as it stays within the parameters described here.

3. Evidence of Mr. Wilkins's Access to and Distribution of Illegal Drugs

The Government has also stated its intent to "elicit evidence, corroborated by [Mr.

Wilkins's] criminal record, that [he] had access to, possessed, and distributed illicit narcotics

throughout the period of time charged in the Indictment."  Gov't 404(b) Reply at 10.  Mr.

Wilkins objects to this testimony, contending that this line of evidence is not relevant to any

issue other than his character and accordingly must be excluded.  Def.'s 404(b) Opp'n at 6–7.

The Government argues in response that, as with gun possession and Mr. Wilkins's past assaults,

this evidence is intrinsic to the charged sex trafficking offenses such that Rule 404(b) does not

apply.  Gov't 404(b) Mot. at 10–11.  The Court agrees in theory, though in light of the apparently

limited relevance of the evidence and high risk of unfair prejudice, the Court will impose

significant restrictions on the admission of this category of evidence.

In many ways this line of evidence repeats the same analysis conducted regarding the

evidence of Mr. Wilkins's firearm use and alleged past assaults on the complainants.  In sum, to

the extent evidence of Mr. Wilkins's access and provision of illegal narcotics to the complainants

facilitated his "coercive control" over them, this evidence would become part of the charged

offense itself.  *See Bowie*, 232 F.3d at 927 ("Evidence that constitutes the very crime being

prosecuted is not [prior bad act evidence]").  Where sex trafficking victims had been supplied

drugs, evidence of a defendant's access to illegal narcotics has been found appropriately admissible for this purpose. *See, e.g.*, *United States v. Campbell*, 49 F.3d 1079, 1084 (5th Cir. 1995) (finding evidence of drugs provided to complainants by defendant while defendant allegedly transported complainants involved in prostitution to be "relevant intrinsic evidence of how the actual violation occurred"); *United States v. Betts*, 911 F.3d 523, 530 (8th Cir. 2018) (finding evidence that defendants provided victim-complainants various drugs and alcohol intrinsic evidence of how defendants "controlled the girls' behavior"). Accordingly, evidence of Mr. Wilkins's provision of illegal narcotics to the complainants would be properly admitted here as intrinsic evidence of any coercive force used to compel the sex trafficking crimes at issue.

However, the admission of this evidence runs into trouble at the Rule 403 balancing stage, when the Court turns to "assess the probative value of the evidence as compared to the risk of unfair prejudice." *United States v. Hitselberger*, 991 F. Supp. 2d 108, 127 (D.D.C. 2014) (cleaned up) (quoting *United States v. Larrahondo,* 885 F. Supp. 2d 209, 227 (D.D.C. 2012). First, admission of the entirety of the evidence the Government seeks to enter into evidence contains content of marginal probative value. Simply because Mr. Wilkins has prior drug offense arrests and convictions does not mean he was providing illegal narcotics to the complainants. Underlining the point, the Government has not made clear that *any* of the three complainants will testify that Mr. Wilkins provided them with illegal drugs while they engaged in commercial sex work for his benefit. Further diminishing any probative value of this evidence, at the motions hearing the Government conceded that while they intend to enter into evidence Mr. Wilkins's felony conviction for possession with intent to distribute cocaine, this is *not* one of the narcotics the three complainants are alleged to have used. Rather, one of the complainants had an underlying heroin addiction, and the Government alleges that generally all

the complainants used substances such as "molly" and marijuana to engage in commercial sexual activity. *See* Hr'g Tr. at 49. This discrepancy is telling, and quite clearly diminishes the probative value of any admission of evidence of Mr. Wilkins's access to or distribution of otherwise *unrelated* drugs.

Against this limited probative value, the admission of evidence describing Mr. Wilkins's past drug-related offenses presents a substantial risk of unfair prejudice. The risk of unfair prejudice is high when it comes to evidence of past convictions. *See, e.g.*, *United States v. Watson*, 171 F.3d 695, 703 (D.C. Cir. 1999) (evidence of past drug convictions "invites the jury to infer that [a defendant] has a propensity for drug offenses."). The Court is concerned that the jury could infer culpability based on this evidence, and not the charges actually at issue in this case. *See, e.g.*, *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (noting evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis"). In the absence of a stronger, relevant connection between the drugs Mr. Wilkins is alleged to have previously trafficked in and those provided to the three complainants, the Court finds this evidence's probative value is substantially outweighed by the risk of unfair prejudice.

To address these concerns the Court will allow the admission of evidence that relates to Mr. Wilkins's use of illegal drugs as a coercive tactic to force the complainants to engage in sex work for his benefit. This means the complainants will be able to testify and describe any provision of illegal narcotics Mr. Wilkins provided them. *See, e.g.*, *United States v. Lewis*, No. 415-cr-196, 2017 WL 750456, at *4 (S.D. Ga. Feb 27, 2017) (finding that testimony from alleged victims that defendant provided them "with drugs to enable them to engage in commercial sexual activity" was admissible evidence). To the extent Mr. Wilkins has prior law enforcement interactions that demonstrate his possession of those specific drugs, that evidence is admissible

to corroborate the veracity of the complainants' accounts.  But any evidence of Mr. Wilkins's use or access to drugs he is *not* alleged to have provided to the complainants—which the Court understands to encompass the majority of the drug-related prior "bad acts" the Government currently seeks to enter into evidence—must be excluded as the risk of unfair prejudice substantially outweighs any probative value this evidence can provide.

### 4. Unnamed Witness Testimony

The Government has also moved to introduce testimony from an unnamed male witness who will present testimony regarding how Mr. Wilkins began to engage in the commercial sexual exploitation of women in 2011 or 2012, and went on to transport the three complainants to Washington D.C. from Norfolk, Virginia to engage in sex work.  Gov't Mot. 404(b) at 11–12. He also is prepared to testify that he knew Mr. Wilkins assaulted one of the complainants when she "got out of line" and Mr. Wilkins "had to correct her."  *Id.* at 12.

The Court begins by noting that it is generally unclear if the Government still intends to introduce this evidence.  At the time of the original briefing on this issue, the indictment had not yet been superseded, so the testimony of this unnamed witness was to be admitted to discuss "the defendant's commercial sexual exploitation of women other than the victims who serve as the basis for the counts charged in the current Indictment."  *Id.*  But the Superseded Indictment now presumably includes these women as named complainants.  At the motions hearing Mr. Wilkins's counsel objected to the admission of this testimony to the extent it may be hearsay or that this unnamed witness may not be competent to testify to these issues.[7]  Without more

---

[7] The Court notes that to the extent this unnamed witness will testify by recounting a statement Mr. Wilkins made to him, this evidence is admissible as nonhearsay under Rule 801(d)(2)(A).  *See also United States v. McKinley*, 647 F. App'x 957, 961 (11th Cir. 2016) (per curiam) (noting the admission at sex trafficking trial of witness testimony that relayed that the

information, the Court is not prepared to make a ruling on this issue today but instead directs the Government to clarify its position as to the current status of this witness and the content and basis for any testimony he may provide.

### 5. Mr. Wilkins's Prior Contacts with Law Enforcement

The Government also seeks to introduce into evidence a number of specific incidents of Mr. Wilkins's prior contacts with law enforcement that it argues are "indicative of commercial sexual exploitation."  Gov't 404(b) Mot. at 7 (capitalization omitted).  The proposed evidence includes five separate interactions between law enforcement and Mr. Wilkins that occurred on December 10, 2011, January 25, 2015, June 18, 2018, August 3, 2019, and September 12, 2019, all of which fall within the time period he is charged with the offenses in the Superseding Indictment.  *See id.* at 7–10.  Mr. Wilkins opposes the introduction of this evidence on a variety of different grounds, but he generally alleges that these interactions are relevant only to show bad character, and thus violate Rule 404(b).  Def.'s 404(b) Opp'n at 5–6.  In response, the Government contends that the evidence is intrinsic to the charged offenses such that Rule 404(b) does not apply.  Gov't Reply at 6–7.  They also argue that even if this evidence is found to be extrinsic, under a Rule 404(b) analysis these interactions are still admissible as highly probative evidence of Mr. Wilkins's intent and motive to engage in sexual exploitation, as well as his knowledge of "what was happening inside the hotels where he was frequently arrested."  Gov't 404(b) Mot. at 18.  The Court reviews each interaction in turn.

---

defendant had "bragged to him that he had beaten [the victim-complainant] so that she would not escape again").

*a. December 10, 2011 Interaction*

On December 10, 2011, during the time period covered by Count I of the Superseding Indictment when Mr. Wilkins was allegedly sex trafficking complainant J.J. in Washington D.C., Mr. Wilkins was arrested in the District for possession with intent to distribute cocaine. Gov't 404(b) Mot. at 7. The Government intends to offer law enforcement testimony that, prior to Mr. Wilkins's arrest, police officers observed him speak with two women who were engaged in commercial sex work at the corner of 16th Street and New York Avenue, before he parked his Cadillac with Virginia tag XEJ4403 in the parking lot of the Comfort Inn located at 1601 New York Avenue, Northeast, Washington D.C. *Id*. at 8. A search of the vehicle Mr. Wilkins was driving by law enforcement revealed cocaine in the driver's side door panel. *Id.*

The Government argues that this information is intrinsic, rather than extrinsic, evidence of the charged offenses. Gov't 404(b) Reply at 6–7. As has already been noted, evidence can properly be considered intrinsic in this Circuit if it is either an act the defendant is charged with, or if it occurred contemporaneously with the charged offenses. See *Bowie*, 232 F. 3d at 927 ("Evidence that constitutes the very crime being prosecuted is not [prior bad act evidence]"). Mr. Wilkins is charged with trafficking J.J. during the time of this police encounter. Indeed, the Government appears to contend that at the time of this arrest J.J. was working in the hotel while Mr. Wilkins waited outside. *See* Gov't 404(b) Reply at 8. As a result, location and proximity evidence—namely, that Mr. Wilkins was found waiting in the parking lot of a hotel known for ongoing prostitution activity while the woman he is alleged to have trafficked was inside engaging in commercial sex work for his financial gain—appears to be "part of the charged offense" of sex trafficking J.J., or at the very least evidence of "acts performed contemporaneously with the charged crime . . . [that] facilitate the commission of the charged

crime." *Bowie*, 232 F.3d at 929.  The Court therefore agrees that information pertaining to Mr. Wilkins's whereabouts during his December 10, 2011 arrest constitute intrinsic evidence and are exempt from Rule 404(b).  *See id*.

