UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Criminal Action No.:   19-390 (RC) |
| v. : | |
| : | Re Document No.:   71 |
| MICHAEL JABAAR WILKINS, : | |
| : | |
| Defendant. : | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION FOR AN ORDER PROHIBITING CONTACT WITH VICTIMS AND WITNESSES**

**I. INTRODUCTION**

Defendant Michael Jabaar Wilkins is charged with two counts of sex trafficking by force, fraud, and coercion, four counts of transportation of an individual with an intent to engage in prostitution, two counts of coercion and enticement to travel in interstate commerce to engage in prostitution, one count of interstate travel and transportation in aid of racketeering enterprises, and one count of assault. *See* Superseding Indictment, Dec. 9, 2020, ECF No. 61. Mr. Wilkins stands accused of trafficking three victim-complainants from Norfolk, Virginia, to Washington, D.C. to engage in prostitution and other commercial sexual acts, and is also charged with assaulting one of the complainants. *Id.* A jury trial is scheduled to begin in this case on July 26, 2021.

Following Mr. Wilkins's arrest and subsequent confinement while awaiting trial, he has repeatedly reached out to one of the complainants in this case, L.H. Mr. Wilkins called L.H. forty times between November 2020 and January 2021, and attempted another thirty calls between the end of January 2021 and March 2021. Hr'g Tr. at 4–5. The Government has now provided the Court with transcripts of six of these calls, *see* Gov't Ex. 2–7, wherein Mr. Wilkins

1

spends the majority of his conversations with L.H. discussing the evidence against him, including questioning L.H. about her knowledge of the prosecution's case and her communications with the Government. The Government characterizes these calls as an attempt by Mr. Wilkins to influence and even prevent L.H.'s testimony (and that of the other two complainants). *See* Gov't Reply to Def.'s Opp'n to Order Prohibiting Contact with Victims & Witnesses ("Gov't Reply") at 1, ECF No. 78.

As a result, the Government has moved for an order pursuant to 18 U.S.C. § 1514(b)(1) prohibiting Mr. Wilkins from having "any contact, direct, indirect or through third parties, with known victims and witnesses in this matter." Gov't Mot. for Order Prohibiting Contact with Victims & Witnesses ("Gov't Mot.") at 1, ECF No. 71. Mr. Wilkins timely filed an opposition. *See* Opp'n to Gov't Mot. for Order Prohibiting Contact with Victims & Witnesses ("Def.'s Opp'n"), ECF No. 72. An evidentiary hearing was held on May 18, 2021 to allow for the presentation of evidence and argument on this motion. The Court concludes, for the reasons detailed below and based on a preponderance of the evidence before it, that an order prohibiting contact between Mr. Wilkins and L.H. is justified in order to prevent witness tampering in advance of trial.

## II.  LEGAL STANDARD

Pursuant to 18 U.S.C. § 1514(b)(1), this Court can, "upon motion of the attorney for the Government, or its own motion . . . issue a protective order prohibiting harassment of a victim or witness in a Federal criminal case or investigation if the court, after a hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a Federal criminal case or investigation exists or that such order is necessary to prevent and restrain an offense under section 1512 of this title . . ." 18 U.S.C. § 1514(b)(1). As used in this statute,

"harassment" is defined as "a serious act or course of conduct directed at a specific person that (i) causes substantial emotional distress in such person; and (ii) serves no legitimate purpose." *Id*. § 1514(d)(1)(B).  A section 1512 offense, as is relevant here, is one in which an individual "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, . . . with intent to": "influence, delay, or prevent the testimony of any person in an official proceeding"; or "cause or induce any person to withhold testimony . . . from an official proceeding"; or "be absent from an official proceeding to which such person has been summoned by legal process." *Id*. § 1512(b)(1)–(2).

## III.  ANALYSIS

The Court will proceed by examining if the Government has met its evidentiary burden of demonstrating that a no-contact order is justified pursuant to 18 U.S.C. § 1514(b)(1) due to either Mr. Wilkins's harassment of the complainants, or in order to prevent and restrain witness tampering.  It examines each of the two potential bases for the order in turn.

