## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Criminal Action No.:  19-390 (RC) |
| v. | : | |
| | : | Re Document Nos.:  107, 108, 112, |
| | : | 113, 116 |
| MICHAEL JABAAR WILKINS, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

**DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA; GRANTING GOVERNMENT'S
MOTIONS TO FILE EXHIBITS UNDER SEAL; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO FILE UNDER SEAL**

## I. BACKGROUND

Defendant Michael Jabaar Wilkins was charged with trafficking three victim–
complainants from Norfolk, Virginia, to Washington, D.C. to engage in prostitution and other
commercial sexual acts between 2011 and 2019, as well as the assault of one of the victim–
complainants that was captured on a surveillance camera.  *United States v. Wilkins*, 538 F. Supp.
3d 49, 62 (D.D.C. 2021).  Specifically, he was indicted on two counts of sex trafficking by force,
fraud, and coercion; four counts of transportation of an individual with an intent to engage in
prostitution; two counts of coercion and enticement to travel in interstate commerce to engage in
prostitution; one count of interstate travel and transportation in aid of racketeering enterprises;
and one count of assault.  Superseding Indictment at 1–5, ECF No. 61.

The case was scheduled for trial in April 2021, *see* Pretrial Order ¶ 3, ECF No. 68, and
was later postponed to July 26, 2021, *see* Pretrial Order ¶ 3, ECF No. 77.  Less than two weeks
before the trial was set to begin, on July 13, 2021, Mr. Wilkins's appointed counsel, Joseph
Caleb, moved to withdraw.  Mot. Withdraw as Counsel, ECF No. 90.  As grounds for

withdrawal, he stated that the attorney–client relationship had broken down and that Mr. Wilkins had demanded he withdraw from the case. *Id.* ¶¶ 3–4. Mr. Caleb had been representing Mr. Wilkins for nearly a year at that point. *Id.* ¶ 1. The Court promptly heard argument on the motion and denied the request to withdraw within two days. Min. Entry of July 15, 2021. The trial was set to continue as planned, and the parties continued filing pretrial motions in the following days. *Id.*; *see, e.g.*, Mot. Protective Order, ECF No. 93; Mot. Limine, ECF No. 95.

On July 20, 2021, however, the parties informed the Court that they had reached a last-minute plea agreement. Min. Entry for July 20, 2021. Under that agreement, Mr. Wilkins agreed to plead guilty to Count 1 of the Superseding Indictment, which charged him with "sex trafficking by force, fraud, and coercion" of the victim–complainant J.J. in violation of 18 U.S.C. § 1591(a)(1) and (b)(1). Superseding Indictment at 1–2; Plea Agreement at 1., ECF No. 102.[1] The Court held a lengthy colloquy at the plea hearing and determined that Mr. Wilkins entered his guilty plea knowingly and voluntarily. *See generally*, Sealed Tr. Proceedings on July 21, 2021 ("Tr."), ECF No. 106. A pre-sentence report was ordered, and sentencing was scheduled to take place in early December. Sentencing Sched. Order, ECF No. 99.

On August 12, 2021, Mr. Caleb filed a second motion to withdraw, citing "irreconcilable differences" and Mr. Wilkins's renewed request that he withdraw. 2d Mot. Withdraw as Counsel ¶ 6, ECF No. 103. Following another hearing, the Court granted the motion. Min. Entry of Aug. 31, 2021. Before new counsel could be appointed, Mr. Wilkins sent a *pro se* motion to the Court

---

[1] The Plea Agreement and Statement of Offense were filed under seal in light of the sensitive information relating to the victims found therein. The Government has submitted both of those documents as exhibits to its present opposition and moved for leave to file them under seal. Sealed Mots. Leave to File Doc. Under Seal, ECF Nos. 112, 113. For the same reasons the documents were initially sealed and in light of the lack of opposition, the Court grants those motions.

in October 2021 attempting to withdraw his guilty plea.  Am. Mot. Withdraw Plea at 7, ECF No.