   This is not, however, the end of the Court's review, as intrinsic evidence must still pass the requisite Rule 403 balancing test in order to be admitted at trial.  Rule 403 provides that a court "may exclude relevant evidence if [that evidence's] probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  After completing the balancing test, the Court concludes that the probative value of admitting this encounter with law enforcement as evidence of Mr. Wilkins's physical location is not substantially outweighed by a danger of unfair prejudice, because it is only prejudicial for reasons related to its probative value.  *See Wallace*, 124 F. App'x. at 167 (noting that "[u]nfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence" quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 404.21(3)(b) (Joseph M. McLaughlin, ed., 2d. ed. 2002)); Fed. R. Evid. 403.  And bad acts evidence is typically "not barred by Rule 403 where such evidence 'did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged.'"  *United States v. Fuertes*, 805 F.3d 485, 494 (4th Cir. 2015) (alteration in original) (citation omitted).  That said, admission of the specific details of Mr. Wilkins's arrest beyond his locational information could pose unfair prejudice.  The Court is particularly concerned that allowing in evidence of the cocaine found in Mr. Wilkins's car would be unduly prejudicial, as it poses the risk of "lur[ing] the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief*, 519 U.S. at 180.  Mr.

Wilkins is not charged with drug offenses in this case, nor does the Government contend that any of the complainants were addicted to cocaine and he used this dependency to maintain his climate of coercion over them.  *See* Hr'g Tr. at 49; *see also supra* Section III.L.3.  This piece of evidence is therefore of limited probative value and is substantially outweighed by the risk of prejudice.  Accordingly, the Court will limit the admission of testimony from the December 11, 2011 police interaction to exclude any reference to the drugs found in his car. [8]

### b.  *January 25, 2015 Interaction*

On January 25, 2015, Mr. Wilkins was arrested in yet another hotel parking lot—this time for trespass in the parking lot of a Red Roof Inn in Virginia Beach— when law enforcement found him sleeping in his car.  Gov't 404(b) Mot. at 8.  Prior to arrest, Mr. Wilkins was observed deleting information off his phone and putting something into his mouth as the officers approached.  *Id*.  The Government intends to introduce evidence that two of the complainants were inside a hotel engaging in commercial sex acts while Mr. Wilkins sat outside in a car.  Gov't 404(b) Reply at 5–6.  The Government contends that this evidence is also intrinsic to the crimes charged in the Superseding Indictment.  *Id.* at 6–7.  The Court agrees, and for the reasons detailed below will allow this evidence to be admitted, subject to certain limitations.

The Court again finds that the evidence that Mr. Wilkins was outside of a hotel—this time allegedly while two of the complainants engaged in commercial sex inside with clients for

---

[8] Mr. Wilkins argues that because this incident did not lead to a charged offense—it was apparently "no-papered"— it is not a "bad act" under Rule 404(b).  Def.'s 404(b) Opp'n at 5.  While the Court need not reach this Rule 404(b) analysis given that it has concluded that the evidence is intrinsic, it will note that this is an improper characterization of Rule 404(b).  The rule covers probative evidence related to past crimes as well as past evidence in the form of past "wrong[s], or act[s]."  Fed. R. Evid. 404(b); *see also McGill*, 815 F.3d at 878 n.1 ("Rule 404(b) applies to all manner of prior bad acts and not just prior crimes . . . .").  For that reason, Mr. Wilkins's argument that this evidence is inadmissible because it did not lead to a formal charge is simply incorrect.

his financial benefit— is not an "other crime" but rather "direct evidence of the fact in issue."
*Bowie*, 232 F.3d at 929 (quoting *United States v. Badru*, 97 F.3d 1471, 1474–75 (D.C. Cir.
1996)).  The main fact in issue in this case is whether Mr. Wilkins trafficked the complainants as
he is charged.  *See generally* Superseding Indictment.  Consequently, Mr. Wilkins's location is
offered as intrinsic evidence of the charged offenses themselves.

      Having determined that this evidence can properly be considered intrinsic, the Court
turns next to the Rule 403 balancing test.  Fed. R. Evid. 403.  The Court is again concerned that
the probative value of this evidence—which as articulated by the Government is focused
primarily on the locational and proximity evidence it provides— is substantially outweighed by
the danger of unfair propensity prejudice that would accrue if the entirety of this interaction was
entered into evidence.  As Mr. Wilkins articulates, "it is a stretch to argue that the acts of
'deleting information off of his phone' and 'putting something in his mouth' would qualify as. . .
relevant to . . . the allegations made in this case."  Def.'s 404(b) Opp'n at 5.  And while of
limited relevance, this information could confuse the jury or allow them to make an improper
inference about his behavior.  In short, there is a very real risk it would lead to unfair speculation
and innuendo.  This danger can be appropriately mitigated by limiting the admission of this
police encounter to focus on Mr. Wilkins's location and proximity to the hotel at the time of this
police interaction, while barring any testimony describing how he allegedly placed something in
his mouth while sitting in the car or deleted information off his phone.

### c.  August 3, 2019 Interaction

      The Government next seeks to admit evidence stemming from an encounter between Mr.
Wilkins and an undercover MPD officer that occurred on August 3, 2019.  Gov't 404(b) Mot. at
8–10.  The officer in question was, at the time, working undercover as a sex worker, and Mr.

Wilkins approached her to purchase sex. *Id.* at 9. She asked him to come back shortly and observed him circling the block in a green van for roughly 10–15 minutes. *Id.* When he returned, he informed her he was a pimp, and asked her who she worked for and why she was out "on his block." *Id.* Mr. Wilkins apparently became agitated and "got in the undercover officer's face" before walking away. *Id.* Shortly thereafter, he approached her for a second time, asked why she was "giving money away," and then tried to grab her fanny pack. *Id.* He also chest bumped her after she requested that he not touch her and invited her into his green van to talk. *Id.* The undercover officer refused, and ultimately left the area. *Id.* at 9–10. The Government intends to introduce testimony from this undercover member of the MPD's Human Trafficking Unit in its case-in-chief. *Id.* at 10.

The Court will again begin by first determining if this evidence can be considered "intrinsic" to the charged crimes. The Government argues it is, because it arises out of the same series of transactions as the charged offense, is necessary to complete the story, and is inextricably intertwined with evidence regarding the charged offense. Gov't 404(b) Reply at 5–6 (citing *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013)). But as this Court has already noted, this is not the standard this Circuit uses to define intrinsic evidence—evidence that "completes the story" or "arises from the same general transactions" is not enough to qualify the evidence as intrinsic. *Bowie*, 232 F.3d at 929 ("As we have said, all relevant prosecution evidence explains the crime or completes the story. The fact that omitting some evidence would render a story slightly less complete cannot justify circumventing Rule 404(b) altogether."). Under *Bowie*, intrinsic evidence is strictly limited to evidence that is either (1) part of the charged offense itself or (2) an uncharged act performed contemporaneously and to facilitate the charged crime. *Id.* The Court lacks necessary information at this time to be able to determine if

this interaction can properly be classified as intrinsic evidence. As Mr. Wilkins notes, "[t]here is no allegation that this interaction involved any of the complaining witnesses involved in this indictment, or that they were even on the scene—and no allegation that this encounter took place on a day when any offense charged in the indictment occurred." Def.'s 404(b) Opp'n. at 6. It is therefore unclear if this interaction was somehow part of the charged offenses or "performed contemporaneously" to further any of the charged sex trafficking acts. *See Bowie*, 232 F.3d at 929.

However, the Court need not decisively resolve this issue today. That is because this evidence is clearly admissible under Rule 404(b) as evidence of intent, knowledge, and lack of mistake. *See* Fed. R. Evid. 404(b)(2). The Government bears the burden in this case of proving that Mr. Wilkins knew that force, fraud or coercion was used to cause the three complainants to engage in commercial sex work, and that the other offenses were knowingly committed. The undercover officer's testimony about the events of August 3, 2019—that Mr. Wilkins attempted to both set up a commercial sex date with her and recruit her, that he referred to himself as a "pimp," and that he was in the vicinity of the "Track" driving a vehicle later linked to the transportation of one of the complainants—constitutes highly probative evidence on this question of Mr. Wilkins knowledge and intent regarding the crimes that he is charged with. The evidence also serves to undercut any claim of accident or mistake. This evidence is probative on several material issues other than character, and consequently meets the first prong of the Rule 404(b) test.

Turning to the second prong of the Rule 404(b) analysis, the Court finds that this testimony easily survives the Rule 403 balancing test, as the probative value (as described above) far outweighs any unfair prejudice. Indeed, nothing about this evidence appears unfairly

prejudicial in the sense it would cause a jury to make an improper inference—the only negative inferences arise from legitimate inferences a factfinder could draw from this evidence. *See Wallace*, 124 Fed. Appx. at 167. Accordingly, this interaction may be admitted into evidence in full.

### 6. *Additional Police Interactions*

In addition to these three incidents that Mr. Wilkins specifically opposed the admission of in his opposition, Mr. Wilkins contends that all evidence of any other police encounters must be excluded as unfairly prejudicial under Rule 403. Def.'s 404(b) Opp'n at 8. The other three incidents the Government seeks to enter into evidence occurred on November 10, 2015, June 18, 2018, and September 10, 2019.