### A. The Government Fails to Demonstrate that Mr. Wilkins has Harassed the Complainants by Causing Substantial Emotional Distress

The Government argues that Mr. Wilkins has harassed the three complainants in this case, all of whom are expected to testify at trial, such that a protective order is appropriate.  As previously detailed, harassment under 18 U.S.C. § 1514(b)(1) is defined to include a serious act or course of conduct that causes a potential witness "substantial emotional distress" and serves no legitimate purpose.  18 U.S.C. § 1514(d)(1)(b).  However, the Government has failed to provide evidence to support the claim that the three complainants have experienced this type of injury due to Mr. Wilkins's actions.  As detailed below, without specific evidence, the Court finds it is unable to issue a protective order on this ground at this time.

The Court begins by considering the evidence of Mr. Wilkins's harassment of L.H. first before turning to the other two complainants.  L.H is the primary focus of the Government's motion, given that she has been the recipient of Mr. Wilkins's numerous jail calls in the past months.  The Government conceded at the evidentiary hearing that L.H. has not expressed any objection to Mr. Wilkins's frequent calls.  *See* Hr'g Tr. at 28.  Indeed, at one point in one of the call transcripts the Government has presented to the Court, Mr. Wilkins asks her, "can I call back?" and L.H. responds, "[y]eah.  Boy, you . . . do that."  Gov't Ex. 3 at 17:24–18:2.  The statute at issue defines "harassment" using an individualized standard, as "a serious act or course of conduct directed at a specific person that . . . *causes substantial emotional distress in such person . . .*"  18 U.S.C § 1514(d)(1) (emphasis added).  Because the Government has not provided any proof that L.H. found Mr. Wilkins's conduct upsetting, much less that it led to her experiencing "substantial emotional distress," the Court finds that this requirement is not met.[1]

The Government also moves for a protective order on similar grounds for the other two alleged victim-complainants, O.R. and J.J.  Gov't Reply at 5.  However, even less information regarding the evidentiary basis for this motion has been supplied compared to that of the request for a protective order covering L.H.  The Government's briefs do not contain any information providing any insight into any harassment (if any) Mr. Wilkins has directed at these women,

---

[1] The Court notes that it can appreciate the argument raised in passing by the Government at the evidentiary hearing, wherein Government counsel contended that Mr. Wilkins's telephone conversations with L.H., when viewed through the lens of the type of coercive control typical in abusive relationships, were "threatening" and accordingly must have "cause[d] [her] to be fearful."  Hr'g Tr. at 22–23.  However, the Government has not yet provided the Court with the expert testimony necessary to adequately evaluate this argument.  And without any additional evidence that speaks to this coercive control at this time—and, as the Court has already noted, without the aid of *any* evidence from L.H. regarding the impact of Mr. Wilkins calls on her emotional state, the Court does not find it appropriate to simply assume she suffered substantial emotional distress when no such evidence to this effect has been provided.

other than the fact that Mr. Wilkins's counsel and investigator had showed up at their homes unannounced (as they are allowed to do) and that O.R. and J.J. have since conveyed to the Government that they do not wish to speak with any of Mr. Wilkins's representatives.  *See* Gov't Mot. at 2; Hr'g Tr. at 11–12.  The Government also implied in passing during the evidentiary hearing that these women also do not wish to speak to Mr. Wilkins, *see* Hr'g Tr. at 25, but there is no allegation he has actually reached out to either of them.  Without more, the Court finds that this second-hand statement alone cannot be stretched to support a factual finding that Mr. Wilkins has caused J.J. and O.R. "substantial emotional distress," as is required to support a finding of harassment under 18 U.S.C. § 1514(b)(1).  For example, other instances where a protective order has been issued on this basis relied on specific evidence submitted by the witness or victim that described the emotional impact of the defendant's actions.  *See, e.g., Shepherd v. Am. Broad. Cos.*, 151 F.R.D. 194, 204–205 (D.D.C. 1993) (finding harassment based on victim affidavit describing how counsel harassed her by contacting her several times via telephone and in person after she told him she didn't want to speak with him, while rejecting separate harassment finding that lacked any personal testimony to this effect by witness in question); *In re Grand Jury Subpoena*, 267 F. Supp. 3d 741, 746 (N.D. Tex. 2016) (describing how witnesses submitted declarations testifying regarding the substantial emotional distress that each suffered), *aff'd*, 866 F.3d 231 (5th Cir. 2017).  To be clear—the Court does not mean to imply that unwanted contact by Mr. Wilkins or outreach via third parties on his behalf would not constitute behavior that could cause substantial emotional distress in J.J., O.R., or L.H.  Indeed, the gravity of the allegations of Mr. Wilkins's treatment of the complainants in this case indicates that this is very likely.  However, the Government must provide some sort of evidence to this point—such as an affidavit, letter, or a statement from J.J. or O.R. that Mr. Wilkins has

indeed committed a serious act or course of conduct that caused them substantial emotional distress.[2]  If the Government provides this, the Court is more than willing to revisit this issue again at that time.