108.  New counsel, Paul Enzinna, was appointed and entered his appearance in November 2021.

Notice Att'y Appearance, ECF No. 104.  After consulting with his new counsel, Mr. Wilkins

advised the Court of his continued desire to withdraw his guilty plea.  Min. Entry of Feb. 23,

2022.  The motion is fully briefed and ripe for consideration.  *See* Mot. Withdraw Plea, ECF No.

107, Am. Mot. Withdraw Plea;[2] Mem. Opp'n, ECF No. 11; Reply in Supp. Mot. Withdraw Plea,

ECF No. 116.[3]

## II.  LEGAL STANDARD

A defendant may withdraw a guilty plea after the Court has accepted it but before

sentencing for "a fair and just reason."  Fed. R. Crim. P. 11(d)(2)(B).  The burden is on the

defendant to establish that there are valid grounds for withdrawal.  *United States v. Robinson*,

498 F. Supp. 2d 328, 331 (D.D.C. 2007), *aff'd*, 587 F.3d 1122 (D.C. Cir. 2009) ("When seeking

to withdraw a plea after the court has accepted it, a defendant has the burden to prove valid

grounds.").  A guilty plea is "a grave and solemn act" that cannot be automatically withdrawn

---

[2] Mr. Wilkins filed two separate motions to withdraw his plea, which the Court will consider together.

[3] Mr. Wilkins sought leave to file his reply and attached exhibits under seal, which the Government does not oppose.  *See* Def.'s Consent Mot. Leave File Under Seal Reply, ECF No. 116.  The attached exhibits contain sensitive and non-public information about the victim–complainants in the case.  But with one exception, the Reply brief itself does not contain a level of detail beyond that which was already found in other public filings in this case.  In determining whether to seal judicial records, the Court must balance the relevant privacy interests against the "strong presumption in favor of public access to judicial proceedings."  *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980); *see also League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020) ("[E]very part of every brief filed to influence a judicial decision qualifies as a 'judicial record.'").  The public undoubtedly has an interest in evaluating the materials on which the Court relied, and unsealing would promote transparency and confidence in a criminal proceeding.  Accordingly, the Court will grant in part and deny in part the motion to seal, allowing the Reply and exhibits as filed to remain under seal, but ordering Mr. Wilkins to file a public version of the Reply brief in which only the final two sentences of paragraph 1 (referencing Exhibits B and C) are redacted.

merely because "the defendant decided to alter his tactics and present his theory of the case to

the jury." *United States v. Hyde*, 520 U.S. 670, 677 (1997).  "[P]ermission to withdraw rests in

the sound discretion of the trial court."  *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir.

1993).

      In the D.C. Circuit, courts consider three factors when evaluating whether there is a fair

and just reason to withdraw a guilty plea:

> First, a defendant generally must make out a legally cognizable defense to the charge
> against him.  Second, . . . the defendant must show either an error in the taking of his plea
> or some 'more substantial' reason he failed to press his case rather than plead guilty.
> Finally, . . . the court may then inquire whether the Government would have been
> substantially prejudiced by the delay in going to trial.

*United States v. Cray*, 47 F.3d 1203, 1207 (D.C. Cir. 1995).  The second factor—whether there

was a constitutional or procedural defect in the Rule 11 plea hearing—is by far the most

significant.  *See id.* ("[N]one of our cases would have been decided differently if the only inquiry

undertaken were whether the defendant's guilty plea was taken in compliance with Rule 11.").

Therefore, "a defendant who fails to show some error under Rule 11 has to shoulder an

extremely heavy burden if he is ultimately to prevail," *id.* at 1208, but "if the initial plea

proceeding was not in substantial compliance with [Rule] 11, then the defendant should almost

always be allowed to withdraw his plea," *United States v. Abreu*, 964 F.2d 16, 18 (D.C. Cir.

1992).

### III.  ANALYSIS

### A.  Constitutional Taint of Plea Hearing and Ineffective Assistance of Counsel

      The Court therefore begins with the most important question: whether a procedural or

constitutional defect tainted the Rule 11 plea hearing.  The Court need not spend long on Mr.

Wilkins's first allegation, that "at the time of his plea negotiations and the entry of his plea," he

"was regularly smoking synthetic marijuana," which affected his decision-making ability.  Am.
Mot. Withdraw Plea at 6.  This claim is contradicted by Mr. Wilkins's sworn testimony on the
day of the plea hearing that he was not presently "under the influence of alcohol or any narcotic
drugs."  Tr. at 5:13–15.  It is also made in a conclusory fashion in the brief, without "any
affidavit, declaration, or other evidence to lend factual support" to it.  *United States v. Sibblies*,
562 F. Supp. 2d 1, 5 (D.D.C. 2008), *aff'd*, 358 F. App'x 181 (D.C. Cir. 2009).  Moreover, the
Court had the opportunity to observe Mr. Wilkins's demeanor and behavior at the Rule 11
hearing and was satisfied that he was fully competent to enter the plea.  The Court accordingly
does not credit this assertion and finds that there was no defect in the Rule 11 hearing based on
Mr. Wilkins's alleged drug use around that time.