The Court finds that two of these incidents very clearly constitute intrinsic evidence. First, on November 10, 2015, Mr. Wilkins was arrested for Possession with Intent to Distribute Cocaine. Gov't 404(b) Reply at 6. The Government has moved to introduce testimony from law enforcement officials who will state that they were called to a hotel located in Chesapeake, Virginia, where they observed a silver Cadillac parked outside. *Id.* When they approached the car, they smelled marijuana, and found additional narcotics inside both the Cadillac and Mr. Wilkins's rectum. *Id.* The police also spoke with O.R., one of the complainants in this case who was present at the scene. *Id.* Mr. Wilkins told the police at the time that he was at the hotel with O.R., who he referred to as his girlfriend, because their home was being fumigated. *Id.*

On September 12, 2019, an undercover member of the MPD's Human Trafficking Unit observed one of the complainants being dropped off at a hotel in the District by a green van—the same vehicle that she recognized from when Mr. Wilkins had previously confronted her on the Track. Gov't 404(b) Mot. at 10. The complainant was subsequently arrested for "Solicitation of

Prostitution" and went on to admit that she had been dropped off by her "pimp," who went by "Lucky." *Id.* at 10–11. Law enforcement found the vehicle in question, which was driven by Mr. Wilkins, who agreed to a search of the vehicle. *Id.* at 11. The search turned up several purses, a bulk package of Trojan condoms and various items of women's clothing. *Id.* Mr. Wilkins was not arrested, but the Government now seeks to introduce testimony from the complainant and law enforcement officers describing the incident.

Both incidents constitute direct evidence of whether Mr. Wilkins trafficked and transported the complainants as he is charged and are accordingly intrinsic evidence. In seeming recognition of this fact, Mr. Wilkins does not dispute this point and instead argues that all evidence of any other police encounters must be excluded as unfairly prejudicial under Federal Rule 403. Def.'s 404(b) Opp'n at 8. The Court is again primarily concerned about prejudice stemming from the introduction of information regarding Mr. Wilkins's drug possession during the November 10, 2015 incident. As already discussed at length, *see supra* Section III.L.3, this evidence of Mr. Wilkins's drug possession is of limited probative value given that it is not a drug he stands accused of providing to the complainants, and the introduction of this fact carries a substantial risk of unfair prejudice. As a result, the Court will again exclude any testimony from the November 10, 2015 incident as it relates to the cocaine found on Mr. Wilkins's person. In contrast, the other information conveyed by testimony describing these two encounters is closely related to the charged offenses and conveys limited prejudice outside the offenses themselves. In a Rule 403 analysis, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978). Accordingly, the Court concludes that the

introduction of testimony discussing both police interactions are admissible, pursuant to the limitations outlined above.

The final prior contact with law enforcement that the Government seeks to introduce at trial is less clearly intrinsic evidence, but the Court finds it meets the necessary requirements for admittance under Rule 404(b).  On June 18, 2018, Mr. Wilkins was arrested in the District after being found operating a vehicle without a permit.  Gov't 404(b) Mot. at 8.  Prior to his arrest, MPD officers observed Mr. Wilkins driving his vehicle around the "Track" and speaking with various women known to be engaging in commercial sex work—testimony the Government now seeks to enter into evidence.  *Id.*  This incident has many similarities to the August 3, 2019 police encounter already analyzed by the Court above, and the Court again concludes that this testimony constitutes highly probative evidence on the central question of Mr. Wilkins's knowledge and intent regarding the charged crimes, and can be used to refute any allegation of accident or mistake—meaning it is a permitted use of other crimes evidence under Rule 404(b). It also handily meets the Rule 403 balancing test.  The Court does not think there will be substantial prejudice that accrues to Mr. Wilkins from the jury learning that he was driving in the District without a permit, and any other prejudice caused by this testimony derives from the charged crime itself.  Accordingly, this testimony can be introduced in full.

### 7.  Admissibility of Defendant's Prior Related Convictions

The Government has moved to introduce a certified copy of Mr. Wilkins's past criminal convictions along with accompanying law enforcement testimony including:

- January 11, 2013 Conviction for Assault and Battery of a Family Member from Charlottesville Juvenile and Domestic Relations Court;

- January 22, 2015 Conviction of Possession of Marijuana from Virginia Beach Circuit Court;

- November 10, 2015 Conviction for Possession with Intent to Distribute Cocaine, from Chesapeake Circuit Court.

Gov't 404(b) Mot. at 17.

The Government intends to introduce these three convictions both in its case-in-chief and as impeachment evidence pursuant to Federal Rule of Evidence 609. *Id.* at 20. Mr. Wilkins argues that these three prior convictions must be excluded as irrelevant, as they do not make the current charges more likely than they would be without such evidence. Def.'s 404(b) Opp'n at 6–7.

   *a. Introduction of Mr. Wilkins's Prior Convictions in the Government's Case-in-Chief*

The Government has provided notice that it intends to introduce Mr. Wilkins's three previous convictions into evidence in its case-in-chief. Gov't 404(b) Mot. at 17–18. The Court will first address the two drug-related convictions before turning to Mr. Wilkins's past assault conviction.

Beginning with Mr. Wilkins's two drug offenses, one for marijuana possession and the other for possession of cocaine with the intent to distribute, the Government appears to seek admission of this evidence under two theories. It originally seemed to claim that this evidence fits into a non-specified Rule 404(b) category of relevant, non-propensity evidence, *id.* at 17, before arguing for admission under an intrinsic evidence theory, Gov't 404(b) Reply at 6. Based on the evidence currently before the Court, it is not inclined to allow the admission of Mr. Wilkins's two previous drug-related convictions under either theory of admission at this time.

The Court has already discussed the November 10, 2015 arrest in detail. *See supra* Section III.L.6. In short, the Court concluded that testimony regarding Mr. Wilkins's proximity to a hotel with one of the complainants at the time of his arrest constitutes direct evidence of whether Mr. Wilkins trafficked and transported the complainants as he is charged. However, the Court barred the introduction of testimony regarding the cocaine in Mr. Wilkins's possession, as it found this evidence to be of limited probative value given that it is not a drug he stands accused of providing to the complainants, and the introduction of this fact carries a substantial risk of unfair prejudice. *Id.* For the same reasons the Court will bar the admission of the certified copy of Mr. Wilkins's conviction for this offense.

Mr. Wilkins's January 22, 2015 Conviction of Possession of Marijuana proves a slightly more complicated scenario. At the motions hearing, the Government represented that the complainants used marijuana, among other drugs, in order to perform commercial sex work. Hr'g Tr. at 49. However, it has not been made clear to the Court that the Government will argue that it was Mr. Wilkins who provided the complainants with the marijuana they used. This fact is needed before the Court can properly reach a determination as to if this conviction constitutes intrinsic or Rule 404(b) evidence. This Court has already discussed in depth the way in which evidence of Mr. Wilkins's drug possession and access, to the extent it provides evidence of specific drugs he provided to the complainants to coerce them to perform sex work for his benefit, can appropriately be considered "part of the charged offense." *See supra* Section III.L.3. But before that conclusion can be reached, the complainants in this case must testify that Mr. Wilkins actually provided them with marijuana for this purpose. If this occurs, the Court believes this conviction would indeed constitute intrinsic evidence, and under Rule 403 the probative value of evidence that Mr. Wilkins had access to certain drugs he provided to the

complainants as the method of coercive control would not be substantively outweighed by any danger of undue prejudice.

Turning next to Mr. Wilkins's conviction for Assault and Battery of a Family Member, the Court begins by noting that the Government did not specify the underlying offense for this conviction in its Rule 404(b) briefs.  However, the Government clarified the context of this offense in its Motion for a Order Prohibiting Contact with Victims and Witnesses, ECF No. 71, confirming that this conviction relates to the previously described January 10, 2013 altercation between J.J. and Mr. Wilkins where he punched her several times, pushed her into various hotel furniture, and stomped on her leg following a dispute over money.  *Id*. at 7.  Mr. Wilkins went on to plead guilty to the charge of Assault on a Family Member for these acts.  *Id*. at 8.

The Court will allow the admission of this conviction in the Government's case-in-chief at trial.  The Court has already analyzed the events underlying this conviction, *see supra* Section III.L.1, and concluded that this evidence of physical violence directed at J.J. by Mr. Wilkins constitutes intrinsic evidence of the coercion that Mr. Wilkins used in order to persuade J.J. to engage in sex work for his benefit, in violation of 18 U.S.C. § 1591(a).  It is thus "part of the charged offense," *Bowie*, 232 F.3d at 929, and exempt from Rule 404(b).  This same analysis applies to the admission of Mr. Wilkins's conviction for this assault.  And the conviction's probative value is not substantially outweighed by any unfair prejudice, meaning its admission is allowed under Rule 403.  This evidence is highly probative as to the crucial issue of whether Mr. Wilkins engaged in sex trafficking by coercion, as he is charged.  While there is of course a risk, as with the introduction of any past convictions, that a jury could infer culpability on the basis of this conduct instead of the offenses charged, the Court finds that this risk does not outweigh— much less substantially outweigh—the very strong probative force of this evidence.  *See United*

*States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (noting that evidence of a previous arrest "almost unavoidably raises the danger that the jury will improperly conclude that because [the defendant] committed some other crime, he must have committed the one charged" but explaining that, without some "compelling or unique evidence of prejudice" this danger alone "cannot give rise to a *per se* rule of exclusion." (internal quotation marks and citations omitted)). Mr. Wilkins's conviction for Assault on a Family Member can accordingly be admitted.

### b. *Evidence of Mr. Wilkins's Prior Convictions for Impeachment Purposes*

The Government has also stated its intent to introduce Mr. Wilkins's three prior convictions (listed above) along with his January 11, 2003 conviction for Assault and Battery of a Law Enforcement Officer as impeachment evidence regarding his character for truthfulness, should he choose to testify at trial.  Gov't 404(b) Mot. at 20.  As explained below, the Court will bar the introduction of all three of Mr. Wilkins's prior convictions for the purposes of impeachment.