### B. The Government Has Shown that a Protective Order is Necessary to Prevent or Restrain Witness Tampering Pursuant to 18 U.S.C. § 1512(b)

As has already been described, under 18 U.S.C. § 1514 the Court is also empowered to issue a protective order if it finds "that such order is necessary to prevent and restrain an offense under section 1512 of this title . . . ."  18 U.S.C. § 1514(b)(1).  Perhaps in recognition of the lack of evidence showing that Mr. Wilkins has harassed the three complainants, the Government devoted the majority of its focus to arguing for the issuance of a protective order on this ground.  The Government contends that Mr. Wilkins has violated 18 U.S.C. § 1512(b) by "continually attempting to influence or prevent the testimony of the victims at trial."  Gov't Reply at 3 (citing 18 U.S.C. § 1512(b)).  For the reasons described below, the Court agrees with this characterization, at least with respect to L.H.

In order to establish a violation of 18 U.S.C. § 1512, the Government must show that Mr. Wilkins attempted to "influence, delay, or prevent the testimony of any person in an official proceeding", or "cause or induce any person to withhold testimony . . . from an official proceeding" or "be absent from an official proceeding to which such person has been summoned by legal process," 18 U.S.C. § 1512(b), and that he committed these acts with an intent to "corruptly persuade," *id.*  In short, the Court must find that Mr. Wilkins has committed one of

---

[2] As Mr. Wilkins's counsel pointed out at the evidentiary hearing, the Government has not provided any evidence (or even contended) that Mr. Wilkins proceeded in contacting either J.J. or O.R. after they notified the Government that they did not wish to be in contact with Mr. Wilkins or his representatives.  Hr'g Tr. at 38.

6

the verboten acts proscribed under the statute with a "corrupt" intent.  The Court finds that the transcripts of Mr. Wilkins's calls with L.H. are sufficient to meet this statutory requirement.

A number of troubling inferences can be drawn from a review of the jail house calls between Mr. Wilkins and L.H. that the Government has made available.  Of greatest concern to the Court is the pressure Mr. Wilkins exerts on L.H. to simply not testify at all in the case against him.  As he explains to L.H., "if don't nobody come to—if—don't nobody come to court, then they gotta let me go man.  You know what I'm saying?"  Gov't Ex. 3 at 7:12–14.  L.H. goes on to parrot Mr. Wilkins's language shortly thereafter, seeming to agree with his request by stating of herself, "[a]in't nobody coming to court."  *Id*. 7:20–21.  At a later point in the same conversation, Mr. Wilkins again reiterates that "don't nobody wanna—don't nobody wanna cooperate and come to court and tell (indiscernible)."  *Id*. 13:2–3.  These statements can reasonably be interpreted as an attempt by Mr. Wilkins to "prevent the testimony of [L.H.]" or "cause or induce" her to "be absent from an official proceeding."  *Id*. § 1512(b).[3]  *See, e.g.*, *United States v. Wilkins*, No. 19-cr-80032, 2020 WL 7294525, at *8–*9 (S.D. Fla. Dec. 10, 2020) (noting that where a jailed defendant cautioned his ex-girlfriend, "you know, a grand jury ain't gonna indict me off that shit. Unless you [CS] go to the grand jury with her[,]" the jury could "construe this last sentence as a not-so-implicit suggestion that [the witness] not testify— especially given the many other times in which Wilkins expressly admonished [her] not to testify"—raising "*at least* a reasonable inference that the statement was intended to 'corruptly persuade.'"); *United States v. Davis*, 854 F.3d 1276, 1292 (11th Cir. 2017) (finding defendant corruptly tried to influence trial where he told witness, "you don't need to get on the stand, 'cause

---

[3] The instant criminal action, as one taking place before a U.S. district judge, meets the definition for an "official proceeding" under the statute at issue.  *See* 18 U.S.C. § 1515(a)(1).

7

that'll make Daddy go to jail for a long time" and "I don't want you to."). This is particularly true given the alleged prior coercive relationship between Mr. Wilkins and L.H. *See United States v. Doss*, 630 F.3d 1181, 1190 (9th Cir. 2011) (taking into account "the prior pimp/prostitute relationship between [the witness] and [the defendant]," when evaluating the content of statements alleged to constitute witness tampering).