 Mr. Wilkins's more substantial argument is that his plea was not knowing and voluntary
because his prior attorney, Mr. Caleb, failed to provide him with effective assistance of counsel.
Am. Mot. Withdraw Plea at 5.  "A plea based upon advice of counsel that 'falls below the level
of reasonable competence such that the defendant does not receive effective assistance' is neither
voluntary nor intelligent."  *United States v. McCoy*, 215 F.3d 102, 107 (D.C. Cir. 2000) (citation
omitted).  To establish that a defense attorney's services fell below the constitutional threshold of
effective assistance of counsel, a defendant must establish that: 1) "counsel's performance was
deficient," and 2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*,
466 U.S. 668, 687 (1984).  In the context of ineffective assistance challenges to guilty pleas, an
attorney's performance is deficient if it falls outside of "the range of competence demanded of
attorneys in criminal cases," *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v.
Richardson*, 397 U.S. 759, 771 (1970)).  The "'prejudice' requirement, on the other hand,
focuses on whether counsel's constitutionally ineffective performance affected the outcome of

the plea process," meaning "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

There is evidence that the attorney–client relationship between Mr. Caleb and Mr. Wilkins was strained by the time Mr. Wilkins decided to plead guilty.  Trial was scheduled in April 2021 and continued, according to Mr. Wilkins because Mr. Caleb had failed to adequately prepare and did not "have a defense" to present.  Am. Mot. Withdraw Plea at 5.  Mr. Caleb moved to withdraw at Mr. Wilkins's request less than two weeks before the new trial date, but that request was denied.  Mot. Withdraw as Counsel; Min. Entry of July 15, 2021.

Evident throughout Mr. Wilkins's submissions is his dissatisfaction with Mr. Caleb's level of preparation.  Indeed, this exact concern was raised and explored at the plea hearing.  When asked whether he had sufficient time to consult with Mr. Caleb about the case, Mr. Wilkins responded that: "I had sufficient time to talk to him about this plea agreement, but as far as the case, no." Tr. at 6:8–13.  The Court then inquired further, asking whether Mr. Wilkins "had sufficient time to discuss this plea agreement," whether they "had ongoing discussions" over the year that Mr. Caleb had been representing him, and whether Mr. Wilkins "had discussions with [Mr. Caleb] about the trial" "within the last couple months." *Id.* at 6:15–25.  Mr. Wilkins answered affirmatively to all those questions, *id.*, and testified that he was satisfied with Mr. Caleb's services, *id.* at 7:1–3.  "These declarations concerning the performance of . . . counsel were made in open court under oath and thus carry a strong presumption of verity." *Sibblies*, 562 F. Supp. 2d at 5 (quoting *United States v. Hawkins*, No. 03-cr-390, 2005 WL 1660840, at *4 (D.D.C. July 11, 2005)).

Mr. Wilkins represents in his Reply brief that "he never discussed a plea agreement with . . . [Mr. Caleb] prior to . . . the date on which he entered his guilty plea" and that "all his

conversations with Mr. Caleb prior to [that date] . . . concerned preparation for trial." Reply Br. ¶ 2. This is contradicted by the record, which demonstrates that the parties informed the Court that an agreement had been reached the day before the plea hearing, *see* Min. Entry of July 20, 2021, and Mr. Wilkins's prior representations with respect to this present motion, *see* Ex. A of Am. Mot. Withdraw Plea at 3–4 (describing how Mr. Caleb urged Mr. Wilkins to accept a plea a week before the April trial date); *id.* at 4–5 (describing how Mr. Caleb "[o]nce again" encouraged Mr. Wilkins to accept a plea "a week and a half" before the July trial date); *id.* at 5–6 (describing discussions about potential plea negotiations that occurred prior to the set pretrial date). And regardless of the exact date on which those discussions occurred, Mr. Wilkins unambiguously confirmed multiple times under oath that he had sufficient time to discuss the plea agreement with Mr. Caleb. Tr. at 6:15–18, 7:4–7, 22:8–10; 22:21–24.

Mr. Caleb likewise affirmed on the record that he had had "sufficient time to review and investigate the law and the facts in this case." *Id.* at 7:8–11. Moreover, over the course of Mr. Caleb's representation, he actively litigated on Mr. Wilkins's behalf, filing multiple pretrial motions and oppositions to the Government's motions. *See Wilkins*, 538 F. Supp. 3d at 62–63 (addressing nine different pretrial motions).[4] The record thus demonstrates reasonable diligence