Rule 609 governs the admission of prior felony convictions for the purposes of impeachment.  Fed. R. Evid. 609.  In a criminal case in which the witness is a defendant, evidence of a previous felony conviction that occurred within the past 10 years "*must* be admitted . . . if the probative value of the evidence outweighs its prejudicial effect to that defendant."  Fed. R. Evid. 609(a)(1)(B) (emphasis added).  In conducting this balancing test, a court considers, among other factors, "the nature of the crime, the time of the conviction, the similarity of the past crime to the charged crime, the importance of the defendant's testimony, and the degree to which the defendant's credibility is central to the case." *Jackson*, 627 F.2d at 1209.

The Court first reviews the type of crimes at issue, and whether these crimes—which include narcotics possession, narcotics trafficking, and assault and battery—are probative as to Mr. Wilkins's truthfulness.  Felony convictions naturally "have some probative value on the issue of credibility." *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (en banc).  However, certain types of felony offenses, that do not involve any false statement by the perpetrator, have been found to not be particularly probative of a witness's credibility.  *See, e.g., United States v. Holland*, 41 F. Supp. 3d 82, 93 (D.D.C. 2014) (excluding assault charge for impeachment purposes after concluding this conviction did not "involve[] dishonest conduct or false statements"); *Lipscomb,* 702 F.2d at 1071 (expressing skepticism that simple narcotics possession crimes reflect strongly on credibility, compared to other crimes); *United States v. Rosales,* 680 F.2d 1304, 1306–07 (10th Cir. 1981) (noting that convictions for violations of narcotics laws do "not normally suggest the special probative value on the issue of credibility contemplated by Fed. R. Evid. 609(a)(1)"); *United States v. Belt,* 514 F. 2d 837, 841 (D.C. Cir. 1975) (en banc) (noting that simple assault does not involve dishonesty or false statement); *Furtado v. Bishop,* 604 F.2d 80,94 (1st Cir. 1979) (remarking that convictions for assault and battery, among other crimes, were "not particularly probative of credibility").  All three of Mr. Wilkins's previous criminal offenses fall into these two categories of offenses, and the Government has not put forth any facts to indicate that these crimes involved any false or dishonest statements.  As a result, the probative value of Mr. Wilkins's past convictions with regard to truthfulness appears to be minimal.

Balanced against this negligible probative value is the significant risk of a prejudicial effect on the jury stemming from the introduction of these past convictions.  As has been repeatedly noted, there is a very real risk that a jury will "generaliz[e] a defendant's earlier bad

act into bad character and tak[e] that as raising the odds that he did the later bad act now

charged." *Old Chief*, 519 U.S. at 180.  This risk is also heightened where, as here,

the impeached witness is also the defendant.  *See Lipscomb,* 702 F.2d at 1063 ("There is less risk

of prejudice when a defense witness other than the defendant is impeached through a prior

conviction because the jury cannot directly infer the defendant's guilt from someone else's

criminal record.").  Nor can this risk of prejudice be appropriately limited by a limiting

instruction, as the Government suggests.  *See* Gov't 404(b) Reply at 14.  As this Court has

previously recognized, "[w]hen '[t]he jury is told to consider the defendant's prior conviction

only on the issue of credibility and not on the overall issue of guilt . . . the jury [is required] to

perform a mental gymnastic which is beyond, not only their powers, but anybody else's.'"

*Holland*, 41 F. Supp. 3d at 95 (quoting *Lipscomb,* 702 F.2d at 1069).  Considering the limited

probative value and very real risk of significant prejudice, the Court concludes that the probative

value of Mr. Wilkins's convictions for past drug possession, drug possession with intent to

distribute, and assault do not outweigh the prejudicial effect of the introduction of this evidence.

Consequently, this evidence is inadmissible for the purposes of impeachment.[9]

The Government has also stated its intent to introduce Mr. Wilkins's eighteen-year-old

conviction for Assault and Battery of a Law Enforcement Officer.  Gov't 404(b) Mot. at 20.

Rule 609 provides additional limits on the use of convictions older than ten years.  Due to the

---

[9] To the extent that any of Mr. Wilkins's past drug offenses are admitted as intrinsic evidence following testimony from the complainants that Mr. Wilkins provided them with the same drug he was convicted of possessing or distributing, *see supra* Section III.L.3., this evidence's prejudicial effect is obviously minimized, and thus can be admitted as impeachment evidence.  *See United States v. Thorne*, No. 18-389, 2020 WL 122985, at *7 (D.D.C. Jan. 10, 2020) (noting that where a jury has already heard about a defendant's prior conviction for some other purpose—such as under Rule 404(b)— the danger of prejudice by repetition of the evidence for purposes of impeachment is "negligible.") (collecting cases).

increased possibility that such convictions are stale, they are only admissible for impeachment if the "probative value . . . *substantially* outweighs its prejudicial effect" and "the proponent gives an adverse party reasonable written notice of the intent to use it."  Fed. R. Evid. 609(b) (emphasis added).  The Government cannot meet this burden here.  For all the reasons previously discussed, a defendant's previous assault conviction generally offers little in the way of probative value as to the question of the defendant's credibility.  *See, e.g.*, *Holland*, 41 F. Supp. 3d 82 at 93; *Belt*, 514 F.2d at 841; *Furtado*, 604 F.2d at 94.  Any probative value is further undercut by the fact this conviction is 18 years old, making it the type of remote conviction that Congress intended trial courts be "extremely cautious" about admitting into evidence.  *United States v. Pettiford*, 238 F.R.D. 33, 39 (D.D.C. 2006) quoting *United States v. Bibbs*, 564 F.2d 1165, 1170 (5th Cir. 1977).

When weighed against the prejudicial effect of introducing past convictions that could cause the jury to infer guilt solely based on this unrelated, previous conviction, the probative value is not "substantially" outweighed here.  Accordingly, Mr. Wilkins's prior January 11, 2003 conviction for Assault and Battery of a Law Enforcement Officer is also barred for the purposes of impeaching Mr. Wilkins for truthfulness.

### M.  Mr. Wilkins's Motion to Sever the Assault Charge Against Him

The Court now turns to the pending motions filed by the Defendant, Mr. Wilkins.  Mr. Wilkins's first motion requests an order from this Court severing the joinder of what he believes to be an unrelated and prejudicial charge against him.  Def.'s Mot. to Sever Counts ("Def.'s Sever Mot.") at 2, ECF No. 37.  He posits that the assault charge is factually unrelated and lacks

any legal relevance to the other sex trafficking counts included in the indictment against him.[10] *Id* at 5. He also contends that the continued joinder of the assault charge will cause him prejudice at trial. *Id.* at 6. The Government opposes this motion, arguing that the assault charge is of the same character as the other charges, given that it concerns one of Mr. Wilkins's alleged sex trafficking victims, and occurred during the same time period he has been charged with providing for her sexual exploitation by force. Gov't Opp'n to Def.'s Mot. to Sever ("Gov't Sever Opp'n") at 4. For the reasons described below, the Court will deny Mr. Wilkins's Motion to Sever.

### 1. Count 10 was Properly Joined Pursuant to Rule 8(a)

Federal Rule of Criminal Procedure 8 allows for the joinder of offenses when the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The term "similar character" has been defined to encompass items that are "nearly corresponding, resembling in many respects, somewhat alike, or having a general likeness to." *United States v. Treadwell*, 566 F. Supp. 80, 86 (D.D.C. 1983); *see also United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980) (same). The term "transaction" has been defined as "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Treadwell*, 566 F. Supp. at 86. And offenses are considered to be "connected together" when there is commonality of proof. *United States v. Richardson,* 161

---

[10] Mr. Wilkins's motion was styled as seeking to sever Count 5 of the original indictment. *See generally* Def.'s Sever Mot. For clarity, the Court notes that the indictment against Mr. Wilkins was superseded on December 9, 2020, after this motion was originally briefed. *See* Superseding Indictment, ECF No. 61. As a result, the assault charge that Mr. Wilkins seeks to sever is no longer Count 5 (as it was in the original indictment), but rather Count 10 of the superseded indictment.

F.3d 728, 734 (D.C. Cir. 1998).  In this Circuit, Rule 8 is construed liberally in favor of joinder.

*Id.* at 733.  Indeed, when claims can meet the above definition, joinder is allowed "even if the

claims are entirely unrelated to each other."  *United States v. Gooch*, 665 F.3d 1318, 1325 (D.C.

Cir. 2012).

All ten of the charges currently included in the superseding indictment against Mr.

Wilkins, including the assault charge, fall neatly within the confines of Rule 8(a).  This is

because all of these charges—including the alleged assault— concern Mr. Wilkins's actions to

advance the trafficking of the complainants for commercial sex work.  The alleged assault was

not some unrelated event, as Mr. Wilkins contends, but was a physical attack by Mr. Wilkins on

L.H., one of the complainants he is accused of trafficking, occurred on "the Track," or the area in

the District where Mr. Wilkins allegedly transported the complainants for the purpose of

engaging in commercial sex work, and happened during the same time period Mr. Wilkins is

charged with obtaining and providing for the complainants' sexual exploitation.  Furthermore,

audio captured on a security camera of the altercation indicates that the assault was an instance

of "discipline" by Mr. Wilkins to express his displeasure with L.H.'s behavior on the Track—

because she broke the rules by looking at another pimp.  It can thus be fairly viewed as a tactic

used by Mr. Wilkins in order to get L.H. to engage in commercial sex work.  As a result, Mr.

Wilkins's assertion that the assault charge bears no factual or logical connection to the other

charged conduct, Def.'s Sever Mot. at 4–5, does not hold water.  The Court accordingly

concludes that this incident, "has a general likeness to" the other trafficking offenses charged to

be of a "similar character," *Werner*, 620 F. 2d at 926.  As such, joinder is permissible.