      Worryingly, other call excerpts even raise the possibility that Mr. Wilkins may have been attempting to feed L.H. specific, fraudulent testimony. For example, when discussing various text messages between the two of them that the Government had seized, L.H. stated that, "[y]ou told me to walk to O Street," and Mr. Wilkins interrupts, saying, "[n]o, no. When I told you walk around the loop so I can give you the weed and then you came back." Gov't Ex. 5 at 14:6–9. He continues on, stating that "you gotta have—you gotta have a motive behind them text messages, man. It could be—" before getting cut off by L.H. *Id*. 14:16–17. While far from a model of clarity, this exchange raises that possibility that Mr. Wilkins is attempting to come up with a coherent cover story with L.H. for her to present at trial. During another call between the pair, after Mr. Wilkins again reiterates twice that "don't nobody wanna cooperate" with the Government, he suggests that L.H. should also "sign on the shit," stating that if he maybe could "get the affidavits for all the alleged victims, then I can just be through with this shit." Gov't Ex. 3 at 12:23–13:4. *Compare with United States v. LaVictor*, 848 F.3d 428, 458 (6th Cir. 2017) (affirming finding of attempted witness tampering where defendant requested that victim-witness "copy [an affidavit] in her own handwriting and present it to the court."). Both of these conversations raise the possibility that Mr. Wilkins was attempting to influence L.H. to falsify or otherwise "withhold testimony . . . from an official proceeding." 18 U.S.C. § 1512(b).

Finally, Mr. Wilkins also makes numerous inquiries with L.H. regarding the potential testimony of O.R., one of the other alleged victims in this case. *See e.g.*, Gov't Ex. 6 at 13:21–14:1 ("I wanna know—and then I wanna know what like, what [O.R.] got to say. . . I'm trying to figure out like. . . what was said"). This of course raises the concern that Mr. Wilkins is looking to similarly pressure or try to convince O.R. (or the other witnesses) to testify in a specific manner.

However, in order for the Court to find that Mr. Wilkins has committed a section 1512 violation, it is also necessary that he committed these actions with an intent to "corruptly persuade" L.H. The D.C. Circuit has found that this intent is present where a defendant tries to "corrupt" a witness by "exhorting her to violate her legal duty to testify truthfully in court." *United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996) (concluding that the jury was provided with sufficient evidence to find defendant guilty of violating 18 U.S.C. § 1512(b) due to his "corrupt" intent to influence the testimony of a potential witness in his trial when he asked her to testify to a falsehood at trial); *see also United States v. Hull*, 456 F.3d 133, 141–42 (3d Cir. 2006) (finding corrupt intent present where defendant attempted to persuade a witness to change their testimony and give false testimony). This required *mens rea* has also been found where a defendant tried to "influence [a victim's] testimony by having her sign a false affidavit." *United States v. Gurr*, 471 F.3d 144, 154 (D.C. Cir. 2006) (collecting cases). As already detailed, select excerpts of the jail calls do indeed appear to show that Mr. Wilkins tried to convince L.H. to violate her legal duty to testify truthfully by attempting to influence the content of her testimony, in addition to trying to persuade her to sign a potentially fraudulent affidavit, as well as making attempts to convince her to not appear at trial to testify at all—all of which are

sufficient to show he acted with the requisite intent to constitute a section 1512 violation.[4] Consequently, the Court finds the Government has met its burden, and will issue a protective order prohibiting contact between Mr. Wilkins and L.H. pursuant to 18 U.S.C. § 1514.

### IV.  CONCLUSION

For the foregoing reasons, the Government's motion for an order prohibiting contact with alleged victims and witnesses (ECF No. 71) is **GRANTED IN PART and DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 11, 2021                                              RUDOLPH CONTRERAS
                                                                                          United States District Judge

---

[4] Mr. Wilkins's counsel contends that the actions of his client, while "not . . . advisable" do not amount to witness tampering since, in his characterization, they were nothing more than an effort to "essentially investigat[e] his case," given that his conduct never rose to "the level of any sort of threatening or coercive type of behavior." Hr'g Tr. at 32.  But to violate § 1512, a defendant need not intimidate or threaten a witness, they only need to "corruptly persuade[ ] another person, or attempt[ ] to do so, with intent to" commit any of the acts of witness tampering described above.  *See* 18 U.S.C. § 1512(b).  Given that the Court has concluded this requirement has been met, it accordingly finds this argument unconvincing.