---

[4] Mr. Wilkins appears to take issue with the fact that the results of these motions were not wholly successful. *See* Ex. A of Am. Mot. Withdraw Plea at 2 (stating that "Mr. Caleb allowed the government to admit an aggravated assault and a[n] attempt of rape that happened to J.J. . . . under rule 404(b)" that he claimed not to have committed). It goes without saying that the failure to achieve a defendant's desired result does not on its own make counsel's assistance ineffective. Furthermore, strategic decisions, such as which arguments to advance in a pretrial motion, "are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021). Defense attorneys must often make difficult decisions where "certain tactics carry the risk of 'harm[ing] the defense' by undermining credibility with the jury or distracting from more important issues." *Id.* For that same reason, the accusation that Mr. Caleb "refuse[d] to file a motion to dismiss Counts 1 and 2 . . . for prosecutorial misconduct" would not render his assistance ineffective. *See id.* at 2–3. As Mr. Wilkins has provided no evidence to suggest a meritorious basis for such a motion, the Court has no doubt that Mr. Caleb's alleged refusal to

and preparation by Mr. Caleb on Mr. Wilkins's behalf.  Mr. Wilkins's subjective fear that this preparation was insufficient, without more, does not satisfy Mr. Wilkins's burden of showing that Mr. Caleb's assistance was deficient.  *See Abreu*, 964 F.2d at 20 ("[A] defendant's fear that his counsel was not adequately prepared to try the case does not constitute an explanation requiring the district judge to permit him to withdraw his plea.").

Nor does the fact that Mr. Caleb's assessment of Mr. Wilkins's chances remained bleak on the eve of trial mean that he was ineffective.  According to Mr. Wilkins's account of events, when Mr. Wilkins initially rejected the plea offer, Mr. Caleb told him: "'[H]e doesn't have a defense for me and he's going to lose trial' . . . . I'm facing 24 years to life.  So if I want to see my family and daughter at a reasonable age I better accept the government[']s offer."  Am. Mot. Withdraw Plea at 6; Ex. A. of Am. Motion Withdraw Plea at 6.  Assuming the truth of Mr. Wilkins's allegation, that advice was neither coercive nor incompetent.  Courts routinely reject ineffective assistance claims based on the honest—but hard to hear—prognosis of counsel.  *See United States v. Curry*, 494 F.3d 1124, 1130 (D.C. Cir. 2007) (rejecting a motion to withdraw a plea "based solely on [the] allegation that one of his attorneys wrongly 'told him the case was hopeless'"); *United States v. Basu*, 531 F. Supp. 2d 48, 53–54 (D.D.C. 2008), *aff'd*, 358 F. App'x 187 (D.C. Cir. 2009) ("It is not unreasonable for an attorney, when assessing a client's case and the evidence put forward against him, to express his view that the defendant has 'no chance at trial.'"); *Hines v. Miller*, 156 F. Supp. 2d 324, 330–33 (S.D.N.Y.2001) (determining that counsel's assertion that the defendant "had no chance to win at trial" was "professionally appropriate advice" given the strength of the government's case).  So too here.  Given the serious

---

file it would have been the product of reasoned strategic judgment.  And finally, Mr. Wilkins has not provided any reason to suggest that he was prejudiced by those errors such that he would have chosen to go to trial if Mr. Caleb had advanced those arguments.

charges faced by Mr. Wilkins and the volume of evidence against him, Mr. Caleb's alleged advice was well within the bounds of professional competence.[5]

 The Court next considers whether Mr. Wilkins's alleged misunderstanding of the potential sentence he faced under the plea agreement was the kind of defect that would negate the knowing and voluntary nature of his plea.  Mr. Wilkins suggests that he "understood that the plea agreement would result in a sentence of 15 years, or at least one significantly shorter than the '24 years to life' he faced at trial," whereas in fact "the plea agreement calls for a sentence between 27 and 33-3/4 years."  Am. Mot. Withdraw Plea at 6.  An actual error in calculating the potential sentence that a defendant might receive can constitute ineffective assistance of counsel in some situations.  *See McCoy*, 215 F.3d at 108 (finding both deficiency and prejudice where defense counsel "failed to follow the formula specified on the face of the Guidelines" and as a result inaccurately told the defendant "that by accepting the plea he would get a prison sentence in the range from 188 to 235 months" when "in fact, he faced a range of 262 to 327 months"); *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) ("We do not rule out the possibility that a defendant's misapprehension of a likely sentence, based on a clear error in the advice given him, can be a fair and just reason for withdrawal of a guilty plea if it is not corrected by the court at the Rule 11 hearing.").