2.  Severance Pursuant to Rule 14 is Not Appropriate

Having concluded that the counts were properly joined, the Court must determine if severance is required pursuant to Federal Rule of Criminal Procedure 14, which allows for severance of counts upon a showing of prejudice.  Fed. R. Crim. P. 14.  This is allowed even where joinder is otherwise proper.  *See United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006).  Rule 14 states that if "joinder . . . appears to prejudice a defendant . . .  the court may order separate trials of counts . . . or provide any further relief that justice requires."  Fed. R. Crim. P. 14(a).  The defendant carries the burden of demonstrating prejudice and that he will be unable to have a fair trial unless the counts are severed.  *See Carson*, 455 F.3d at 374.  However, even when such a showing is made, the grant of severance is not automatic—it remains within the discretion of the district court to determine if severance is appropriate.  *See Gooch*, 665 F.3d at 1326.  And severance is only proper when there is a "serious risk" that without severance the jury will be unable to make "a reliable judgment about guilt or innocence."  *Id.* at 1336 (citing *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993)).  Absent this showing of substantial prejudice to the defendant, "offenses properly joined under Rule 8 should be jointly tried to conserve judicial resources, [alleviate] the burdens on citizens serving as jurors, and [to avoid] the necessity of having witnesses reiterate testimony in a series of trials."  *Treadwell*, 566 F. Supp. at 86 (alterations in original) (citing *United States v. Clemente*, 494 F. Supp. 1310, 1325 (S.D.N.Y. 1980)).

Mr. Wilkins has not met this high bar here.  He contends that trying the assault charge with the other sex trafficking charges will create "a very real likelihood for propensity prejudice . . . [that] would almost certainly lead to a rush to judgment, juror bias against Mr. Wilkins, and ultimately a guilty verdict . . ."  Def.'s Sever Mot. at 6.  He also claims that he would have to

present two separate and inconsistent defenses at trial (though he does not elaborate on this point in any detail). *Id*. The Court finds that this is not enough to show prejudice so severe that in effect Mr. Wilkins would be denied a fair trial, or that the failure to sever would somehow prevent the jury from being able to render a reliable verdict.

This is because, *even if* the charges were severed as Mr. Wilkins requests, the separate juries would still be presented with the same evidence in each trial through the operation of Federal Rule of Evidence 404(b), creating an "unnecessary waste of judicial, prosecutorial and civic effort, resources and time." *Treadwell*, 566 F. Supp. at 87 (rejecting similar request for severance where offenses charged were factually related). As the D.C. Circuit has noted, when a defendant objects to joinder because of criminal propensity prejudice, as is the case here, "the trial court should initially be guided by whether evidence of each crime could be admitted in a separate trial of the other(s) under Federal Rules of Evidence 403 and 404(b)." *United States v. Burkley*, 591 F.2d 903, 920 (D.C. Cir. 1978). Under Federal Rule of Evidence 404(b), evidence of "other crimes," such as the assault, can be entered into evidence for select non-propensity reasons, such as motive, intent, knowledge, common scheme or plan, or absence of mistake. Fed. R. Evid. 404(b). The assault fits into a number of these categories—for example, it illustrates a method by which Mr. Wilkins enacted the "common scheme or plan" to traffic the complainants, shows his intent to use coercive force, and the audio from the assault demonstrates his knowledge of the sex work engaged in by the complainant. Rule 404(b) evidence must also survive Rule 403's balancing test, which is accomplished here given that the probative value of this evidence is far from substantially outweighed by any danger of unfair prejudice. *Burkley*, 591 F.2d at 919 (D.C. Cir. 1978) (citing Fed. R. Evid. 403). As the Government argues, the assault demonstrates one particularly salient way that Mr. Wilkins "used persuasion, inducement,

enticement, and coercion" to intimidate victims.  Gov't Sever Opp'n at 6.  It is therefore highly

probative of, again, both the common scheme Mr. Wilkins enacted to accomplish the crimes and

his intent to commit the charged offenses.  Moreover, even though the evidence is prejudicial, it

is not *unfairly* prejudicial, given that it is unlikely to cause the jury to make any improper

inferences, and because this evidence is so closely intertwined with the other charges brought

against Mr. Wilkins.  *See United States v. Geddes*, 844 F.3d 983, 990 (8th Cir. 2017) ("Though

all Rule 404(b) evidence is inherently prejudicial, the test under Rule 403 is whether its probative

value is *substantially* outweighed by the danger of *unfair* prejudice.") (emphasis in original)

(quoting *United States v. Williams*, 796 F.3d 951, 960 (8th Cir. 2015)).  Consequently, the Court

finds the highly probative value of the assault to substantially outweigh any risk of unfair

prejudice, meaning that even if Count 10 were severed, evidence of the assault could be entered

in both trials pursuant to Rule 404(b).

    As a result, the Court concludes that the use of severance here would be "an extreme

remedy that would require wholesale duplication of effort and an unnecessary waste of judicial

resources."  *United States v. Worman*, No. 07-cr-40, 2008 WL 3984160, at *4 (E.D. Pa. Aug. 28,

2008).  Mr. Wilkins's motion is accordingly denied.

### N.  Mr. Wilkins's Motion to Suppress Evidence

    Mr. Wilkins has also moved to suppress all evidence obtained from three different search

warrants the Government issued in this case, citing various Fourth Amendment violations.  *See*

Def.'s Mot. to Supp. Tangible Evid. & Mem. of P. & A. in Supp. ("Def.'s Mot. Supp.") at 1,

ECF No. 39.  These three warrants include: (1) a warrant issued for Mr. Wilkins's ZTE cellular

phone, which was seized incident to his arrest for driving without a permit on June 18, 2018 and

held by the MPD for 15-months before a search warrant was issued; (2)  a warrant issued for Mr.

Wilkins's Samsung cellular phone seized incident to his arrest on November 5, 2019; and (3) a

November 8, 2019 warrant issued to Facebook for the Instagram account

"THEREAL_LUCKYCHARM."  *Id.*  Mr. Wilkins argues first that the prolonged, 15-month

seizure of his ZTE phone was unreasonable under the Fourth Amendment.  *Id.* at 4.  He also

claims that the search warrants issued for the ZTE Phone and Instagram account failed to

properly establish probable cause.  *Id.* at 6.  Finally, he argues that all three warrants issued in

this matter are so overbroad to constitute prohibited "general warrants."  *Id.* at 15.  The

Government opposes all three claims.  *See* Gov't Opp'n to Def.'s Mot. to Suppress Tangible

Evid. ("Gov't Supp. Opp'n"), ECF No. 56.  For the reasons listed below, the Court finds that Mr.

Wilkins's first argument is the only one with merit.

### a.  Legal Standard

The Fourth Amendment guarantees that the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated . . ."  U.S. Const. amend. IV.  When this guarantee is violated, courts will typically

impose the exclusionary rule, which requires the suppression of evidence obtained by

unconstitutional means.  *United States v. Weaver*, 808 F.3d 26, 33 (D.C. Cir. 2015) (citing *Mapp

v. Ohio,* 367 U.S. 643, 655 (1961).  This exclusion of evidence (though subject to several sizable

exceptions), includes both "the primary evidence obtained as a direct result of an illegal search or

seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called

fruit of the poisonous tree."  *Utah v. Streiff*, 136 S. Ct. 2056, 2061 (2016) (internal quotations

omitted).

A seizure of property occurs "when there is some meaningful interference with an

individual's possessory interests in that property." *United States v. Miller*, 799 F.3d 1097, 1102

(D.C. Cir. 2015) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  The

reasonableness of such a seizure "turns on the nature and extent of interference" with the

individual's possessory interests.  *Id.*  A seizure can "became unreasonable" when "its length

unduly intrude[s] upon constitutionally protected interests." *Jacobsen*, 466 U.S. at 124 n. 25; *see*

*also United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (noting that "even a seizure based

on probable cause is unconstitutional if police act with unreasonable delay in securing a

warrant.").

The Supreme Court has described the assessment of probable cause for purposes of a

search warrant as "a practical, common-sense decision whether, given all the circumstances set

forth in the affidavit . . .  there is a fair probability that contraband or evidence of a crime will be

found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  It is the duty of a

reviewing court "to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that

probable cause existed." *Id*. at 238-39.  When making this determination, judges "need not

confine their evaluations within rigorous legalistic boundaries but instead may use their common

sense." *United States v. Davis*, 617 F.2d 677, 692 (D.C. Cir. 1979).

It must be noted that even when evidence is determined to have been gathered in

violation of the Fourth Amendment, this evidence is not necessarily automatically suppressed.  If

the officer gathering evidence had an objectively reasonable reliance on a search warrant, the

exclusionary rule will typically not apply.  *United States v. Leon*, 468 U.S. 897, 922 (1984).  This

is because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish

the errors of magistrates and judges." *Massachusetts v. Sheppard,* 468 U.S. 981, 990 (1984).

That said, there are several exceptions to this *Leon* good faith principle, one of which is that

suppression is appropriate "if the officers were dishonest or reckless in preparing their affidavit

or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926.

### b. The 15-Month ZTE Phone Seizure was Unreasonable

On June 18, 2018, Mr. Wilkins was arrested in the K Street area of Washington D.C. for driving in the city without a permit, a minor traffic violation.  Def.'s Mot. Supp. at 1–2.  The MPD officers subsequently seized his phone incident to arrest.  *Id*. at 2.  The legality of the traffic stop and initial seizure of the ZTE phone are not in dispute.  However, while Mr. Wilkins was released the next day, his ZTE phone was logged as "Evidence or Suspected Proceeds of Crime," and remained in MPD custody for the next fifteen months, until September 18, 2019.[11] On September 18, 2019, Detective Sullivan, a member of the MPD, applied for a warrant to search the ZTE phone.  Detective Sullivan took this action six days after the arrest of one of the complainants and her subsequent identification of Mr. Wilkins as her pimp, "Lucky," Gov't Supp. Opp'n at 6,  after he inadvertently discovered through a database check that Mr. Wilkins's ZTE phone was still in custody from the traffic stop over a year prior.  The warrant was granted the same day.