 Here, though, the issue is not whether the estimated guidelines range was calculated correctly, but rather whether Mr. Caleb nonetheless led him to believe that only fifteen years would likely be imposed.  Again, any such error is flatly contradicted by Mr. Wilkins's sworn

---

[5] While Mr. Wilkins would have undoubtedly preferred a more advantageous plea agreement, "[t]he constitutional requirement of effective assistance of counsel is intended . . . to guarantee a fair disposition of defendant's case, not to ensure that he is able to drive the hardest possible plea bargain with the Government."  *Horne*, 987 F.2d at 836.

testimony at the plea hearing.  Mr. Wilkins affirmed that he had carefully read the plea

agreement, discussed it with counsel, understood it, and signed it in acceptance of its terms.  Tr.

at 22:2–20.  That agreement unambiguously calculated an estimated guidelines range of 324 to

405 months.  Plea Agmt. at 4.  Moreover, both the written agreement itself and the Court's

colloquy left no doubt that the estimated range in the agreement was not binding on this Court,

and that the actual guidelines range and sentence could be either higher or lower.  *Id.*; Tr. at

26:22–28:24 (providing a lengthy explanation of the sentencing guidelines and confirming that

Mr. Wilkins had discussed the guidelines and their application with Mr. Caleb).  The Court

specifically informed Mr. Wilkins of both the minimum (15 years) and maximum (life) sentences

that could be imposed if he pleaded guilty, as well as other potential consequences of his plea.

Tr. at 23:24–24:5.  The Court also received confirmation from Mr. Wilkins as well as both

defense and government counsel that no additional promises beyond what appeared in the

agreement had been made or relied on in Mr. Wilkins's decision to accept the agreement.  *Id.* at

22:25–23:11.

Mr. Wilkins no doubt hoped that he would be sentenced below the estimated range, but

that colloquy and the written agreement were sufficient to ensure that he was well-informed of

the risk that his optimism might not be vindicated.  *See United States v. Horne*, 987 F.2d 833,

837 (D.C. Cir. 1993) (finding no error even though defense counsel had incorrectly

underestimated the sentencing guideline range because "[t]he court made sure that Horne was

aware of the maximum sentence he could conceivably face and . . . . specifically informed Horne

that no one—not even the judge—could know what sentencing range would apply until the

presentence report was available."); *see also United States v. Carr*, 80 F.3d 413, 418–19 (10th

Cir. 1996) (finding no prejudice where defense counsel incorrectly stated the defendant would

receive a mandatory life sentence if he were convicted at trial, but the plea letter clearly stated that he would not be); *United States v. Zaitar*, 78 F. Supp. 3d 22, 37–38 (D.D.C.), *aff'd*, 641 F. App'x 1 (D.C. Cir. 2015) (determining that no improper promises were made and the defendant was "fully advised concerning sentencing" even though "[b]oth client and lawyer agree that [the defendant] pinned his hopes on a low sentence when he agreed to enter a guilty plea").

Even when taking Mr. Wilkins's full list of dissatisfactions with Mr. Caleb at face value, none fell below "the range of competence demanded of attorneys in criminal cases" or would have resulted in a "reasonable probability" that Mr. Wilkins would have chosen to go to trial. *Hill v. Lockhart*, 474 U.S. at 56, 59. Accordingly, the Court finds no credible constitutional or procedural defect in the Rule 11 hearing.

## B. Legally Cognizable Defense

The next important factor to be considered is whether a defendant has asserted a legally cognizable defense. *Cray*, 47 F.3d at 1207. Cases within this Circuit have also characterized this element as "[w]hether the movant has asserted his legal innocence". *United States v. Barker*, 514 F.2d 208, 220 (D.C. Cir. 1975) (*en banc*); *see also McCoy*, 215 F.3d at 107. A generalized assertion of innocence or a desire to put the Government to its proof is not enough to satisfy this standard after a guilty plea has already been accepted. *See McCoy*, 215 F.3d at 107 (finding legally cognizable two defenses that the Government had misidentified the defendant as the seller in one charged drug transaction and that the defendant lacked specific intent for another conspiracy charge); *United States v. Robinson*, 587 F.3d 1122, 1132 (D.C. Cir. 2009) (rejecting defendants' "summary assertions of innocence" in the face of numerous charges). "If the movant's factual contentions, when accepted as true, make out no legally cognizable defense

to the charges, he has not effectively denied his culpability, and his withdrawal motion need not be granted." *Barker*, 514 F.2d at 220.

Mr. Wilkins does not assert his actual innocence, rather, he argues that he has a complete statute of limitations defense to the specific count to which he pleaded guilty. Am. Mot. Withdraw Plea at 4–5. Mr. Wilkins pleaded guilty to sex trafficking by force, fraud, or coercion of an individual identified as J.J. between the dates of "January 1, 2011, and November 1, 2017." Superseding Indictment at 1. The Statement of the Offense that was read into the record, and that Mr. Wilkins affirmed was factually accurate, included those date ranges. Tr. at 14:18–21, 21:21–22:1. Mr. Wilkins now claims, however, that none of the Government's evidence relating to J.J., as opposed to the other victims in the case, occurred after 2015 and that Count 1 is therefore barred by the statute of limitations. Am. Mot. Withdraw Plea at 4–5.