---

[11] The Government further clarified in its Supplement to its Opp'n to Def.'s Mot. to Suppress Tangible Evid. ("Supp. Gov't Opp'n"), ECF No. 75, that under MPD policy, upon arrest all personal property is removed from prisoners and designated as either "Prisoner Property" or as "Evidence or Suspected Proceeds of Crime."  *Id.* at 2 (citing MPD General Order 601-01 on Recording, Handling and Disposition of Property Coming into the Custody of the Department).  The Government represents that MPD logged the ZTE phone as "Evidence" pursuant to a pending investigation, and while not codified in the General Order 601-01 or any other formal order, according to a supervisor in the MPD's Evidence Control Branch, "MPD is not permitted to release property tagged as Evidence without the approval of the prosecuting attorney."  *Id.* at 3.  This is curious, given that Mr. Wilkins was arrested for a no-permit offense, leaving the Court to wonder how the ZTE Phone could plausibly be considered evidence of a traffic violation.

Mr. Wilkins contends that the 15-month delay in obtaining a warrant for his ZTE cell phone was an unreasonable seizure, and accordingly violative of the Fourth Amendment.  Def.'s Mot. Supp. at 1.  The Government counters that this delay does not constitute "meaningful interference" with Mr. Wilkins's possessory interest in his phone.  Gov't Supp. Opp'n at 2.  The Court is unconvinced.

To assess the reasonableness of a seizure, courts are required to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *United States v. Place*, 462 U.S. 696, 703 (1983).  When a delayed warrant is at issue, the Eleventh Circuit has identified several "highly relevant" factors to consider when conducting this balancing test, which include: (1) the significance of the interference with an individual's possessory interest; (2) the duration of the delay; (3) whether the individual consented to the seizure; (4) the Government's legitimate interest in holding the property as evidence, and (5) whether law enforcement were diligent in pursuing their investigation.  *United States v. Laist,* 702 F.3d 608, 613–614 (11 Cir. 2012). While there is no "bright line past which delay becomes unreasonable . . . [w]hen police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable."  *United States v. Burgard*, 675 F.3d 1029, 1033–34 (7th Cir. 2012).

The Court begins with an evaluation of the extent of the Government's interference with Mr. Wilkins's possessory interest in the ZTE phone.  The interference by the Government was by all accounts, severe.  The phone was seized for fifteen months before a warrant was obtained. "The longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement

53

on possession than a shorter one."  *Id*. at 1033; *United States v. Mitchell,* 565 F. 3d 1347, 1350 (11th Cir. 2009) (noting that each day a warrant is delayed "infringes [on the] possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'") (quoting *Jacobsen,* 466 U.S. at 124).  Delays in obtaining a warrant far shorter than the 15 months in this case have been found to be unconstitutionally long.  *See, e.g.*, *United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019) (finding 31-day delay in obtaining warrant following seizure of cell phone unreasonable); *Mitchell,* 565 F. 3d at 1350 (21-day delay in obtaining warrant for seized computer unreasonable); *compare with United States v. Stabile*, 633 F.3d 219, 235–36 (3d Cir. 2011) (three-month delay in obtaining warrant for computer reasonable where defendant had consented to seizure, did not request return of property, and Government provided reasonable explanation for delay).  This factor consequently generally weighs in favor of finding the Government interference here to be meaningful.

The Court turns next to evaluate Mr. Wilkins's possessory interest in the ZTE phone.  An individual's property interest in their own cell phone can generally be assumed to be significant. As the Supreme Court has noted, "[t]he term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone."  *Riley v. California,* 573 U.S. 373, 393 (2014).  This recognition of the capabilities of modern smartphones—which the Government helpfully clarifies the ZTE phone in question was—means that they contain similar possessory interests to that of an individual's personal computer.  And "individuals may have a particularly powerful possessory interest" in their own computers, as they are "relied upon heavily for personal and business use."  *Laist*, 702 F.3d at 614  (citing *Mitchell*, 565 F.3d at 1347).  Accordingly, as a starting point, Mr. Wilkins appears to have a strong possessory interest in his ZTE phone.

Notably, Mr. Wilkins did not act to seriously diminish this strong possessory interest. He did not consent to the seizure in any respect, as it was taken from him pursuant to his arrest for driving without a permit. "An individual diminishes his [possessory] interest if he consents to the seizure or voluntarily shares the seized object's contents." *Pratt*, 915 F.3d at 271–72 (finding that defendant's possessory interest in his cell phone was not diminished where he did not consent to seizure or voluntarily share the phone's contents) (citing *United States v. Christie*, 717 F.3d 1156, 1162–63 (10th Cir. 2013)); *see also Burgard*, 675 F. 3d at 1034 (finding defendant "had a strong interest in possessing his cell phone" as "[a]t no point before the seizure did he abandon the phone or relinquish it to a third party."). Nor was Mr. Wilkins afforded the opportunity to access the ZTE phone's contents to save any critical information prior to the seizure. *See Laist*, 702 F.3d at 616 (finding possessory interest in the contents of seized computer diminished where defendant "was afforded the opportunity to remove whatever he wanted to download from the computer and hard drives" prior to seizure).

The strongest argument that can be made that Mr. Wilkins had a diminished possessory interest is that he did not, at any point during the 15-month seizure, specifically request the return of his property from the MPD. Such a remedy was available to him pursuant to Rule 41(g) of the Superior Court Rules of Criminal Procedure for the District of Columbia. *See* Sup. Ct. R. Crim. P. 41(g) ("A person aggrieved by. . . [a] deprivation of property may move for the property's return."). The Government's balancing analysis relies almost exclusively on this omission to argue that Mr. Wilkins's failure to demand the phone's return forfeited any and all possessory interest he previously held in his phone. The Court is unconvinced that this single factor, without more, is enough to compel this outcome.

This is because evidence that an individual has actively asserted their possessory claim to a piece of property through requesting its return is only "helpful, though not essential" to the determination of one's possessory interests. *Burgard,* 675 F.3d at 1033 ("[I]t can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it— perhaps by checking on the status of the seizure or looking for assurances that the item would be returned. If so, this would be some evidence (*helpful, though not essential*) that the seizure in fact affected [his] possessory interests.") (emphasis added). The Court does not find this non-essential fact particularly revealing here. Mr. Wilkins was not legally trained. The notion that he should have known that he had the legal right to request the return of his phone (which, as discussed, had been logged as evidence and would have required prosecutor approval for release), or that he should bear the cost of obtaining legal representation to take action in this regard is a high burden to place on an ordinary citizen to safeguard one's Fourth Amendment rights. Furthermore, as the Government repeatedly emphasizes, Mr. Wilkins was apparently a "person of interest" at the time of his arrest for driving without a permit and subsequent seizure of the ZTE phone. Gov't Supp. Opp'n at 12. If known, this would surely inspire hesitation on his part to undertake affirmative outreach to the MPD to inquire about his property. And such "[a]n unwillingness to invite a criminal prosecution" "cannot [be] equat[ed]. . . [to] a voluntary abandonment of any interest." *Walter v. United States*, 447 U.S. 649, 658 n.11 (1980).

For this same reason the Court finds unpersuasive the Government's secondary argument that Mr. Wilkins disclaimed his possessory interest by somehow voluntarily abandoning his phone—which by its own account, was taken from his person following his arrest for driving without a permit, and then held in police files as "evidence." This conclusion stretches reason. While, certainly, "[o]fficers may lawfully seize property that has been voluntarily abandoned,

*United States v. Griffith*, 867 F.3d 1265, 1279 (D.C. Cir. 2017), the facts do not indicate that Mr. Wilkins abandoned the ZTE phone.  "Whether property has been abandoned is a question of fact that turns primarily on whether the objective facts available to the investigating officers evidenced (i) the suspect's denial of ownership, and (ii) that he physically relinquished the property in a way that demonstrated abandonment."  *United States v. Voice*, 622 F.3d 870, 877 n.3 (8th Cir. 2010); *see also United States v. Thomas,* 864 F. 2d 843, 846 (D.C. Cir. 1989) (noting that abandoned property analysis for Fourth Amendment purposes requires an inquiry into "the intent of the person who is alleged to have abandoned" the property, inferred from "words spoken, acts done, and other objective facts.").  The Court has not been provided any evidence that Mr. Wilkins's actions or comments at the time of his arrest indicated an intent to abandon his phone.  The Court concludes that Mr. Wilkins has a significant possessory interest in his ZTE phone, and that the Government's interference with that interest was meaningful. [12]

Turning to the next factor in the analysis, the Court must balance Mr. Wilkins's strong possessory interest in the ZTE phone against the Government's justification for the seizure to determine if the 15-month delay was reasonable.  The Government claims that the prolonged seizure was required due to the need to "preserv[e] evidence of sex trafficking and commercial

---

[12] The Government also claims that because the ZTE phone lacked any type of password protection, this fact "diminish[es] any alleged privacy interest" Mr. Wilkins can assert in the phone.  Gov't Supp. Opp'n at 12 (citing *Trulock v. Freeh*, 275 F.3d 391, 403 (4th Cir. 2001) ("By using a password, [the defendant] affirmatively intended to  exclude . . . others from his personal files [in a computer].")).  But this is utterly tangential to the relevant analysis, as privacy interests are not at issue when a court evaluates the constitutionality of a seizure.  This is because "[a] seizure affects only the person's possessory interests; a search affects a person's privacy interests."  *Segura v. U.S,* 468 U.S. 796, 806 (1984).  Thus, the "critical question relates to any *possessory* interest in the seized object, not to *privacy or liberty* interests."  *Burgard*, 675 F.3d at 1033 (emphasis added).  Mr. Wilkins's lack of password protection on his phone and potentially diminished privacy interest is consequently of little import as to the strength of his possessory interest in the phone.

sexual exploitation that is contained in the ZTE Phone." Gov't Supp. Opp'n at 12. To support

this claim, the Government argues that Mr. Wilkins was a person of interest to MPD officers at

time of initial arrest and seizure, and given the digital content of the data contained on the ZTE

phone, there was a heightened interest in protecting this evidence from destruction. *Id.* This

asserted interest falls apart under close analysis. Mr. Wilkins was stopped and arrested for a

traffic offense, not for anything related to sex trafficking. His phone was seized incident to that

arrest, as is apparently MPD policy for all arrests, and then tagged as "evidence." But it is

difficult to see how a cell phone could contain any evidence of the crime of driving without a

permit, or how there could be any valid fear of evidence destruction for this type of violation.