The problem is that Mr. Wilkins has applied the wrong statute of limitations. Mr. Wilkins argues that the charge he pleaded guilty to—18 U.S.C. § 1591—is governed by the default statute of limitations found in 18 U.S.C. § 3282, which states:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed.

Am. Mot. Withdraw Plea at 3, 18 USCS § 3282(a). The Government argues, however, that a more specific statute applies—18 U.S.C. § 3299, which states:

> Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section 2257 and 2257A), or 117, or section 1591.

18 USCS § 3299.

First, the Government has the stronger argument as a purely textual matter. Section 3282 is the catch-all provision for non-capital offenses and pointedly excludes offenses where

"otherwise expressly provided by law."  18 U.S.C. § 3282(a).  Section 3299, in contrast, lists 18

U.S.C. § 1591 among the enumerated offenses for which the statute of limitation has been

eliminated.  Although § 3299 is titled "child abduction and sex offenses," the statute by its terms

applies both to "any offense under section 1201 involving a minor victim, *and for any felony*

*under . . . section 1591.*"  18 U.S.C. § 3299 (emphasis added).  That structure is particularly

meaningful because both § 1201 (kidnapping), and § 1591 (sex trafficking) have provisions that

apply specifically to minors and others that apply to any person.  *Compare* 18 U.S.C. § 1201

*with* 18 U.S.C. § 1591.  By removing the limitations period only for offenses against minors

under § 1201 but removing it "for any felony" under § 1591, Congress expressed a clear intent to

remove the limitations period for sex trafficking offenses committed against minors and adults

alike under § 1591.

The weight of the authority supports that same conclusion.  *See United States v. Johnson*,

No. 19-271-CR, 2021 WL 1157273 at *563 (2d Cir. Mar. 26, 2021) (holding that five-year

statute of limitations in § 3282 did not apply to an offense under chapter 117 because it was on

the enumerated list in § 3299); *United States v. Biancofiori*, No. 16 CR 306-1, 2018 WL

2463387, at *2 (N.D. Ill. June 1, 2018) (stating in a case with an adult victim that "there is no

statute of limitations for a § 1591 charge" because of § 3299); *cf. United States v. Maxwell*, No.

20-CR-330, 2021 WL 3591801, at *4 (S.D.N.Y. Aug. 13, 2021) ("Congress enacted § 3299 to

eliminate altogether the limitations period for the offense of sex trafficking children in violation

of § 1591.").  Mr. Wilkins's sole citation to the contrary, *United States v. Pittman*, is non-binding

and unpersuasive.  *See* Am. Mot. Withdraw Plea at 3–4.  Although the district court in that case

found that the charge of "recruiting an adult . . . through the use of force, threats of force, fraud

or coercion to engage in commercial sex acts in violation of [§ 1591]" was barred by the five-

year limitation in § 3282, it specifically noted that "the government neither addressed the issue in its [brief] nor during oral argument." *United States v. Pittman*, No. 13-CR-4510, 2015 WL 4772731, at *5 & n.3 (S.D. Cal. Aug. 12, 2015), *aff'd sub nom. United States v. Brown*, 800 F. App'x 455 (9th Cir. 2020).[6]

Accordingly, the portions of the grand jury testimony that Mr. Wilkins cites in support of his statute of limitations theory are unavailing. *See* Exs. A–C of Reply. Even assuming that the Government could not prove Mr. Wilkins trafficked J.J. after 2015,[7] Mr. Wilkins still would not have a legally cognizable defense. "A belated desire to assert a meritless defense does not entitle a defendant to withdraw his plea . . . ." *Abreu*, 964 F.2d at 20.

Although Mr. Wilkins does not advance this argument, the Court nonetheless also determines that Mr. Caleb's failure to raise a statute-of-limitations defense earlier did not mean that his assistance was ineffective. An attorney's performance is not deficient where they have researched the statute of limitations and "determined that [it] was not a viable defense" or "relied on . . . professional judgment to determine that the plea deal was in [a defendant's] interest regardless of the strength of any statute of limitations defense," but the failure to "identify, research, and consider a possible affirmative defense" at all is "objectively unreasonable." *United States v. Wilkins*, No. CR 13-267, 2017 WL 2458904, at *8 (D.D.C. June 6, 2017), *aff'd*, 734 F. App'x 1 (D.C. Cir. 2018).