Nonetheless, it was on this basis that the ZTE phone was stored as "Evidence or Suspected

Proceeds of Crime" for the next 15 months. Detective Sullivan, the member of MPD leading

the Human Trafficking Investigation and who later obtained the warrant, was never even notified

about the existence of the ZTE Phone, and only found out about it when he "discovered that

phone was in MPD's possession" when looking up various contacts with defendants. Supp.

Gov't Opp'n at 3. The state, in short, seems to have inadvertently retained the ZTE Phone for

over 15 months with no real justification—and certainly no probable cause or reasonable

suspicion— until it was rediscovered when it could serve a useful purpose for law enforcement.

     This stands in stark contrast to nearly all of the other cases that have examined this issue

of an extended seizure prior to a warrant being issued. The Government's interest in a seizure is

strong when there is probable cause to believe the seized item contains evidence of a crime. *See*

*Burgard*, 675 F.3d at 1033. Accordingly, in all cases that have excused an extended delay

between a seizure and warrant—as well as others that have not—there was at minimum probable

cause to believe the item seized contained evidence of a crime. *See, e.g., Mitchell* 565 F.3d at

1351 (defendant admitted that computer seized contained child pornography); *Laist*, 702 F. 3d at 618 (probable cause for seizure present as agents directly observed child pornography on seized computer); *Burgard*, 675 F.3d at 1034 (defendant conceded "police had probable cause to believe phone would contain evidence of a crime"); *Thomas v. United States*, 775 F. App'x 447, 490 ("very strong reasons" including witness testimony regarding computer's contents and law enforcement observations of computer to conclude it contained evidence of a crime). In contrast, for the 15 months the ZTE phone was in custody, MPD did not have probable cause to believe that the phone contained evidence of a crime. The Court is deeply uncomfortable with the notion, seemingly advanced by the Government, that law enforcement has the power to seize and indefinitely hold any property merely on the Government's word that the property owner is a person of interest in some uncharged, unrelated crime at the time of the seizure. Quite simply, this is not reasonable. Given this lack of a defensible state interest for the ongoing seizure of the ZTE phone, the balancing test becomes one-sided in favor of finding the prolonged seizure unreasonable.

In a similar vein, courts must consider the diligence with which law enforcement seek a warrant for seized property. *See Mitchell,* 565 F.3d at 1352; *Pratt*, 915 F. 3d at 272 (relying heavily on fact that "government has no persuasive justification for the delay in obtaining a search warrant" to find 31-day delay unreasonable). "When police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Burgard*, 675 F.3d at 1033. Such is the case here, where the ZTE phone was essentially forgotten for 15 months. This factor also strongly urges the Court to find the delay unreasonable.

Balancing all these factors together, given Mr. Wilkins's relatively undiminished possessory interest in his ZTE Phone and the Government's utter lack of justification for both the initial seizure and its lack of diligence in obtaining a warrant, the Court concludes that the 15-month delay violates the Fourth Amendment.

Perhaps anticipating this result, the Government urged the Court in both its briefs and at oral argument to apply the *Leon* good faith exception to the exclusionary rule and decline to suppress the evidence derived from the search of the ZTE phone.  *See* Gov't Supp. Opp'n at 26; Hr'g Tr. at 43.  Mr. Wilkins argues that the good-faith exception is unavailable here.  Def.'s Supp. Reply at 5–6.  For the reasons listed below, the Court agrees with Mr. Wilkins and finds the Good Faith exception inapplicable.

In *Leon,* the Supreme Court held a good faith exception to the exclusionary rule exists such that, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."  *Leon*, 468 U.S. at 926.  The Government argues that none of the exceptions to the good faith rule apply to the instant case, meaning that the ZTE Warrant need not be suppressed.  But this analysis misunderstands the source of the constitutional violation at issue. The *Leon* good faith exception applies to defects that arise under the search warrant process, not unconstitutional seizures.  And the Supreme Court has held that the proper remedy for an unreasonably long delay in obtaining a warrant following a seizure under the Fourth Amendment is suppression of the evidence.  *Segura*, 468 U.S. at 812; *Burgard,* 675 F.3d. at 1035.  Procuring a late-obtained warrant cannot be enough to remedy this type of unreasonable delay, because by merit of the type of violation at issue a warrant is always eventually obtained—meaning under this logic the exclusionary rule could not ever operate to deter this Fourth Amendment violation.

*See Burgard,* 675 F. 3d at 1035 (noting the proper inquiry is "not whether police ultimately obtained a warrant; it is whether they failed to do so within a reasonable time.").

Indeed, the Seventh and Ninth Circuits, the only two courts that appear to have specifically addressed this issue, have both declined to apply the good faith exception to cases of an unreasonably prolonged seizure. *See, e.g., Burgard,* 675 F. 3d at 1035 ("When an officer waits an unreasonably long time to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant."); *United States v. Song Ja Cha*, 597 F.3d 995, 1006 (9th Cir. 2010) ("[T]he exclusionary rule is applicable where seizures are unconstitutionally long" to "deter unreasonable police behavior and to provide for judicial determination of probable cause."). As the Ninth Circuit went on to explain, law enforcement are presumed to be aware of the law that a seizure must last "no longer than reasonably necessary for the police, acting with diligence, to obtain a warrant." *Id.* at 1005 (citing *Illinois v. McArthur*, 531 U.S. 326, 332 (2001)). As a result, the application of the good faith exception would be inappropriate because this type of Fourth Amendment violation is "sufficiently deliberate that exclusion can meaningfully deter it" and "deterrence is worth the price paid by the justice system." *Id.* at 1004. An examination of the policy implications of allowing the good faith exception here also helps to explain why the Court finds exclusion to be appropriate. As the *Burgard* court aptly noted, allowing a "good faith" exception to apply "would eliminate the [exclusionary] rule's deterrent effect on unreasonably long seizures. Police could seize any item—a phone, a computer, a briefcase, or even a house—for an unreasonably long time without concern for the consequences, evidentiary and otherwise." 675 F.3d at 1035; *Song Ja Cha,* 597 F.3d at 1005 ("To create [such] an exception . . . would defeat the purpose of the exclusionary rule . . ."). This fear is exactly what

has materialized here, with law enforcement seizing Mr. Wilkins's phone and holding it for well over a year until the search was ordered.  Such an outcome cannot possibly be in accord with the basic protections of the Fourth Amendment.  Therefore, as a matter of both law and policy, the Court finds that the Good Faith exception does not apply.

Consequently, the Court will grant Mr. Wilkins's motion to suppress the tangible evidence obtained from the illegal search of the ZTE phone.  However, it appears that this finding may have little practical effect.  The Government represents that the warrant for Mr. Wilkins's ZTE phone bore no poisonous fruit, in that the Government did not rely on any unique evidence found on the ZTE phone to obtain any subsequent warrants.  Hr'g Tr. at 44.  This is because a warrant for one of the complainant's phones was authorized at the same time the warrant for the ZTE phone was approved, and all of the relevant evidence from Mr. Wilkins's ZTE phone was also found on the complainant's phone.  *Id.*  Accordingly, the Government argues, there is no way the illegal ZTE search could have tainted any subsequent evidence obtained in the case.  Hr'g Tr. at 44.  The Court is not so sure.  Given the general paucity of detailed information before the Court at this time, it will grant Mr. Wilkins's counsel the opportunity to submit additional briefing on this topic to articulate what evidence, if any, should be excluded as fruit of the illegal search of the ZTE phone.

*c. The Warrant to Search Mr. Wilkins's Instagram Account was Properly Supported by Probable Cause*

Mr. Wilkins also argues that the Facebook search warrant lacked probable cause.  He alleges that neither the warrant nor the accompanying affidavits indicate why the Government needed to search the entire Instagram account to confirm that Mr. Wilkins owned and operated it, and that Detective Sullivan failed to provide any "concrete or reliable support" for why he

believed that searching the account would provide additional evidence of Mr. Wilkins's alleged

commercial sexual exploitation.  Def.'s Mot. Supp. at 13–14.  The Government, in response,

provides a list of facts included in the affidavit that they believe demonstrates that probable

cause existed to search the account for evidence of sex trafficking.  These facts include:

> (1) the target Instagram account's name is Thereal_luckycharm, and it bore a photograph
> of the defendant as the profile picture; (2) the woman dropped off for a commercial sex
> "date' with an undercover officer by the defendant in September 2019 identified him as
> her pimp and said she knew him as "Lucky"; and (3) based on Detective Sullivan's
> training and experience, "Pimps and their prostitutes are now meeting with increased
> regularity via social media like Instagram, Facebook, Snapchat, and other popular social
> media websites.  Pimps use these websites to promote their lifestyles, wealth, and
> belongings as a way to recruit females into their stable.  Pimps use the social media
> accounts to directly message or contact potential prostitutes to begin the recruitment
> process by applying pressure or attempting to sell the pimp lifestyle to the victims."