---

[6] Nor does that particular issue appear to have been litigated on appeal. *See generally United States v. Brown*, 800 F. App'x 455 (9th Cir. 2020).

[7] The Court notes, however, that Mr. Wilkins did not object to the factual statement that "Between January of 2011 and November of 2017, during the time that J.J. was engaging in commercial sex acts for [Mr. Wilkins]'s financial gain, Mr. Wilkins was physically violent to her on several occasions," despite it both appearing in the written statement of offense and having been read into the record at the plea hearing after this Court admonished him "to listen very carefully . . . . I'm going to ask you if anything the government . . . said it can prove at trial you think is incorrect." Tr. at 13: 6–11.

The Court cannot determine from this record which of those situations occurred in this case, but even if Mr. Caleb had entirely failed to consider or research the statute of limitations at all, it is clear that Mr. Wilkins was not prejudiced by his failure to do so.  Given the weakness of the defense and the risks of proceeding to trial, "it seems likely any reasonable attorney considering the statute of limitations issue still would have advised [Mr. Wilkins] that it would not be a strong defense," and there is therefore no reasonable probability that Mr. Wilkins would have proceeded to trial but for that deficiency.  *See id.* (holding that the defendant was not prejudiced by the attorney's admitted failure to evaluate a weak statute of limitations defense before the defendant pleaded guilty); *see also United States v. Islam*, 932 F.3d 957, 964 (D.C. Cir. 2019) ("The failure to raise a meritless objection is not deficient performance.").  Moreover, the statute of limitations defense as asserted would, at most, apply only to the conduct relating to J.J., but the reasonable probability a defendant would have proceeded to trial is assessed by considering "all counts that [the defendant] would have faced . . . and not just the counts to which he pled guilty."  *See United States v. Thomas*, 541 F. Supp. 2d 18, 27 (D.D.C. 2008).

### C. Prejudice to the Government

The final factor for the Court to consider is "prejudice to the public's legitimate interests as would arise if it were to grant the defendant's belated request to go to trial."  *Horne*, 987 F.2d at 837.  Although this factor is not dispositive on its own, it also weighs against permitting Mr. Wilkins leave to withdraw his plea.

Delay in moving to withdraw a plea can prejudice the Government, particularly where the Government would have to "reassembl[e] far-flung witnesses in a complex case."  *Barker*, 514 F.2d at 222.  Mr. Wilkins entered his guilty plea on July 21, 2021 and first attempted to withdraw it in a *pro se* filing sent to the Court in late October 2021, nearly three months later.  The Court

does not give much weight to the delay, however, given that Mr. Wilkins was without counsel during much of that time and was reasonably diligent under the circumstances.

Much more troubling to the Court is the prejudice to the victims and witnesses. Other circuits which also consider prejudice to the Government when determining whether to allow the withdrawal of a guilty plea have taken into account the mental and emotional toll that victims and witnesses would have to endure in preparing—again—to testify at trial. *See United States v. Morrison*, 967 F.2d 264, 269 (8th Cir. 1992) (finding prejudice where the defendant "had waited until the eve of trial before pleading guilty" and the process of preparing the key witnesses was "trauma[tic]"); *United States v. Lineback*, 330 F.3d 441, 444 (6th Cir. 2003) ("[The minor victims] have been through enormous stress and mental anguish in awaiting some finality to these legal proceedings. To reverse this process and require these minors to now testify before the public in a jury trial will be difficult at best and will certainly prejudice the Government in its effort to obtain justice."); *United States v. Farrelly*, No. 3:19-CR-44-J-34, 2021 WL 463767, at *19 (M.D. Fla. Feb. 9, 2021) ("[R]equiring the victim to testify and relive such traumatic experiences at this point in time after believing the matter to have been resolved weighs against granting [the defendant's] Motion.").

Here, too, the victims and witnesses have already gone through the difficult process of preparing to testify against Mr. Wilkins before he pleaded guilty on the eve of trial. In fact, the Court even entered a protective order prohibiting Mr. Wilkins from contacting one of the victim–witnesses after he made over forty calls attempting to dissuade her from testifying or cooperating with the Government. *See* Mem. Op. granting in part and denying in part Protective Order at 10, ECF No. 84. Requiring the witnesses to go through that process again nearly a year later would be prejudicial to them personally and to the Government's ability to prosecute the case.