Gov't Supp. Opp'n at 15–16.  The Government also pointed to conversations between the

@thereal_luckycharm and an account previously used by a known trafficker, of which law

enforcement had assumed control.  Id. at 16.  The conversations involved "pimp slang terms,"

and @thereal_luckycharm provided a phone number to the known trafficker.  Id.  The Court

concludes that the combination of all of these facts taken together is more than sufficient to

establish probable cause that this Instagram account would contain evidence of crimes of sexual

exploitation.

　　To determine whether a search warrant is supported by probable cause, courts must ask

"whether, given all the circumstances set forth in the affidavit . . .  there is a fair probability that

contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.

It is the duty of a reviewing court "to ensure that the magistrate had a 'substantial basis for . . .

conclud[ing]' that probable cause existed.,"  Griffith, 867 F. 3d at 1271 (quoting Gates, 462 U.S.

at 236).  When making this determination, judges "need not confine their evaluations within

rigorous legalistic boundaries but instead may use their common sense." *Davis,* 617 F.2d at 692

(quoting *Gates*, 462 U.S. at 236).  They also may consider that, "while each fact standing alone

may be insufficient, the combination of all the facts can establish probable cause." *United States*

*v. Gilliam,* 167 F. 3d 628, 633 (D.C. Cir. 1999).

The Court concludes that the Government demonstrated probable cause in its warrant

application by demonstrating that there was a "substantial basis" to believe that the Instagram

account contained evidence of Mr. Wilkins's alleged criminal activity.  Detective Sullivan's

experience regarding trafficking operations generally led him to believe that Mr. Wilkins likely

would have used Instagram to conduct his illegal activities.  *See United States v. Hodge,* 246

F.3d 301, 307 (3d Cir. 2001) (magistrate judges are allowed to "give considerable weight to the

conclusions of this experienced law enforcement officer regarding where evidence of a crime

was likely to be found.").  This belief was also supported by direct evidence from the

investigation—messages between Mr. Wilkins and an account operated by law enforcement that

Mr. Wilkins believed belonged to a known trafficker.  Especially given the evidence set forth in

the affidavit establishing probable cause that Mr. Wilkins had committed trafficking-related

offenses, including that he had transported women to the District to engage in commercial sex

since 2017, and had exchanged messages with a known trafficker through his Instagram,

combined with Detective Sullivan's knowledge of how traffickers use social media and the

general ubiquity of social media to facilitate modern communication, the Government

established a fair probability that evidence of trafficking-related offenses and/or identities of

other potential victims would be found in the searched Instagram account.  Furthermore, because

the Government was only in possession of circumstantial evidence that pointed to Mr. Wilkins

owning and operating the account, it was perfectly reasonable for law enforcement to seek

additional evidence that the account belonged to him.[13]  The Government therefore has met the

probable cause standard, and Mr. Wilkins's motion to suppress on this ground is denied.

### d.  None of the Warrants Were Fatally Overbroad

Mr. Wilkins's final argument for suppression is that the ZTE Phone, Facebook, and

Samsung warrants were all overbroad and therefore prohibited under the Fourth Amendment.[14]

Def.'s Supp. Mot. at 15.  The Fourth Amendment prohibits general search warrants and requires

that a warrant describe, with particularity, the place to be searched and the persons or things to

be seized.  U.S. Const. amend. IV.  This requirement is intended to protect people from "general,

exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443,

467 (1971), and to ensure that a search conducted by law enforcement be "carefully tailored to

its justifications," *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).   The Government successfully

refutes Mr. Wilkins's argument by demonstrating that the warrants were appropriately tailored to

the requirements of this case, with the information seized restricted to data related to violations

of specified statutes.  Gov't Supp. Opp'n at 19–20.

In making his argument that the warrants at issue were overbroad, Mr. Wilkins relies

heavily on *United States v. Winn*, an out-of-Circuit district court case in which the defendant was

charged with taking photos of young girls in swimsuits using his cell phone.  *United States v.*

---

[13] Mr. Wilkins says that a search of the entire Instagram account was not necessary to confirm that he was the user of the account.  Def's Supp. Mot. at 14.  However, he does not cite any authority to support this position.  Because the Government had some evidence to support its belief that Mr. Wilkins was the user of the @thereal_luckycharm account, the Court concludes that it was perfectly reasonable for them to seek confirmation (beyond a profile picture and username) that the account, in fact, belonged to Mr. Wilkins.

[14] Because the Court has already found that the evidence derived from the search warrant issued for Mr. Wilkins's ZTE Phone must be suppressed, it confines its analysis here to the remaining warrants, which include those for Mr. Wilkins's Instagram account and Samsung phone.

*Winn*, 79 F. Supp. 3d 904, 904 (S.D. Ill. 2015); Def.'s Supp. Mot. at 15.  In that case, the Court

found the warrant issued to obtain the defendant's relevant cell phone files fatally overbroad.

*Winn*, 79 F. Supp. 3d at 919.  However, there are important differences between the warrant

issued in *Winn* and the warrants in this case.  The *Winn* warrant authorized the seizure of "any

and all files" related to the Public Indecency charge brought against the defendant, including but

not limited to the phone's calendar, phone book, contacts, SMS messages, MMS messages,

emails, pictures, videos, images, ringtones, and audio files, all while the police only had probable

cause to believe that photos and videos would be evidence of the crime.  *Id.*  The Court

accordingly held that the warrant was "not as particular as could be reasonably expected given

the nature of the crime and the information the police possessed."  *Id.* at 920.  In short, the

warrant was overbroad because the police had enough information to more appropriately tailor

the warrant to a specific type of files, and by further refining the subject matter of the photos for

which it was searching, and by the relevant timeframe, given that the alleged criminal activity

occurred only on a single day.  *Id.*

   The facts of this case are inapposite.  In the warrant applications, the Government

identified with specificity several types of records and information it sought—it did not make a

request for "any and all" files in the overbroad fashion that the *Winn* court prohibited.  Gov't

Supp. Opp'n at 20–21.  Instead, the warrants limited the information to be seized and searched to

violations of specific statutes.  *See Matter of Black iPhone 4,* 27 F. Supp. 3d 74, 78 (D.D.C.

2014) (indicating overbreadth concerns are appropriately addressed where the information to be

seized is limited to "information only insofar as it pertains to violations of [two statutes].").  The

warrants also indicated parameters that the evidence retrieved must "relat[e] to the identity or

location of perpetrators, aiders and abettors, co-conspirators."  Gov't Supp. Opp'n Att. B ("ZTE

Warrant Aff.") at 1b.  Courts have frequently found that this level of specificity is permissible, especially when a comprehensive review of electronic evidence is necessary for law enforcement to know exactly where the relevant evidence is located.  *See United States v. Bishop*, 910 F.3d 335, 336 (7th Cir. 2018) (rejecting overbreadth challenge to warrant and permitting police to look at every file on a phone to decide which met criteria set forth in a warrant because "[c]riminals don't advertise where they keep evidence."); *Christie*, 717 F.3d at 1165 (holding computer search warrant "may pass the particularity test if they limit their scope . . . to evidence of specific federal crimes."); *People v. Lopez*, No. 341089, 2019 WL 1370716, at *5 (Mich. Ct. App. Mar. 26, 2019) ("When the search is limited to evidence explicitly authorized in the warrant . . . it is reasonable for officers to search through the data and applications on the phone to determine whether it contains the sought after evidence.").  Because Mr. Wilkins was allegedly using his phone and Instagram accounts to conduct commercial sex trafficking, law enforcement had no way of knowing exactly where evidence would be located.  Unlike in *Winn*, the evidence that might be relevant could not be confined to certain types of files.  *See* 79 F. Supp. 3d at 919.  Instead, probative evidence could be found, as the Government contends, "in the defendant's contacts, call log, messages, GPS location data, etc."  Gov't Supp. Opp'n at 23.

Finally, Mr. Wilkins posits—with a noticeable lack of any supporting authority—that the lack of temporal limitation in the warrant renders it fatally overbroad.  Def.'s Supp. Mot. at 17. But, unlike in *Winn*, relevant evidence in this case was not limited to a single day or narrow date range, *see* 79 F. Supp. 3d at 919; instead, the investigation into Mr. Wilkins's commercial sexual exploitation scheme spanned almost a decade and involved a far more complex investigation. Therefore, while a temporal constraint in *Winn* may have made sense to better ensure that that search was "carefully tailored to its justifications," *Garrison*, 480 U.S. at 84, such a constraint

would make little sense in this case given the duration of the alleged criminal activity and the complexity of the investigation.  As a result,  the Court finds that the Instagram and Samsung Phone warrant requests were not overbroad and will deny Mr. Wilkins's Motion to Suppress on this ground.

## IV.  CONCLUSION

For the foregoing reasons, the Government's motions in limine to: exclude any evidence of the victims' other sexual behavior and sexual predisposition (ECF No. 27); preclude use of the victim's last names (ECF No. 28); introduce business records evidence (ECF No. 33); offer expert witness testimony (ECF No. 34); prohibit references to sentencing, exclude witnesses from the courtroom during trial, preclude self-serving hearsay, exclude evidence not produced in reciprocal discovery (ECF No. 35)[15] are **GRANTED**.

The Government's motion to admit other crimes evidence (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**.

Mr. Wilkins's motion to sever the assault charge in the indictment (ECF No. 38) is **DENIED**.  Mr. Wilkins's motion to suppress evidence (ECF No. 39) is **GRANTED IN PART** and **DENIED IN PART**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 11, 2021                                    RUDOLPH CONTRERAS
                                                                       United States District Judge

---

[15] The Government's Omnibus Motion in Limine (ECF No. 35) also contains two motions—for the admission of jail call admissions and the preclusion of Mr. Wilkins's counsel cross-examining Government witnesses regarding inadmissible criminal convictions—that as already noted, *see supra* at 13, the Court has declined to rule on at this time.