### D.  Evidentiary Hearing

The final remaining question is whether it is necessary to conduct an evidentiary hearing. "Ordinarily, when a defendant seeks to withdraw a guilty plea on the basis of ineffective assistance of trial counsel the district court should hold an evidentiary hearing to determine the merits of the defendant's claims." *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998). This is because claims of ineffective assistance of counsel often involve questions of fact that do not appear on the record, "such as whether counsel properly investigated the case, considered relevant legal theories, or adequately prepared a defense." *Id.* (quoting *United States v. Cyrus*, 890 F.2d 1245, 1247 (D.C. Cir. 1989)); *see also Cray*, 47 F.3d at 1208–09 (stating that an evidentiary hearing was proper "because [defendant]'s claim that he pled under duress . . ., if true, would not necessarily appear on the face on the plea colloquy"); *Zaitar*, 78 F. Supp. 3d at 23 (noting that the D.C. Circuit had remanded for an evidentiary hearing on the colorable claim of whether counsel had promised defendant the sentence would be the lowest of the negotiated range, rather than the highest).

An evidentiary hearing is not automatically required, however, and may be unnecessary where "the motion . . . fail[s] to allege sufficient facts or circumstances 'upon which the elements of constitutionally deficient performance might properly be found'" or "where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *Taylor*, 139 F.3d at 933; *see also Islam*, 932 F.3d at 963 ("[W]e have 'never held that any claim of ineffective assistance of counsel . . . automatically entitles a party to an evidentiary remand.'" (quoting *United States v. Sitzmann*, 893 F.3d 811, 831 (D.C. Cir. 2018) (per curiam)); *Curry*, 494 F.3d at 1131 ("[A] court does not abuse its discretion in denying such a request where there are no material factual issues in dispute."). "Furthermore, in challenging a

guilty plea on the basis of ineffective assistance, the representations of the defendant at the plea hearing as to the adequacy of counsel and the knowing and voluntary nature of his plea may 'constitute a formidable barrier' to his later refutations." *Taylor*, 139 F.3d at 933 (citations omitted). Accordingly, summary dismissal of a motion to withdraw a guilty plea on the basis of ineffective assistance of counsel is only appropriate where "the district court concludes that the defendant has not alleged any cognizable claim for relief, or that the defendant's 'conclusory allegations are unsupported by specifics,' or that the defendant's allegations 'in the face of the record are wholly incredible.'" *Id.*; *Thomas*, 541 F. Supp. 2d at 23–24 (same).

This is a case where an evidentiary hearing would be unnecessary. To begin with, Mr. Wilkins has not submitted any affidavits or sworn declarations to substantiate his motion, and as described above, his allegations are in conflict with his sworn testimony at the plea hearing and in some cases internally contradictory. *See United States v. Pinkney*, 543 F.2d 908, 917 (D.C. Cir. 1976) (rejecting a post-sentencing claim of ineffective assistance of counsel where "there was no affidavit supporting the motion . . . . There was only the bare statement that sentencing counsel did not confer with appellant on [one] charge in the Government's allocution memorandum"); *Sibblies*, 562 F. Supp. 2d at 5 (declining to credit new allegations where the defendant "failed to provide any affidavit, declaration, or other evidence to lend factual support to his new allegation" that contradicted his prior testimony); *United States v. Tolson*, 372 F. Supp. 2d 1, 19 (D.D.C. 2005), *aff'd*, 264 F. App'x 2 (D.C. Cir. 2008) (rejecting an ineffective assistance claim where the defendant "did not even file a sworn affidavit containing her assertion of prejudice along with her motion, but rather made that assertion in the text of her reply brief"). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal,

as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Moreover, even when assuming Mr. Wilkins's allegations to be true, the Court has determined above that they do not establish the twin requirements of deficient performance and prejudice necessary to establish an ineffective assistance of counsel claim. *See Robinson*, 587 F.3d at 1132–33 (finding no error with the denial of an evidentiary hearing where the allegations did not establish any constitutional violation); *Curry*, 494 F.3d at 1131 (finding no need for an evidentiary hearing where "even assuming [defendant's] allegation is accurate, it did not render counsel's representation ineffective").

There is no doubt that Mr. Wilkins, like all criminal defendants, faced a difficult decision in deciding whether to accept the plea agreement. But there is also no credible reason to doubt that he made that decision knowingly, voluntarily, and based on the competent advice of counsel. That Mr. Wilkins desires to second-guess that decision now is not enough of a reason to allow him to withdraw his guilty plea.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motions to Withdraw His Plea of Guilty (ECF Nos. 107, 108) are **DENIED**, the Government's Motions to File Exhibits Under Seal (ECF Nos. 112 and 113) are **GRANTED,** and Defendant's Motion to File Reply Under Seal (ECF No. 116) is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 8, 2022                                            RUDOLPH CONTRERAS
                                                                United States District Judge